## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIR HUSSAIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 07-1633 (PLF) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| HOMELAND SECURITY, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S RULE 56(F) MOTION TO STAY DISPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING LEAVE TO SEEK DISCOVERY

Plaintiff respectfully requests, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, that the Court stay disposition of Defendant's Motion for Summary Judgment and grant the Plaintiff leave to seek discovery. Plaintiff further requests oral argument for this Motion. A Memorandum of Points and Authorities has been filed in support of this Motion.

Plaintiff understands that discovery is limited in proceedings pursuant to the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA"). However, good cause exists to grant this Motion, as:

1.  Plaintiff is unable to respond to Defendant's Motion for Summary Judgment without further discovery.

2.  Plaintiff lacks necessary information with regard to the adequacy of Defendant's FOIA search due to Defendant's insufficiently detailed and conclusory affidavit and Defendant's failure to produce responsive documents.

3.    Plaintiff seeks discovery strictly limited to the adequacy of Defendant's FOIA search, including interrogatories, document requests, and the deposition of one (1) government official pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

4.    For these reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Rule 56(f) Motion To Stay Disposition of Defendant's Motion For Summary Judgment Pending Leave To Seek Discovery. A proposed Order is attached to this Motion.

5.    Pursuant to Local Rule LCvR7(f), Plaintiff respectfully requests oral argument on the Motion.

6.    The undersigned certifies that, pursuant to Local Rule LCvR 7(m), prior to the filing of this Motion, Plaintiff's counsel conferred with the Defendant's counsel. Defendant's counsel advised that Defendant opposes the request for discovery prior to a ruling on the Defendant's Motion for Summary Judgment, and that Defendant reserves the right to file a written response to the Plaintiff's Motion for a Rule 56(f) stay upon counsel's receipt and review of that Motion.

7.    In the event that the Court denies this Motion, Plaintiff respectfully requests that the Court grant Plaintiff a fourteen (14) day extension of time, from the date of the Court's ruling on this Motion, within which to respond to Defendant's Motion for Summary Judgment.

Respectfully Submitted,

Dated: April 16, 2008

/s/ Charles D. Tobin
Charles D. Tobin (Bar No. 455593)[1]
Holland & Knight LLP
2099 Pennsylvania Ave. N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 Phone
(202) 955-5564 Fax
*Counsel for Plaintiff*

---

[1] The previous filings in this case did not reflect Plaintiff's counsel's correct Bar Number for this Court.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2008, a true and correct copy of the foregoing Motion was served on counsel for the Defendant by the Electronic Case Filing system and by U.S. mail, postage prepaid, addressed as follows:

Jeffrey A. Taylor, Esq.
Rudolph Contreras, Esq.
John G. Interrante, Esq.
Civil Division, E-4806
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-7220
(202) 514-8780 (fax)


/s/ Charles D. Tobin
Charles D. Tobin

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIR HUSSAIN,                ) | |
|            ) | |
|            ) | |
|       Plaintiff,   ) | |
|            ) | |
|       v.             ) | Civil Action No. 07-1633 (PLF) |
|            ) | |
| UNITED STATES DEPARTMENT OF   ) | |
| HOMELAND SECURITY,          ) | |
|            ) | |
|       Defendant.   ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RULE 56(F) MOTION TO STAY DISPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING LEAVE TO SEEK DISCOVERY**

Mr. Samir Hussain files this Memorandum of Points and Authorities in Support of Plaintiff's Rule 56(f) Motion to Stay Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery, pursuant to the Complaint filed under the Freedom of Information Act, 5 U.S.C. § 552, as amended ("FOIA").

## I.    INTRODUCTION

After spending almost eight months behind bars at Krome Special Processing Center ("Krome"), a special facility housing Defendant's detainees, Mr. Hussain initiated a FOIA request in an attempt to unveil the shroud of government secrecy surrounding his arrest. Mr. Hussain waited more than twice as long as the period of this detention, 538 days, for Defendant's response to his FOIA request. Unfortunately, that response was entirely inappropriate and raises substantial issues of fact regarding the adequacy of Defendant's FOIA search. The Department of Homeland Security's ("DHS") conduct simply does not reflect the transparency in

government that FOIA portends.[1]  Despite the fact that FOIA is a statute of maximum disclosure,

DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989), and there is a

strong public interest in a full vetting and accounting of this case,[2] the facts of this case present a

prime example of an agency's failure to "open[ ] up the workings of government to public

scrutiny," McGehee v. CIA, 697 F.2d 1095, 1108 (D.C. Cir. 1983) (internal quotation marks

omitted).

Accordingly, Mr. Hussain respectfully requests that the Court stay disposition of

Defendant's Motion for Summary Judgment and grant Mr. Hussain's request for discovery.  In

the event that the Court denies this request, Mr. Hussain respectfully requests that the Court

grant Mr. Hussain a fourteen (14) day extension of time, from the date of the Court's ruling on

Mr. Hussain's Motion, within which to respond to Defendant's Motion for Summary Judgment.

While discovery is not typically granted in a FOIA case, Defendant's methodically-

flawed FOIA search  – in which documents Plaintiff knows to exist were never disclosed –

denied Mr. Hussain access to records to which he is entitled.  Defendant's insufficiently detailed

and conclusory affidavit, and Defendant's failure to search in obvious locations, to pursue leads

that emerged from its initial search, and to produce certain key records – combined with the fact

that Mr. Hussain was detained merely for being Iraqi – all lead Mr. Hussain to believe that

Defendant engaged in ethnic profiling, then evaded full disclosure under FOIA to cover its

tracks.

---

[1] Jimmy Carter. We Need Fewer Secrets. WASH. POST (Jul. 3, 2006) at A21 (According to a recent government report, it has been commonplace for some agencies to routinely violate the FOIA mandatory 20-day response period. President Carter found that median response times may top 905 working days at the Department of Agriculture and 1,113 working days at the Environmental Protection Agency.).

[2] Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 31-32 (D.C. Cir. 2002) ("The purpose of the Freedom of Information Act . . . is to pierce the veil of administrative secrecy and open agency action to the light of public scrutiny. . . . FOIA reflects a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.") (internal quotation marks and citations omitted).

Mr. Hussain seeks only to understand the circumstances of his arrest and, thus far, through typical FOIA procedures and resultant litigation he has been unable to do so. Thus, Mr. Hussain seeks circumscribed discovery, limited to interrogatories and the deposition of one (1) relevant government official pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure in order to respond to Defendant's Motion for Summary Judgment in an adequate and substantive manner.

## II.    STATEMENT OF FACTS

Plaintiff hereby incorporates the Declaration of Samir J. Hussain (the "Hussain Declaration"), filed contemporaneously with this Memorandum.[3]

## III.    LEGAL STANDARD

An agency responding to a FOIA request must conduct a search "reasonably calculated to uncover all relevant documents." Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal quotation marks and citation omitted). The adequacy of a FOIA search is generally not determined by the results of the search, but rather by the appropriateness of the methods used to carry out the search. Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994). A search need not uncover all relevant documents, but an agency must show that it searched all locations likely to contain documents responsive to the FOIA request. Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326-327 (D.C. Cir. 1999).

FOIA demands that the government tailor its search to the nature of a particular request. Campbell v. DOJ, 164 F.3d 20, 28 (D.C. Cir. 1998). And while the agency need not search every record system in which responsive documents might conceivably be found, "an agency

---

[3] Since Plaintiff has not yet filed an Opposition to Defendant's Motion for Summary Judgment or a Cross Motion for Summary Judgment, Plaintiff reserves the right to submit a separate concise statement detailing all genuine issues of fact after the applicable discovery period, pursuant to local rule LCvR 7(h).

cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Campbell, 164 F.3d at 28 (quoting Oglesby, 920 F.2d at 68) (holding that the FBI was required to expand its search beyond its central index when it discovered information suggesting that documents existed in other databases, even when the FOIA requester did not specifically ask the FBI to search these other databases). Accordingly, an agency is required to revise its assessment of what is "reasonable" if additional leads emerge during the agency's initial search. Id. (holding that the reasonableness of an agency's search is not based on what the agency speculated at the start of its search but rather what the agency knew at its conclusion).

In determining the adequacy of a FOIA search, "[t]he Court employs a reasonableness test to determine the adequacy of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure." id. at 27 (internal quotation marks and citations omitted); see also Truitt, 897 F.2d at 542 (holding that the adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case). It is the agency's burden, when the adequacy of its search is challenged, to demonstrate beyond material doubt that the search was reasonable and calculated to uncover all relevant documents. Kronberg v. DOJ, 875 F. Supp. 861, 869 (D.D.C. 1995) (holding that the agency failed to meet its burden by failing to produce records documenting the agency's compliance with its own specific and demanding regulations mandating such documentation); see also Oglesby, 920 F.2d at 68 (holding that the burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").

4

An agency must submit "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched" to demonstrate the adequacy of its search. Valencia-Lucena, 180 F.3d at 326 (citing Oglesby, 920 F.2d at 68). The affidavit, however, must be nonconclusory and submitted in good faith. Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986).

While agency affidavits are normally "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," SafeCard Servs. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (internal quotation marks and citation omitted), such affidavits may be controverted either by contrary evidence in the record or by evidence of the agency's bad faith.[4] Spannaus v. CIA, 841 F. Supp. 14, 16 (D.D.C. 1993); see also, Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). For example, an agency's failure to locate documents that had been independently located by the requester is evidence of an inadequate search. Krikorian v. Dep't of State, 984 F.2d 461, 468 (D.C. Cir. 1993).

"[I]f review of the record raises substantial doubt, particularly in view of 'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." Valencia-Lucena, 180 F.3d at 326 (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 837 (D.C. Cir. 1979) (internal citation omitted)); see also Shurberg Broadcasting of Hartford, Inc. v. FCC, 617 F. Supp. 825, 831 (D.D.C. 1985) ("Therefore, especially mindful of the disadvantage faced by the plaintiff in attempting to test the claims raised by the agency in a FOIA action, where the plaintiff has pointed to some countervailing factor calling into question the completeness of the agency's search or otherwise

---

[4] A finding of no bad faith on the part of an agency, however, does not necessarily equate to a finding that the search was adequate. Krikorian v. Dep't of State, 984 F.2d 461, 468 (D.C. Cir. 1993).

questioning the satisfactory nature of the agency's response, an issue of material fact, precluding the denial of discovery and award of summary judgment may be recognized.") (internal citation omitted). In addition, if substantial doubt exists as to the adequacy of an agency's search, the court may require a more exhaustive account of an agency's search procedures and grant discovery under Rule 56(f) of the Federal Rules of Civil Procedure: "Thus, under Rule 56(f), the district court may defer ruling on a motion for summary judgment and permit discovery [in a FOIA action] so that the non-moving party may obtain the information necessary to show an issue of fact in dispute." Shurberg Broadcasting, 617 F. Supp. at 831; see also Exxon Corp. v. FTC, 466 F. Supp. 1088, 1094 (D.D.C. 1978), aff'd, 663 F.2d 120 (D.C. Cir. 1980) (holding that discovery is appropriate where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory); Citizens for Responsibility & Ethics in Wash. v. DOJ, No. 05-2078, 2006 WL 1518964 *3 (D.D.C. June 1, 2006) (holding that discovery may be granted if a plaintiff has made a sufficient showing of the agency acting in bad faith, raised a sufficient question of an agency's good faith, or when a factual dispute exists and a plaintiff questions the affidavits submitted by the agency).

## IV.    ARGUMENT

### A.    Defendant Conducted an Unreasonable FOIA Search.

#### 1.    Defendant's Affidavit is Insufficiently Detailed and Conclusory and Fails to Demonstrate Beyond Material Doubt that Defendant's FOIA Search was Reasonable.

In support of its Motion for Summary Judgment, Defendant has submitted the declaration of Brian J. Welsh (the "Welsh Declaration"), which is insufficiently detailed and is conclusory, and therefore, fails to demonstrate beyond material doubt that Defendant's search was reasonable

and calculated to uncover relevant documents. See Kronberg, 875 F. Supp. at 869. The records

that Mr. Hussain requested from Defendant include: "Mr. Hussain's 'Apprehension Record'; any

Border Patrol Disposition; I-213 Record of Deportable Alien; and any other information

possessed by DHS regarding Hussain's detention on July 24, 2003." (Compl., 14., and Exh. B

thereto; Welsh Decl., ¶ 4). In response to this specific request, Defendant advises that it

conducted an electronic search "based on Plaintiff's name, alien number, date of birth, and

description of the sought-after record" in "the agency's system of records known as the *Alien*

*File/Central Index System* . . . ." (Welsh Decl., ¶ 5). The Welsh Declaration provides no further

detail at all regarding Defendant's actual search for the specifically-requested records. The

remainder of the Welsh Declaration only discusses the process by which records found in the

Alien File/Central Index System (the "A-File Database") were physically located, processed,

scanned, reviewed, and delivered to Mr. Hussain.

  While the Welsh Declaration describes Defendant's standard procedures relating to the

*processing of search results* (Welsh Decl., ¶¶ 6, 7), it does not describe Defendant's standard

procedures relating to the *actual search for requested records*. The Welsh Declaration states that

the search was conducted, in part, based on a "description of the sought-after record," (Welsh

Decl., ¶ 5), but Mr. Welsh neglects to mention the specific search terms used to describe the

sought-after records. The Welsh Declaration also fails to explain how Mr. Hussain's specific

request for his arrest and detention records was processed differently than a general request for

all documents in a detainee's alien file (an "A-File"). See Campbell, 164 F.3d at 28 (holding that

FOIA searches must be tailored to the nature of a particular request). Lastly, the Welsh

Declaration fails to identify whether Defendant pursued any leads generated from its review of

the initial search records. See id. (holding that agencies must follow-up on leads that emerge from its initial search).

As a result of the Welsh Declaration's substantial lack of detail regarding Defendant's search in this case, the Court has no guidance for determining that the Defendant complied with its standard procedures, used proper search terms, properly tailored its search, or properly pursued leads generated from its initial search. This lack of detail also deprives the defense of the ability to demonstrate, on this motion, that its search complied with the law. Mr. Welsh's Declaration's conclusory representations do not meet the Defendant's burden. In a footnote, Mr. Welsh claims that all locations likely to contain responsive records were searched:

> Although the USCIS is the official custodian of the *Alien-File/Central Index System*, as a shared system of records, other contributors to the system's files are Immigration and Customs Enforcement (ICE), Customs and Border Protection (CBP), and U.S. Department of State (DOS). Accordingly, Plaintiff's Alien-File contains the universe of documented transactions and interactions between Plaintiff and U.S. immigration authorities, whether such actions involved the USCIS, ICE, CBP, DOS, or a combination thereof. (Welsh Decl., p. 2, n. 1.)

This conclusory assertion highlights Defendant's flawed search methodology. First, Mr. Welsh only states that ICE, CBP, and DOS *contribute* to the A-File Database. (Welsh Decl., p. 2, n. 1). This clearly does not mean, however, that *all* of the arrest and detention records generated by ICE, CBP, and/or DOS are included in the A-File Database. Second, the A-File Database is *one (1) of nine (9)* "Major Immigration Information Systems" maintained by the U.S. Citizenship and Immigration Services ("USCIS"),[5] and nowhere does Mr. Welsh aver each of these records systems was searched. Finally, it appears that prior to 2007,[6] USCIS processed sensitive or high-profile records at its headquarters, rather than at its National Record Center

---

[5] http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=fe30d0676988d
010VgnVCM10000048f3d6a1RCRD&vgnextchannel=34139c7755cb9010VgnVCM10000045f3d6a1RCRD.
[6] Defendant conducted its FOIA search in this case on September 26, 2005. (Welsh Decl., ¶ 5.)

("NRC"), in Lee's Summit, Missouri,[7] and that it is current USCIS policy to process requests for classified national security information off-line and not in FIPS[8] (USCIS' automated database for managing FOIA requests).[9,10]

Based on the above, it is clear that other DHS components, such as CBP and ICE, possess other data systems, and other locations and processing systems that are reasonably likely to contain responsive records. Therefore, Mr. Welsh's assertion that the A-File contains "the universe of records relating to Mr. Hussain's transactions and interactions with U.S. immigration authorities" is not only conclusory, it also is patently inaccurate. FOIA does not require courts to accept "glib government assertions of complete disclosure or retrieval," Perry v. Block, 684 F.2d 121, 162 (D.C. Cir. 1982), and Defendant should not be permitted to rely on conclusory assertions to mask its inexplicable failure to search locations likely to contain responsive records.

The Welsh Declaration also misleadingly pats DHS on the back:

> It is important to note that the USCIS, in good faith, interpreted Plaintiff's request of September 23, 2005, as liberally as logic and reason would permit. A literal interpretation of the express terms of Plaintiff's request would have relegated the USCIS to considering only those documents generated specifically in connection with, and as a direct result of Plaintiff's *detention on July 24, 2003*." Believing Plaintiff to be unaware that his entire alien file, chronicling the history of his various interactions with U.S. immigration authorities, would likely have been examined in connection with deportation proceedings, and would likely have influenced the outcome of the same, the USCIS felt that applying the more restricted interpretation would be perceived as

---

[7] http://www.dhs.gov/xlibrary/assets/CISOmbudsman_RR_30_FOIA_Processing_07-12-06.pdf, "Recommendation From the CIS Ombudsman to the Director, USCIS," July 12, 2006, p.3 ("Because FIPS can be accessed from any location, the NRC processes the primary FOIA/PA workload, while the USCIS FOIA/PA in Burlington, Vermont (Vermont) processes personnel-related and contract related requests, and the USCIS Headquarters (HQ) processes sensitive or high-profile records.")

[8] The Welsh Declaration does not mention FIPS, further casting doubt on whether Defendant conducted its search in accordance with its standard procedures.

[9] http://www.uscis.gov/files/nativedocuments/FOIA_HANDBOOK.pdf, "United States Citizenship and Immigration Services (USCIS) Freedom of Information Act (FOIA) and Privacy Act Handbook," June 2007 ("Requests for information containing classified National Security Information will be processed off-line and not in FIPS.")

[10] Mr. Hussain was told that his arrest and detention was motivated by national security, and he subsequently became a national security target. (Exhibit B, ¶¶ 6.b., 8, 11).

> disingenuous. Consequently, the USCIS deemed the subject alien
> file responsive to Plaintiff's request in its entirety and, accordingly,
> processed the same at no cost to Plaintiff. (Welsh Decl., ¶ 12.)

While Mr. Welsh lauds the government for what it claims is a generous interpretation, he fails to

mention that Defendant was required, under FOIA, to interpret Mr. Hussain's request liberally.

See Judicial Watch, Inc. v. Dep't of Defense, 2006 WL 1793297 *3 (D.D.C. June 28, 2006)

(stating that the government is required to interpret FOIA requests liberally); see also Wheeler v.

Executive Office of U.S. Attorneys, 2008 WL 178451 *8 (D.D.C. Jan. 17, 2008).[11]

Instead of demonstrating that Defendant's search was reasonably calculated to produce

the specifically-requested records, Mr. Welsh's one-sentence description of Defendant's search

through the A-File Database evidences a "one-and-done" and "one-size-fits-all" approach to

FOIA searches. As the Welsh Declaration is insufficiently detailed and conclusory, Defendant

may not rely on it in order to demonstrate the adequacy of its FOIA search. See Valencia-

Lucena, 180 F.3d at 326, Meeropol, 790 F.2d at 942. Consequently, Defendant has failed to

meet its burden of establishing a reasonable search in this case. See Oglesby, 920 F.2d at 68.

### B. Defendant's Affidavit is Controverted by Evidence Showing that Defendant's Search was Unreasonable.

#### 1. Defendant Failed to Search in Obvious Locations.

Since Mr. Hussain requested records relating to his arrest and detention, Defendant

should have inquired of the DHS component that arrested him – CBP, the DHS component that

further investigated him and detained him – ICE, and the facility in which he was detained,

---

[11] Welsh Declaration ¶ 12 furthers highlights Defendant's flawed search methodology. Defendant did not simply liberally interpret Mr. Hussain's FOIA request, Defendant re-characterized Mr. Hussain's specific request for his arrest and detention records into a request for records relating to his deportation proceedings. Logic and reason certainly do not permit this re-characterization. Defendant may have reviewed Mr. Hussain's entire A-File, but its apparent emphasis on Mr. Hussain's deportation proceedings, rather than documents "generated specifically in connection with, and as a direct result of Plaintiff's '*detention on July 24, 2003*,'" See Compl., 14, and Exh. A thereto, muddied the waters: Of the 598 pages of records produced by Defendant, more than half consist of Mr. Hussain's motion to reopen his asylum case and the exhibits, and other documents related to his request for asylum filed *after* Mr. Hussain's release from detention. (Exhibit B, ¶ 27.)

10

Krome. Since it was likely that these sources would turn up requested records, Defendant was

obligated to search these sources. See Oglesby, 920 F.2d at 68; Valencia-Lucena, 180 F.3d at

327. The Welsh Declaration, however, provides no indication that Defendant conferred with

CBP, ICE, or Krome. Defendant thus acted unreasonably by limiting its search to the A-File

Database. See id.

### 2.    Defendant Failed to Pursue Leads Generated by its Initial Search.

As with DHS here, in Campbell v. DOJ, the FBI initially limited its search to its Central

Records System index, "which is capable of locating most, but not all, documents responsive to a

general request for information about a particular subject." 164 F.3d at 27. The U.S. Court of

Appeals for the District of Columbia Circuit, however, held that since documents that the FBI

produced in this search indicated that additionally searching separate electronic surveillance

index and duplicate "tickler" files would have identified more information, the FBI failed to

conduct an adequate search. Id. at 28-29. Similarly, in this case, Defendant only searched its

central index system – the A-File Database – ignoring express references in the records produced

from its initial search that additional records were located elsewhere.

For example, one of the primary documents Mr. Hussain sought in his FOIA request was

an I-213 Record of Deportable Alien (the "Record of Deportable Alien"), which is attached

hereto as Exhibit A.[12] The narrative portion of the Record of Deportable Alien reveals the

following: (1) databases other than the A-File Database were positive for records relating to Mr.

Hussain, including the Deportable Alien Control System ("DACS") and the Non Immigrant

Information System ("NIIS"); (2) a case number of PPF0307000094 had been created for Mr.

Hussain, in addition to his A-File number of A075253244; (3) a file had been opened for Mr.

Hussain and documents included from NRC had been included in this file; and (4) the Joint

---

[12] Defendant produced the Record of Deportable Alien in its response to Mr. Hussain's FOIA request.

Terrorism Task Force was contacted, and was potentially interested in Mr. Hussain. In addition, several computer screen print-outs from DACS, NIIS, and the Computer Linked Application Information Management System ("CLAIMS"), all of which are "Major Immigration Information Systems" maintained by USCIS, see note 6 supra, were produced by Defendant. (Exhibit B, ¶ 28).

Therefore, at the conclusion of its search, Defendant knew that there were positive records relating to Mr. Hussain in DACS, NIIS, and CLAIMS, yet according to the Welsh Declaration, Defendant did not search these systems. Since the reasonableness of Defendant's search is based on what Defendant knew at the conclusion of its search, rather than on what Defendant speculated at the start of its search, it was unreasonable for Defendant not to search these systems. See Campbell, 164 F.3d at 28; Valencia-Lucena, 180 F.3d at 326.

Similarly, the Record of Deportable Alien indicates that a file, and case number, distinct from Mr. Hussain's A-File, and A-File number, was being used to identify Mr. Hussain. See Exh. A. Additionally, the Record of Deportable Alien's reference to the Joint Terrorism Task Force indicates that classified or other sensitive records relating to Mr. Hussain's arrest and detention likely exist. See id. There is no indication from the Welsh Declaration, however, that Defendant pursued these leads or that Defendant revisited its search methodology as a result of this information, including conferring with its headquarters in addition to the NRC, see note 8 supra. Defendant obviously reviewed the Record of Deportable Alien very carefully to make redactions. See Exh. A. At the conclusion of Defendant's search, Defendant therefore knew of Mr. Hussain's separate file, his separate case file number, and the existence of classified or other sensitive records relating to Mr. Hussain's arrest and detention, and Defendant's failure to pursue these leads was unreasonable. See Campbell, 164 F.3d at 28; Valencia-Lucena, 180 F.3d at 326.

12

### 3.    Defendant Failed to Produce Certain Key Documents Know to Exist that Related to Plaintiff's Arrest and Detention.

After Mr. Hussain was admitted to Krome, staff there were required to create a detainee detention file for Mr. Hussain, pursuant to Section III.A. of Defendant's detention standard for detention files (the "Detention Files Standard"),[13] as prescribed by Defendant's "Detention Operations Manual."[14] The Detention Files Standard contains detailed requirements that a detention file must, at a minimum, contain the following: (a) I-385, Alien Booking Record; (b) Classification Work Sheet; (c) Personal Property Inventory Sheet; (d) Housing Identification Card; (e) G-589, Property Receipt; and (f) I-77, Baggage Check(s) (the "Minimum Detention Files"). See § III.B.1. of the Detention Files Standard. In addition, during a detainee's stay at a facility, staff is required to add documents including: (a) special requests; (b) disciplinary forms; (c) grievances, complaints, and the disposition(s) of same; (d) all forms associated with disciplinary and/or administrative segregation; and (e) other approved documents, e.g., staff reports regarding the detainee's behavior. See § III.C.1. of the Detention Files Standard. The Detention Files Standard also makes clear that the detention file is separate from the detainee's A-File. See § III.B.1. of the Detention Files Standard ("If necessary, the detention file may include copies of material contained in the detainee's A-File.").

In his Declaration, Mr. Hussain refers to many records generated during his detention (or events likely to be documented), including: detainee classification records; records and notes of interviews by government officials; records of correspondence with a deportation officer; medical files; incident reports; reports documenting disciplinary and/or administrative segregation; employment records; commissary records; records of law library usage; bunk

---

[13] http://www.ice.gov/doclib/partners/dro/opsmanual/DetentFiles.pdf.
[14] http://www.ice.gov/partners/dro/opsmanual/.

13

checklists; and a receipt for possessions. (Exhibit B, ¶¶ 7, 8, 10, 11, 12, 13, 14, 15, and 18).

Defendant, however, has produced *none* of these records. (Exhibit B, ¶ 24). Furthermore,

Defendant produced none of the Minimum Detention Files. (Exhibit B, ¶ 25). Mr. Hussain's

detention file therefore obviously was not included among the records produced by Defendant.

Because Defendant has failed to produce Mr. Hussain's detention file, which the Detention Files

Standard specifically prescribes, Defendant has failed to demonstrate beyond material doubt that

its search was reasonable and calculated to uncover all relevant documents. See Kronberg, 875

F. Supp. at 869.

Furthermore, Mr. Hussain has identified several documents in his possession that were

not included with the documents produced by Defendant. (Exhibit B, ¶ 26). Defendant's failure

to locate documents that have been independently located by Mr. Hussain is evidence of an

inadequate search. See Krikorian, 984 F.2d at 468. Mr. Hussain also identifies a sworn

statement that he was required to sign at the Fort Lauderdale border patrol station. (Exhibit B, ¶

6.b). However, Defendant did not produce this sworn statement. (Exhibit B, ¶ 23). While a

FOIA search need not uncover all relevant documents, Oglesby, 920 F.2d at 68, taken together,

Defendant's failure to produce Mr. Hussain's detention file, documents independently located by

Mr. Hussain, and Mr. Hussain's sworn statement taken on the day of his arrest, show that

Defendant's search of only the A-File database was methodically flawed and unreasonable.

Defendant's failure to produce certain key documents is a prime example of "positive indications

of overlooked materials," precluding summary judgment in this case. See Valencia-Lucena, 180

F.3d at 326 (quoting Founding Church of Scientology of Wash., D.C., Inc., 610 F.2d at 837)

(internal citation omitted).

14

Where circumstances raise substantial doubt as to the adequacy of an agency's search, discovery is appropriate. Shurberg Broadcasting, 917 F. Supp. at 831; see also Exxon Corp. v. FTC, 466 F. Supp. at 1094. The insufficiently detailed and conclusory Welsh Declaration, Defendant's failure to search in obvious locations, to conduct required follow-up, and to locate certain key documents known to exist, all raise substantial doubt as to the adequacy of Defendant's search. Accordingly, under Rule 56(f), the Court should stay disposition of Defendant's Motion for Summary Judgment and grant leave to seek discovery. See id.

**C.    Scope of Plaintiff's Discovery Request.**

Plaintiff respectfully requests limited discovery because Defendant has not demonstrated beyond a material doubt that it has conducted a reasonable FOIA search in this case. Campbell v. DOJ, 193 F. Supp. 2d 29, 36 (D.D.C. 2001); see generally 5 U.S.C. § 552. As with Campbell, the adequacy of Defendant's search for Mr. Hussain's specifically-requested arrest and detention records is clearly in doubt. See id.

To remedy Defendant's inadequate search, Plaintiff seeks discovery that is circumscribed pursuant to Campbell. See id. Discovery would include interrogatories, depositions, and document requests. See generally Fed. R. Civ. P. 26-37. As in Campbell, Mr. Hussain desires limited discovery to investigate Defendant's standard FOIA search procedures, the scope of Defendant's search for responsive documents, and records not previously released by Defendant's FOIA search. See Campbell, 193 F. Supp. 2d at 36; see also Safecard Servs., Inc., 926 F.2d at 1200-1202.

Additionally, Mr. Hussain requests a deposition of a government official pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 30(b)(6); Campbell, 193 F. Supp. 2d at 36; see also Fed. R. Civ. P. 30(b)(6). Mr. Hussain will provide the Court with copies

15

of deposition questions prior to the assigned date to prevent the expansion of discovery. Mr. Hussain's request for deposition of a government official pursuant to Rule 30(b)(6) is reasonable and will be limited in scope.

## V.    CONCLUSION

"The fundamental principle animating FOIA is public access to government documents." Valencia-Lucena, 180 F.3d at 325. The public's access to information is only possible through rigorous enforcement of FOIA's protections. If FOIA is not strictly enforced by the Courts, then agencies, left unchecked, may continue to circumvent the requirements and intent of FOIA by stonewalling legitimate record requests. More individuals, like Mr. Hussain, may be detained without ever knowing the full reasons for their fate.

If an agency may "lightly avoid its responsibilities by laxity in identification or retrieval of desired materials, the majestic goals of [FOIA] will soon pass beyond reach. And if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory." Founding Church of Scientology of Wash., D.C., Inc., 610 F.2d at 837. The letter and spirit of FOIA demand reasonably calculated searches conducted in good faith to produce requested documents.

For the foregoing reasons, Mr. Hussain implores the Court to grant his Rule 56(f) Motion to Stay Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery. As indicated in Mr. Hussain's Motion, he has requested oral argument to further clarify his position before the Court.

Respectfully Submitted,

Dated: April 16, 2008

/s/ Charles D. Tobin
Charles D. Tobin (Bar No. 455593)[15]
Holland & Knight LLP
2099 Pennsylvania Ave. N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000 Phone
(202) 955-5564 Fax
*Counsel for Plaintiff*

---

[15] The previous filings in this case did not reflect Plaintiff's counsel's correct Bar Number for this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2008, a true and correct copy of the foregoing Memorandum of Points and Authorities, with Exhibits was served on counsel for the Defendant by the Electronic Case Filing system and by U.S. mail, postage prepaid, addressed as follows:

> Jeffrey A. Taylor, Esq.
> Rudolph Contreras, Esq.
> John G. Interrante, Esq.
> Civil Division, E-4806
> 555 4th Street, N.W.
> Washington, D.C. 20530
> (202) 514-7220
> (202) 514-8780 (fax)


> /s/ Charles D. Tobin_____
> Charles D. Tobin

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIR HUSSAIN,                  ) | |
|                         ) | |
|           Plaintiff,        ) | |
|                         ) | |
|        v.                  ) | Civil Action No. 07-1633 (PLF) |
|                         ) | |
| UNITED STATES DEPARTMENT OF     ) | |
| HOMELAND SECURITY,          ) | |
|                         ) | |
|           Defendant.       ) | |

## ORDER GRANTING PLAINTIFF'S RULE 56(F) MOTION TO STAY DISPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING LEAVE TO SEEK DISCOVERY

Upon consideration of Plaintiff's Rule 56(f) Motion to Stay Disposition of Defendant's

Motion for Summary Judgment Pending Leave to Seek Discovery, it is hereby

ORDERED that that disposition of Defendant's Motion for Summary Judgment is

STAYED.

FURTHER ORDERED that Plaintiff is permitted to serve its interrogatories and

document requests on Defendant.

FURTHER ORDERED that Plaintiff may depose one (1) relevant government official

designated by Defendant.

SO ORDERED, this _____ day of _____, 2008.

_____
HON. PAUL L. FRIEDMAN
UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

**Record of Deportable Alien**

U.S. Department of Justice

Immigration and Naturalization Service

# Record of Deportable/Inadmissible Alien

| Family Name (CAPS) | First | Middle | | Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|---|---|---|---|
| HUSSAIN, Samir Jaber | | | | M | BLK | BRO | MED |

| Country of Citizenship | Passport Number and Country of Issue | File Number | | Height | Weight | Occupation |
|---|---|---|---|---|---|---|
| IRAQ | M0710775 | Case No: PPP0307000094 A075 253 244 | | 71 | 165 | |

| U.S. Address |
|---|
| C/O US SPC KROME 18201 SW 12 STREET MIAMI, FLORIDA 33194 |

Scars and Marks

| Date, Place, Time, and Manner of Last Entry | Passenger Boarded at | F.B.I. Number | ☒ Single ☐ Divorced ☐ Married ☐ Widower ☐ Separated |
|---|---|---|---|
| 10/12/1996, Unknown Time, NYC, AIR | | 419306JB6 | |

| Number, Street, City, Province (State) and Country of Permanent Residence | Method of Location/Apprehension |
|---|---|
| | TCB UNKNOWN |

| Date of Birth | Date of Action | Location Code | At/Near | Date/Hour |
|---|---|---|---|---|
| 08/31/1969    Age: 33 | 07/24/2003 | MIP/PPF | Fort Lauderdale, Florida | 07/24/2003 1136 |

| City, Province (State) and Country of Birth | AR ☒ | Form: (Type and No.) | Lifted ☐ | Not Lifted ☐ | | |
|---|---|---|---|---|---|---|
| , IRAQ | | | | | | |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry | Status When Found |
|---|---|---|---|
| | | Non-Immigrant | IN TRAVEL |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. (b)(7)(c) |
|---|---|---|
| | | OVER 1 YEAR |

| Immigration Record | Criminal Record |
|---|---|
| POSITIVE - See Narrative | None known |

| Name, Address, and Nationality of Spouse (Maiden Name, If Appropriate) | Number and Nationality of Minor Children |
|---|---|
| | |

| Father's Name, Nationality, and Address, if Known | Mother's Present and Maiden Names, Nationality, and Address, if Known |
|---|---|
| , Jaber | , Saadia |

| Monies Due/Property in U.S. Not in Immediate Possession | Fingerprinted? Yes ☒ No ☐ | INS Systems Checks See Narrative | Charge Code Word(s) R1B |
|---|---|---|---|

| Name and Address of (Last)/(Current) U.S. Employer | Type of Employment | Salary Hr. / / | Employed from/to / /    / / |
|---|---|---|---|

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN #: 13841718

FUNDS IN POSSESSION
160.00    US - Dollar

INS SYSTEMS CHECKS
Central Index System Positive
Deportable Alien Control System Positive
National Crime Information Center Negative
Non Immigrant Information System Positive

Narrative Title: Record of Deportable/Excludable Alien
Narrative Created by                    (b)(7)(c)

Subject named above, a native and citizen of Iraq entered the United States on October
12, 1996 at New York, New York as a B2 Visitor with authorization to remain in the United
States for a temporary period not to exceed November 11, 1996. Subject failed to depart.

Subject was encountered during transportation check at the Greyhound bus station in Fort
Lauderdale, Florida. Subject was enroute from Miami, Florida to Los Angeles, California.

During questioning, subject admitted that he was a citizen of Iraq. He stated that he has
an asylum case pending. Subject presented an expired Employment Authorization Card which

| Alien has been advised of communication privileges. S.H    7/24/03 (Date/Initials) | | of INS Official) |
|---|---|---|

| Distribution: A-FILE CPA/MIP MIP/PPF | Received Office: on: July 24, 2003 at 1148 (time) |
|---|---|
| | Disposition: Warrant of Arrest/Notice to Appear |
| | Examining Officer |

Form I-213 (Rev. 4/1/97) Y

440

(b)(7)(c)

**U.S. Department of Justice**
Immigration and Naturalization Service

**Continuation** age for Form  **I-213**

| Alien's Name | File Number Case No: PPF0307000094 | Date |
|---|---|---|
| HUSSAIN, Samir Jaber | A075 253 244 | 07/24/2003 |

expired on 01/26/00.

Records checks through CIS by way of radio to ⬚ revealed that the subject did apply for asylum on December 2, 1996. A decision by EOIR on December 1, 1997 indicates a failure to prosecute since no NTA was served on the court. (b)(7)(e)

Subject requested a new Employment Authorization Document on January 24, 2002. That request was denied on November 12, 2002.

A copy of subject's NTA, 863, 213 and Asylum memo was requested from the National Records Center and is included in this file.

Since the subject has filed an asylum claim prior to implementation of NSEERS, he does not fall into the category of those required to register.

Joint Terrorism Task Force was contacted. Special Agent ⬚ was given all available information pertaining to this subject. SA ⬚ is currently in the process of determining if JTTF has an interest in the subject. He was not prepared to make a decision at the time of this writing. (b)(7)(c)   (b)(7)(c)

Subject is being served with a Notice To Appear based on the B2 Overstay Charge. Subject will be transported to Krome Service Processing Center with No Bond. Space was authorized by SDEO ⬚ (b)(7)(c)

| Signature | Title |
|---|---|
| ⬚ (b)(7)(c) | SENIOR PATROL AGENT |

Form I-831 Continuation Page (Rev. 6/12/92)

<u>2</u> of <u>2</u> Pages

441

**EXHIBIT B**

**Declaration of Samir J. Hussain**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIR HUSSAIN,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Civil Action No. 07-1633 (PLF) |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY,      ) | |
| ) | |
| Defendant.      ) | |

## DECLARATION OF SAMIR J. HUSSAIN IN SUPPORT OF PLAINTIFF'S RULE 56(F) MOTION TO STAY DISPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING LEAVE TO SEEK DISCOVERY

I, SAMIR J. HUSSAIN, hereby declare under penalty of perjury under the laws of the United States that the following statements are true and correct to the best of my knowledge and recollection:

1. I am over eighteen (18) years of age and competent to testify. I have personal knowledge of the matters and facts set forth in this Declaration.

2. I submit this Declaration pursuant to Fed. R. Civ. P. 56(f) to establish that I cannot at this time present all facts essential to support my Opposition to Defendant United States Department of Homeland Security's ("DHS") Motion for Summary Judgment.

3. I was born in Baghdad, Iraq on August 31, 1969, and I am a thirty-eight (38) year old citizen of Iraq. I studied at the University of Baghdad, where I received a degree in Computer Science in 1989. I also earned a Certificate in Business Administration from American University in Cairo, Egypt.

4. I reside at 2031 South West 10th Avenue Apt. 26, Portland, Oregon 97201.

5. I entered the United States on October 12, 1996, in New York, N.Y. on a B1/B2 visa. On November 13, 1996, I filed for asylum affirmatively before the Legacy Immigration and Naturalization Service (INS) Asylum Office and had my interview in Chicago. My asylum claim was based on my fear of returning to Iraq because I deserted the army after refusing to take part in killing civilians during the early 1990s. As desertion is punishable by mutilation or execution in Iraq, I had fled Iraq to avoid this punishment at the hands of Saddam Hussein's regime.

6. I was subsequently referred to the Executive Office for Immigration Review (EOIR- Immigration Court). A Los Angeles, California Immigration Judge terminated proceedings on December 1, 1997 for INS' failure to prosecute because

the charging documents had apparently not been filed with the Immigration Court. Around or about April 2003, I attempted to re-open my case in a Miami, Florida Immigration Court, at which point, I was interviewed by an immigration official, who I recall was from the Department of Homeland Security (DHS) United States Citizenship and Immigration Services (USCIS). Despite numerous attempts to have my case resolved, however, my asylum application had not been re-opened by the time of my arrest on July 24, 2003.

7.    The circumstances of my arrest are as follows:

    a.    On July 24, 2003, I boarded a Greyhound bus en route from Ft. Lauderdale, Florida to Los Angeles, California. The bus was stopped by DHS United States Customs and Border Protection (CBP) agents at a roadblock in Ft. Lauderdale. An agent boarded the bus and began asking passengers for identification. When the agent learned of my name, he asked me where I was from. Of all the people on the bus, most of whom appeared to be of international origin, I was the only person asked that question. I told him I was from Iraq and handed him my Florida driver's license. The agent immediately ordered me to follow him, and I got off the bus with my luggage. The agent proceeded to ask me about my immigration status, and I told him that I possessed documents demonstrating that I was seeking asylum, but the agent refused to look at these documents at that time.

    b.    I was taken to a CBP station in Ft. Lauderdale, where I was interrogated by other agents and detained in a cell for approximately eight (8) hours. The agents reviewed my asylum paperwork, took handwritten notes, acknowledged my attempt to re-open my asylum case in April 2003, and made frequent phone calls to unknown officials of unknown agencies regarding my case. I was required to sign a typed sworn statement that included questions and answers and another document while at the CBP station. I was neither informed of my right to counsel nor my right to remain silent during this interrogation. After discussing my case with his supervisor, one agent strangely apologized to me. Surprisingly, however, I was not released. I was, instead, taken to the DHS Immigration and Customs Enforcement (ICE) Krome Service Processing Center ("Krome") and detained without bond. I was not told of the basis for my detention.

8.    Upon my entry into Krome, I was fingerprinted and given an orange uniform. I came to learn that an orange uniform is given to persons with a criminal history, even though I did not have any criminal history in the United States. I should have received a blue uniform, which is reserved for non-criminal detainees, including asylum seekers and persons posing no threat or the lowest threat.

9.    During the first few days at Krome, I was interviewed by a Federal Bureau of Investigation (FBI) agent. The FBI agent informed me that he had been following me for a few months. He appeared to have a file on me, as he leafed through papers that were in front of him during the interview. He asked me about my family, my recent whereabouts, and my contacts. He informed me that he had questioned my ex-roommate and ex-landlord about me a few months prior to my arrest. He also repeatedly asked me about weapons of mass destruction and Saddam Hussein. He took handwritten notes on a notepad. In addition, he never

advised me of any of my rights. I was absolutely shocked by the agent's questions and had no idea why he was asking me about Saddam Hussein or weapons of mass destruction. I have never had any association or connection with Saddam Hussein or any terrorism-related group or activity.

10. On August 5, 2003, less than a week after my arrest, I appeared before the Krome Immigration Judge and requested deportation, waiving my right to appeal. I did not pursue my application for asylum, because I no longer wanted to be incarcerated and I believed that conditions in Iraq had improved and would continue to improve as a result of the overthrow of Saddam Hussein's regime. I believed that after this regime change, Iraq would be a free and open society wherein I could work and live. The Krome Immigration Judge entered an order for my removal on August 5, 2003.

11. After approximately two (2) or three (3) weeks, I contacted my deportation officer via mail from Krome to get an update on my deportation. The deportation officer called me and indicated that the processing of my deportation had been delayed because the government mistakenly believed that I was an individual being pursued by the FBI, indicating to me that this individual had terrorist connections.

12. I was subsequently interviewed three (3) or four (4) times while at Krome by a Department of Defense (DOD) official from Washington D.C., but I don't know why. He had a copy of my resume and asked me about my family members, weapons of mass destruction, and Saddam Hussein. He took handwritten notes on a legal notepad and frequently referenced notes that he had taken during previous interviews. He never advised me of any of my rights.

13. While at Krome, I was labeled as a "terrorist" by the other immigration detainees and the DHS officials and was blamed for 9/11. I became depressed and started seeing the psychiatrist at Krome once per week. The psychiatrist prescribed two (2) types of anti-depressants and sleeping pills to me. Each time I visited him, he took notes for my file. I still suffer from depression as a result of my ordeal, and I see a therapist once a week and a psychiatrist twice a month. I am still on antidepressant medications.

14. Also while at Krome, I was attacked twice, once by an inmate wearing an orange jumpsuit, signifying that he had a criminal background, and once by an inmate wearing a red jumpsuit, signifying that he was a felon. I suffered injuries from each incident. After each incident, I was immediately placed in solitary confinement. I signed an incident report after each attack.

15. I worked at the Krome cafeteria for a stipend of one dollar ($1) per day. I completed a log each time I worked. I also completed a log for each of my outgoing phone calls and for each of my expenditures at the commissary. I signed in and out of the law library each time I used it, which was at least once per week.

16. My bunk area was frequently inspected at Krome, and DHS officials would complete a checklist at each inspection.

17. I was fingerprinted on approximately 3 different occasions after my initial fingerprinting. During the fingerprinting, I noticed that there were at least 2 different files on me, since each file was a different color. I recall that one file was red and one file was green.

18.  Unable to secure my deportation to Iraq after the Krome Immigration Judge's August 5, 2003 removal order, DHS released me from detention under an Order of Supervision on March 1, 2004, almost eight months after my arrest. Upon my release, one of the DHS officials at Krome personally apologized to me.

19.  On the day of my release, DHS officials completed an outprocessing checklist for me. I returned to Krome the next day to obtain the backpack, documents, and money that had been taken from me at the U.S. customs and border patrol station in Ft. Lauderdale and kept in storage at Krome. I signed a receipt for these possessions.

20.  After my release from Krome, I visited the Florida Immigrant Advocacy Center (FIAC), a non-profit legal service provider, in order to pursue my asylum case.

21.  On February 15, 2005, I was granted asylum based on my well-founded fear of persecution in Iraq on account of: (1) my membership in a particular social group of open bisexuals living in an Islamic society; (2) my political opinion, namely my support of the efforts of the American-led military forces to bring freedom to Iraq; (3) the political opinion that would have been imputed to me because I had lived in the United States for many years and had an Americanized and Westernized lifestyle; and (4) my religion as an Alawite, a religious sect considered heretical by many Muslims.

22.  At my asylum hearing on February 15, 2005 at the Miami, Florida Immigration Court, I was told by the DHS ICE Trial Attorney that I was detained solely because of my last name.

23.  I filed this Freedom of Information Act lawsuit in order to inform the public as to the circumstances of my detention and the harassment that I underwent at the hands of government officials. I spoke in Miami and at the National Press Club for the Florida Immigrant Advocacy Center in Washington D.C. regarding this ordeal in May, 2005.

24.  The sworn statement that I signed at the Ft. Lauderdale border patrol station that I reference in Section 6.b. above is not included with the records produced by DHS as a part of my FOIA request.

25.  The records that I reference in Sections 7, 8, 10, 11, 12, 13, 14, 15, and 18 above (or documentation of events that I reference in these sections) are not included with the records produced by DHS as a part of my FOIA request.

26.  The following records are not included with the records produced by DHS as a part of my FOIA request: (a) I-385, Alien Booking Record; (b) Classification Work Sheet; (c) Personal Property Inventory Sheet; (d) Housing Identification Card; (e) G-589, Property Receipt; and (f) I-77, Baggage Check(s).

27.  I am in possession of the following records that were not included with the documents produced by DHS as a part of my FOIA request:

    a.  My DHS medical records, attached as Exhibit A to this Declaration;

    b.  A letter sent to me by the Honorable Dianne Feinstein, United States Senator, on February 9, 1999, attached as Exhibit B to this Declaration;

    c.  A "Request for Evidence" form sent to me by the U.S. Department of Justice, Immigration and Naturalization Service, Nebraska Service Center, dated June 9, 2000, attached as Exhibit C to this Declaration;

d.   A portion of my handwritten letter to the U.S. Department of Justice, Immigration and Naturalization Service, regarding my Application for Employment Authorization, with INS notes at the top, attached as <u>Exhibit D</u> to this Declaration;

e.   My handwritten letter sent to the U.S. Department of Justice, Immigration and Naturalization Service, Nebraska Service Center, regarding my request for travel submitted on December 27, 2005, attached as <u>Exhibit E</u> to this Declaration;

f.   A letter sent to me by DHS, dated April 13, 2006, regarding my request for expedited processing of my Application for Travel Document, Form I-131, which states that "Your correspondence has been connected with the file," and Refugee Travel Document attached as Composite <u>Exhibit F</u> to this Declaration;

g.   My subsequent applications for adjustment of status to permanent residency, Forms I-485 and G-325A filed with DHS USCIS, and related I-797 and I-797C USCIS Notice of Actions attached as Composite <u>Exhibit G</u> to this Declaration; and

h.   A copy of my social security card and my employment authorization cards, attached as <u>Exhibit H</u> to this Declaration.

Executed on _4 , 14_____, 2008.

_____
Samir J. Hussain

5

## <u>EXHIBIT A</u>

**Medical Records**

1.    Form I-794 – In-Processing Health Screening Form (3 Pages)
      INS Health Service Division
      Krome/FL – 07/24/03

2.    Radiography Report
      Division of Immigration Health Services
      Krome/FL – 07/25/03

3.    Form 521 – Medical Record - Dental
      INS Krome/FL – 07/30/02

4.    Form DIHS-843 – Medical Report
      INS Krome/FL – 08/08/03

5.    Form DIHS-795 – Physical Examination Form
      INS Krome/FL – 08/08/03

6.    Lab Report (Lab Corp Tampa) (2 pages)
      INS Medical Referral Ctr.
      Krome/FL – 10/25/03

7.    Lab Report (Lab Corp Tampa) (1 page)
      INS Medical Referral Ctr.
      Krome/FL – 11/04/03

8.    Medication Profile
      USPHS Medical Facility – Pharmacy
      Division of Immigration Health Services
      Krome/FL – 11/13/03 and 11/14/03

9.    Medication Profile
      USPHS Medical Facility – Pharmacy
      Division of Immigration Health Services
      Krome/FL – 08/14/03 to 11/12/03

10.   Dental Treatment Record Continuation Form (2 pages)
      INS Krome/FL – 10/31/03 to 11/12/03

U.S. DEPARTMENT OF JUSTICE

Immigration and Naturalization Service

INS HEALTH SERVICES DIVISION

In-Processing Health Screening Form

INS LOCATION: (Circle) Krome, El Paso Port Isabel, San Ysidro, El Centro

Florence, Boston, New York, Other: _____ /

| 1. Name | HUSSAIN | SAMIR JABER | 2. DOB: 8/31/1969 |
|---|---|---|---|
| 3. A# | 75-253-244 | | 4. Sex: M |
| 5. Nationality | IRAQ | | 5. Today's Date: 7/24/2003 |

**SECTION I: ASK THE DETAINEE** (Check the appropriate box)

Please mark any bruise distinguihing physical ch and notify the INS HSD ... detainee needs any kind of medical evaluation.

Y **N** Have you seen a doctor in the past year?
  If YES, for what?
Y **N** Are you having any pain?
  If YES, where ?
Y **N** Have you been hospitalized in the past six months?
  If YES, for what?
Y **N** Have you ever been treated for problems with drugs, or alcohol?
  #Name?

Do you now have you ever any of the following ?
Y **N** Your Skin break out in bumps or trouble breathing after taking medications
Y **N** Sores on your privates or a drip from your privates
Y N #Name?
Y **N** Fits or seizures?
Y **N** Trouble peeing?
Y **N** Persistent cough ( of more than 3 weeks in duration)?
Y N #Name?
Y **N** Not been able to eat with a significant weight loss?
Y **N** A persistant fever?
Y **N** Night sweats?
Y N #Name?

Y **N** Are you afraid you might lose your mind or go crazy?
Y **N** Are you afraid you might hurt or kill yourself or others?
Y **N** If female, are you pregnant?   N/A

13# d tattoos/scars

**SECTION II: YOUR OBSERVATIONS OF THE DETAINEE** (Check the appropriate box)

Does the detainee appear to be:

Y **N** Not doing what you tell him to do
Y **N** Acting crazy or strange
Y **N** Sweating a lot?
Y **N** Malnourished?

Does the detainee seem to have:

Y **N** Shaking / Tremors?
Y **N** Skin broken out in bumps/rash?
Y **N** Cuts or bruises
Y **N** A handicap?
Y **N** Needle Tracks?

**SECTION III: DETAINEE SENT TO** (Circle appropriate number)

1. General Populatio

2. General Population with referral to medical car

3. Referral for immediate medical car

4. Isolation until medically evaluate

llBrantley

LTJG Morgan, ...
Signature of individual completing the for
Registered Nurse

THIS FORM WILL BE SENT TO THE MEDICAL CLINIC AFTER IT IS COMPLETED

Form I-794 (Rev 9/95)

Division of Immigration Health Services          Mental Health Screening

---

**ASK DETAINEE:**

1. Name: _____ Samir
2. What country are you in? _____ USA
3. What is this place? _____ Krome
4. What is today's date? _____ 7/25/03
5. How do you feel today? _____ Okay
6. In the past two weeks have you felt [depressed] [anxious] [scared] [confused] [other]......Y___N_X_
   Explain_____
7. Have you felt like hurting yourself?...................................................................Y___N_X_
   Explain _____
8. Have you ever felt like hurting someone else?.................................................Y___N_X_
   Explain_____
9. Have you felt like others want to hurt you?...................................................Y___N_X_
   Explain_____
10. Have you ever heard voices or seen things that other people did not hear or see?............Y___N_X_
    Explain_____
11. Have you ever felt that you were being controlled by someone or something other than yourself?........
                                                                                    Y___N_X_
    Explain_____
12. Have you felt so nervous that you were unable to carry out daily activities?.................Y___N_X_
    Explain_____
13. Have you ever been seen by a Psychiatrist, Psychologist, or mental health provider for any reason? ...
                                                                                    Y___N_X_
    Explain_____
14. Has a Psychiatrist or Physician ever prescribed you medications for your nerves?............Y___N_X_
    Explain_____
15. How much alcohol do you consume on a regular basis? (include the number of mixed drinks, glasses
    of wine or 12oz beers per day per week) _____ a couple glasses of wine /wk
16. When was the last time that you consumed alcohol? _____ 3 days ago
17. Have you taken any illicit drugs and which? _____ crystal meth.
18. When was the last time that you consumed drugs? _____ weeks ago
19. Have you ever been unconscious?...................................................................Y___N_X_
    Explain_____
20. Have you ever been arrested?......................................................................Y___N_X_
    How many times, what for and age of first arrest_____

21. Have you lost control of your anger or fear losing control of your anger?.................Y___N_X_
    Explain_____

Additional Comments:_____
_____
_____
_____

| Monique Brantley | | |
| --- | --- | --- |
| Provider Signature | LTJG Monique Brantley<br>Registered Nurse<br>Provider Stamp | 7/25/03<br>Date |

| IMPRINT OF DETAINEE ID PLATE, COMPUTER LABEL OR COMPLETE BELOW | |
| --- | --- |
| 1.  Name: | |
| 2. | 3.  A#: |
| 4.<br>Iraq | Hussain, Samir<br>75253244 |
| | 5.  Facility: |

Form 07/24/2003  M 08/31/1969       INS HSD KROME

Division of Immigration Health Services                    History and Physical Examination Form

## History of Present Illness

Currently have or ever had *(please circle)*:

| | | | | | |
|---|---|---|---|---|---|
| Athsma | Yes | (No) | High Blood | Yes | (No) |
| Diabetes | Yes | (No) | Pressure | | |
| Epilepsy | Yes | (No) | Malaria | Yes | (No) |
| Heart Trouble | Yes | (No) | Mental Illness | Yes | (No) |
| Hepatitis | Yes | (No) | Tuberculosis | Yes | (No) |
| + HIV | Yes | (No) | Venereal Disease | Yes | (No) |
| | | | Other: | | |

Family History of *(please circle)*:

mom
Athsma      Yes    (No)    High Blood    (Yes) (No) lie
Cancer      Yes    (No)    Pressure
Diabetes  sister (Yes)   No    Mental Illness    Yes    (No)
         dad
Epilepsy    (Yes)   (No)    Tuberculosis    Yes    (No)
Heart Trouble  Yes  (No)
                            Other: _____

Ever Hospitalized? No____ Yes ✓, list:  Last year (2002) ① knee ligament damage

Female: Pregnant? No____ Yes____, LMP _____ Gravida _____ Para _____

Current Health:    Good ✓   Fair____   Poor____   Explain: _____

Any special health requirements? No ✓  Yes____, list: _____

Current Medication(s): ____ none ____

Known allergies to medication(s): ✓ No____ Yes, list: _____

Other Allergies: ✓ No____ Yes, specify: _____

Chemical Dependence? (alcohol, drugs) ✓ No____ Yes, If Yes: Substance: _____ Date of last use: _____

Do you have any pain? ✓ No____ Yes, If Yes: Where? _____ How often does it occur? _____

How long does it last? _____ What helps? _____ Describe the pain: _____

Comments: _____

General Appearance: _____

Temperature: 99    Pulse: 89    Blood Pressure: 114/74    Weight: 154
Height: 68/4    Visual Acuity: Right 20/____    Left 20/____

M. Brantley R  7/25/03            LTJG Monique Brantley
Provider's Signature      Date            Registered Nurse
                                      Printed Name of Provider

### IMPRINT OF DETAINEE ID PLATE, COMPUTER LABEL OR COMPLETE BELOW:

| | | |
|---|---|---|
| 1. Name: | (Last) | (First) |
| 2. DOB: | Hussain, Samir | 3. A # |
| | 75253244 | |
| 4. Na | INS HSD KROME | 5. Facility: |

Form DIHS-   Iraq
          07/24/2003  M 08/31/1969

## DIANAssociates Teleradiology

### RADIOGRAPHY REPORT

DIANAssociates, INC.
513 Benfield Rd.
Severna Park, MD 21146
Phone: 410-544-7846   Fax: 410-544-5203

SITE:          DIVISION_OF_IMMIGRATION_HEALTH_SERVICES/KROME_FL
NAME:          HUSSAIN^SAMIR
ID #:          75253244
DATE OF X-RAY:      07/25/2003
DATE OF BIRTH:      08/31/1969

Results _____

| TB Screening | General Radiography |
|---|---|
| **Negative: X**<br>Negative Except For<br>Calcified Granuloma(ta)<2cm:__<br>Negative Except For:__<br>Abnormal:__<br>Positive, TB Suspect:__ | Negative:__<br>Negative Except For:__<br>Abnormal:__ |

Study Description:
Body Part:   CHEST

FINDINGS:

CDR. ABELARDO MONTALVO, M.D.
PHYSICIAN

SIGNED BY RADIOLOGIST:    hogan

DATE:   07/25/2003                TIME:   03:12:05 AM

521-109                                                                                              NSN 7540-00-634-4164

| MEDICAL RECORD | DENTAL |
|---|---|

**1 CHART**



RIGHT

| 1 | 2 | 3 | 4 | (5) | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

LEFT

| 32 | 31 | 30 | 29 | 28 | 27 | 26 | 25 | 24 | 23 | 22 | 21 | 20 | 19 | 18 | 17 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**2 ROENTGENOGRAMS**
☑ PERIAPICAL  ☐ BITEWINGS  ☐ OTHER

**3 PERIODONTOCLASIA**
☐ INCIPIENT  ☐ MODERATE  ☐ SEVERE
☐ LOCAL  ☐ GENERAL

**4 CALCULUS**
☐ SLIGHT  ☐ MODERATE  ☐ HEAVY

**5 GINGIVAL PATHOLOGY**
☐ GINGIVITIS  ☐ VINCENT'S INFECTION
☐ STOMATITIS (Specify)

**6 DENTURE INDICATED** (Include dentures needed after indicated extractions )
☐ FULL UPPER  ☐ FULL LOWER
☐ PARTIAL UPPER  ☐ PARTIAL LOWER  ☐ REPAIR

**7 ABNORMALITIES OF OCCLUSION, ANGLES CLASSIFICATION**
☐ I  ☐ II  ☐ III  ☐ NORMAL

| 8 DENTAL CLASSIFICATION | 9 TYPE OF EXAMINATION |
|---|---|

**10 ADDITIONAL FINDINGS**

#17 Distal FX

**11 RECOMMENDATIONS**

| 12 APPROXIMATE TIME REQUIRED FOR DENTAL TREATMENT | 13 DATE JUL 3 0 2003 | 14 SIGNATURE OF PHYSICIAN *J. Gilley* | CDR Luis E. Garabis, DDS Chief Dental Office |
|---|---|---|---|

| 15 GRADE RATING OR POSITION | 16 TYPE OF BENEFICIARY | 17 SEX ☐ M ☐ F | 18 RACE | 19 AGE | 20 SERVICE ☐ INPATIENT ☐ OUTPATIENT ☐ OTHER |
|---|---|---|---|---|---|

| PATIENT'S IDENTIFICATION (For typed or written entries give Name—last, first, middle, grade rank, rate hospital or medical facility) | 22 IDENTIFICATION NO | 23 REGISTER NO | 24 WARD NO |
|---|---|---|---|

Hussain, Samir
75253244
INS HSD KROME

Iraq
07/24/2003  M 08/31/1969

**DENTAL**
Medical Record

STANDARD FORM 521 (Rev 3–94)
Prescribed by GSA/ICMR, FIRMR (41 CFR) 201–9 202–1

RAL PHYSICAL CHARACTERISTICS:

1. Motor
   A. Posture:    Stooped, erect, slouched
   B. Gait:       Shuffle, stagger, stiff, awkward
   C. Gestures:   Tics, grimace, limp, rigid, tremor
   D. Activity:   Overactive, underactive, purposeful
   E. Facial:     Alert, tense, worried, sad, happy, pained, frightened, angry,
                  sneering, ecstatic, laughing, smiling, suspicious

2. Behavior
   Indifferent, frank, friendly, embarrassed, seeking help, evasive, afraid, resentful,
   sullen, angry, erotic, irritable, assaultive, negativistic, dramatic, impulsive.

Comments: _____

HARACTERISTICS OF TALK-- SPEECH QUALITY:

Soft, loud, stutter, hesitant, accent, over talkative, fear, suspicion, language difficulty, coherent, non-coherent,
scattered, neologism, verbiage, blocking, circumstantially, preservation, flight of ideas, mute

Comments _____

:MOTIONAL STATE:

Composed, complacent, frank, friendly, playful, teasing, silly, cheerful, boastful, elated, grandiose, ecstatic, tense,
worried, anxious, pessimistic, sad, perplexed, bewildered, gloomy, depressed, frightened, aloof, distant, defensive,
.uspicious, irritable, resentful, hostile, angry, furious, indifferent, resigned, apathetic, dull, affect loss, suicidal, homicidal

Comments_____

THOUGHT CONTENT:

Delusion, reference/persecution, alien control, nihilistic, delusion of self-depreciation, grandeur, somatic,
hallucination, obsession, compulsion, phobias

Comments _MALE_____

MEMORY:

Remote past:  When/where were you born? _____ _Nag_____
Recent past:  What did you have for breakfast today? ___8_____

Immediate recall:  What is my name? _____ _Hussain_____

INSIGHT:

Does the detainee understand and recognize the significance of his symptoms and of the situation in which he finds himself?

_____ _Yes_____
_____

DISPOSITION:

_____

_____

_____        LCDR Karl Bailey        __8/8/03__
Signature of Provider        Physician Assistant        Date
                             Printed Name of Provider

Form DIHS-843, continuation (7/99)

## PHYSICAL EXAMINATION FORM

General: _____

_____ _good_ _____

_____

_____

_____

| | N | A | R | Comments | | N | A | R | Comments |
|---|---|---|---|---|---|---|---|---|---|
| Head | | | | | Heart | | | | |
| Eyes | | | | | Abdomen | | | | |
| Ears | | | | | Genitals | | | | |
| Nose | | | | | Rectal | | | | |
| Throat | | | | | Extremities | | | | |
| Mouth/Teeth | | | | | Skin | | | | |
| Neck | | | | | Neuro | | | | |
| Chest | | | | | Psych | | | | |
| Lungs | | | | | Other | | | | |

Comments _____

_____

| | N | A | R | |
|---|---|---|---|---|
| Assessment | X | | | Physical Examination |

Plan _____

_____

_____

_____     _____     LCDR Karl Bailey
       Signature                      Date        Physician Assistant
                                                   _____
                                                      Printed Name

Key:  N= Normal
      A= Abnormal
      R= Refused/ Not evaluated

Form DIHS-795 continued (8/00)

**LabCorp®**

| Specimen #<br>297-768-1122-0 | Contro<br>C9KQ | Number<br>.80930 | Pg     1 | | RI SEQ   4713 |
|---|---|---|---|---|---|

| Fasting<br>✓ | Micro Source | Total Urine Volume | Report Status<br>S / Final | Clinical Information<br>KROME<br>C |
|---|---|---|---|---|
| Collected<br>10/24/03 | Time Collected<br>16:30 | Date Entered<br>10/24/03 | Date Reported<br>10/25/03 | |

| Patient ID Number<br>75253244 | Patient Phone Number | | Patient SSN | Account<br>09180930 |
|---|---|---|---|---|

| Patient Name<br>NO LAST, NO FIRST | Sex<br>M | Date of Birth<br>08/31/69 |
|---|---|---|

INS MEDICAL REFERRAL CTR KROME
LCDR KIRSTEN WARWAR, HSA
18201 SW 12TH ST
MIAMI, FL 33194
305-552-1845

Patient Address

Comments
Patient Age: 034/01

Phy Name: ARNP

Tests Requested     PANEL 083824

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|

VIRAL MARKERS
HIV-1 Abs, Qual                                                                                    TA
          Result:  NEGATIVE by EIA screen.
          No antibodies to HIV-1 detected.

----------------------------------------------------------------------
Lab: TA LABCORP TAMPA              Director: JOSEPH MIGLIOZZI, MD
     5610 W LASALLE STREET TAMPA, FL 33607-0000
----------------------------------------------------------------------
For inquiries, the physician may contact: Branch: 305-436-9232 Lab: 800-877-5227
                    Last Page of Report

*DR. ABELARDO MONTALVO, M.D.
PHYSICIAN*

10/30/03
DF
CTAFIKE NP

©2002 Laboratory Corporation of America® Holdings
All Rights Reserved

O LAST, NO FIRST                    Report Date: 10-25-03   Report Time: 10:0A FT

**LabCorp®**

| Specimen # | Control Number | Pg 1 | R. SEQ 4710 |
|---|---|---|---|
| 297-768-1107-0 | C9LI .80930 | | |

| Fasting | Micro Source | Total Urine Volume | Report Status |
|---|---|---|---|
| Yes | | | S / Final |

Clinical Information

C P

| ate Collected | Time Collected | Date Entered | Date Reported |
|---|---|---|---|
| 10/24/03 | 16:30 | 10/24/03 | 10/25/03 |

| Patient ID Number | Patient Phone Number | Patient SSN |
|---|---|---|
| 75253244 | | |

Account

09180930
INS MEDICAL REFERRAL CTR KROME
LCDR KIRSTEN WARWAR,HSA
18201 SW 12TH ST
MIAMI, FL 33194
305-552-1845

| Patient Name | Sex | Date of Birth |
|---|---|---|
| JUSSAIN, SAMIR | M | 08/31/69 |

Patient Address

Comments
Patient Age: 034/01

Phy Name: ARNP F

Tests Requested    CBC WITH DIFFERENTIAL/PLATELET; COMP. METABOLIC PANEL (14); TSH;
edimentation Rate-Westergren

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| HEMISTRIES | | | | | |
| Glucose, Serum | 81 | | mg/dL | 65 - 109 | TA |
| BUN | 11 | | mg/dL | 5 - 26 | TA |
| Creatinine, Serum | 0.9 | | mg/dL | 0.5 - 1.5 | TA |
| BUN/Creatinine Ratio | 12 | | | 8 - 27 | |
| Sodium, Serum | 133 | L | mmol/L | 135 - 148 | TA |
| Potassium, Serum | 4.8 | | mmol/L | 3.5 - 5.5 | TA |
| Chloride, Serum | 96 | | mmol/L | 96 - 109 | TA |
| Carbon Dioxide, Total | 25 | | mmol/L | 20 - 32 | TA |
| Calcium, Serum | 9.8 | | mg/dL | 8.5 - 10.6 | TA |
| P ein, Total, Serum | 6.7 | | g/dL | 6.0 - 8.5 | TA |
| A umin, Serum | 4.4 | | g/dL | 3.5 - 5.5 | TA |
| Globulin, Total | 2.3 | | g/dL | 1.5 - 4.5 | |
| A/G Ratio | 1.9 | | | 1.1 - 2.5 | |
| Bilirubin, Total | 0.5 | | mg/dL | 0.1 - 1.2 | TA |
| Alkaline Phosphatase, Serum | 177 | H | IU/L | 25 - 150 | TA |
| AST (SGOT) | 58 | H | IU/L | 0 - 40 | TA |
| ALT (SGPT) | 109 | H | IU/L | 0 - 40 | TA |
| EMATOLOGY | | | | | |
| White Blood Cell (WBC) Count | 6.3 | | X 10-3/uL | 4.0 - 10.5 | TA |
| Red Blood Cell (RBC) Count | 4.22 | | X 10-6/uL | 4.10 - 5.60 | TA |
| Hemoglobin | 12.6 | | g/dL | 12.5 - 17.0 | TA |
| Hematocrit | 36.8 | | % | 36.0 - 50.0 | TA |
| MCV | 87 | | fL | 80 - 98 | TA |
| MCH | 29.9 | | pg | 27.0 - 34.0 | TA |
| MCHC | 34.3 | | g/dL | 32.0 - 36.0 | TA |
| Polys | 50 | | % | 40 - 74 | TA |
| Lymphs | 41 | | % | 14 - 46 | TA |
| Monocytes | 7 | | % | 4 - 13 | TA |
| Eos | 2 | | % | 0 - 7 | TA |
| Basos | 0 | | % | 0 - 3 | TA |
| Polys (Absolute) | 3.2 | | X 10-3/uL | 1.8 - 7.8 | TA |
| Lymphs (Absolute) | 2.6 | | X 10-3/uL | 0.7 - 4.5 | TA |
| Monocytes(Absolute) | 0.4 | | X 10-3/uL | 0.1 - 1.0 | TA |
| Eos (Absolute Value) | 0.1 | | X 10-3/uL | 0.0 - 0.4 | TA |
| Baso(Absolute) | 0.0 | | X 10-3/uL | 0.0 - 0.2 | TA |
| Platelets | 194 | | X 10-3/uL | 140 - 415 | TA |
| RD | 13.3 | | | 11.7 - 15.0 | TA |
| Seaimentation Rate-Westergren | 2 | | hr | 0 - 15 | TA |
| HYROID STUDIES | | | | | |

DR ABELARDO MONTALVO, M.D.
PHYSICIAN

10/30/03
DR
LT ALICE FIKE, FNP
NURSE PRACTITIONER

©2002 Laboratory Corporation of America® Holdings
All Rights Reserved

**LabCorp®**

| Specimen # | Control/Req Number | Pg 1 | | Rt REQ 4744 | |
|---|---|---|---|---|---|
| 304-768-1615-0 | DMTV 80930 | | | | |

| Micro Source | Total Urine Volume | Report Status S / Final | Clinical Information |
|---|---|---|---|
| | | | IRAQ, KROME C |

| Date Collected | Time Collected | Date Entered | Date Reported |
|---|---|---|---|
| 0/31/03 | 00:00 | 10/31/03 | 11/04/03 |

| Patient ID Number | Patient Phone Number | Patient SSN |
|---|---|---|
| 5253244 | | |

Account
09180930
INS MEDICAL REFERRAL CTR KROME
LCDR KIRSTEN WARWAR, HSA
18201 SW 12TH ST
MIAMI, FL 33194
305-552-1845

| ent Name | Sex | Date of Birth |
|---|---|---|
| JSSAIN, SAMIR | M | 08/31/69 |

ent Address

nments
atient Age: 034/02

ts Requested   HEPATITIS PANEL (4)

| TESTS | RESULT | FLAG | UNITS | REFERENCE INTERVAL | LAB |
|---|---|---|---|---|---|
| RAL MARKERS | | | | | |
| ep B Surface Ag | Negative | | | Negative | TA |
| ep B Core Ab, IgM | Negative | | | Negative | TA |
| ep C Virus Ab | | | | Negative | TA |

   Result: NON-REACTIVE
   (This test is a 2nd generation
   assay for the detection of multi-
   ple forms of anti-HCV in human
   serum or plasma. A test result
   that is negative does not exclude
   the possibility of exposure to or
   infection with HCV. Negative re-
   sults in this assay in individuals
   with prior exposure to HCV may be
   due to antibody levels below the
   limit of detection of this assay
   or lack of antibody reactivity to
   the HCV antigens used in this assay.)

| scellaneous Testing | | | | | |
|---|---|---|---|---|---|
| ep A Ab, IgM | Negative | | | Negative | TA |

   Interpretation:
   No current or recent Hepatitis A
   infection indicated.

Lab: TA LABCORP TAMPA          Director: JOSEPH MIGLIOZZI, MD
     5610 W LASALLE STREET TAMPA, FL 33607-0000

r inquiries, the physician may contact: Branch: 305-436-9232 Lab: 800-877-5227
          Last Page of Report

REPORT

©2002 Laboratory Corporation of America® Holdings
All Rights Reserved

USPHS MEDICAL FACILITY – PHARMACY – DIVISION OF IMMIGRATION HEALTH SERVICES

| MEDICATION PROFILE | -> DATE -> | NOV 13 2003 | NOV 14 2003 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MEDICATION & STRENGTH | DIRECTIONS | | | | | | | | | | | |
| Citalopram 40mg | i Q i 300 | 30 | | | | | | | | | | |
| Amitriptyline 50mg | i Q HS | | 30 | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

MEDICATION PROFILE                                    PAGE # _____

PATIENT INFORMATION | DRUG SENSITIVITY / ADVERSE REACTIONS

Hussain, Samir
75253244
INS HSD KROME

Iraq
07/24/2003  M 08/31/1969

USPHS MEDICAL FACILITY - PHARMACY - DIVISION OF IMMIGRATION HEALTH SERVICES

| MEDICATION PROFILE | -> DATE -> | AUG 14 2003 | AUG 20 2003 | AUG 27 2003 | SEP 8 2003 | SEP 17 2003 | SEP 26 2003 | OCT 14 2003 | OCT 17 2003 | OCT 23 2003 | OCT 28 2003 | NOV 12 2003 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MEDICATION & STRENGTH | DIRECTIONS | | | | | | | | | | | |
| Citalopram 20mg | P QD 1300 | 14 | | D/c | | | | | | | | |
| Ibuprofen 600mg | i TID PRN | | 42 | | | | | | | | | |
| Citalopram 40mg | P QD 1300 | | | | 30 | | 30 | | 30 | | | |
| Ibuprofen 800mg | i TID | | | | | 45 | | 45 | 45 | | | |
| Amitriptyline 25mg | i QHS | | | | | | 15 | 15 | | | | |
| Pcn VK 500mg | P QID | | | | | | | | | 40 | | |
| Amitriptyline 50mg | i QHS | | | | | | | | | | 15 | |
| Tramadol 50mg | i Q10 PP | | | | | | | | | | | 16 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

MEDICATION PROFILE                          PAGE #_____

PATIENT INFORMATION

DRUG SENSITIVITY / ADVERSE REACTIONS

NKA

Hussain, Samir
75253244
INS HSD KROME

Iraq
07/24/2003  M 08/31/1969

DENTAL TREATMENT RECORD CONTINUATION FORM

| Date | Tooth # | Diagnosis · Treatment · Remarks | Signature |
|---|---|---|---|
| T 2 3 2003 (1000) | 17 | (1) I need my tooth pulled | |
| | | (2) #17 DO recurrent decay. | |
| | | (3) #17 non-restorable | |
| | | (4) Administered 1.8ml Marcaine .5% w/ epi 1:200K | |
| | | Administered 5.4ml Xilo 2% w/ epi 1:100K | |
| | | Unable to fully anesthetize patient. | |
| | | There is a marked reaction everytime | |
| | | pressure is applied to the tooth w/ | |
| | | the forceps. Explained to patient that | |
| | | he will have to take antibiotics and | |
| | | then return for the extraction. | |
| | | Pt understands. | |
| 036170 | | (1) Use Penicillin VK 500mg | |
| | | (x 10 days) | |
| | | ī aid until all taken | |
| 036171 | | (2) Ibuprofen 800mg | |
| | | (x 5 days) | |
| | | ī tid for pain | |
| Patient has from previous order | | (3) Re-schedule for Extraction | _signature_ CDR Luis E. Garabis, DDS Chief Dental Officer |

| Ord Date 10/23/03 | HUSSAIN, SAMIR 75-253-244 | L. GARABI | Ord Date 10/23/03 | HUSSAIN, SAMIR 75-253-244 | L. GARABI |
|---|---|---|---|---|---|
| Exp. Date 11/01/03 | TAKE ONE TABLET FOUR TIMES A DAY BY MOUTH | | Exp Date 10/25/03 | TAKE ONE TABLET THREE TIMES A DAY BY MOUTH AS NEEDED FOR PAIN | |
| Rx # 36238 | PENICILLIN V POTASSIU 500 MG TAB #40 | | Rx # 36239 | IBUPROFEN 800 MG TAB #15 | |

CAPT FREDERICK TOWNROE, RPh   _Fred Townroe_
Registered Pharmacist

Filled By: _FST_

Typed By: _____

| OCT 3 1 2003 (1000) | 17 | Administered 1.8ml Marcaine .5% w/ epi 1:200K | |
| | | Administered 3.6 ml Xilo 2% w/ epi 1:100K | |
| | | Unable to fully anesthetize patient. Will | |
| | | refer to Oral Surgeon for extraction | _signature_ |
| | | of #17 | CDR Luis E. Garabis, DDS Chief Dental Officer |

Hussain, Samir
75253244
INS HSD KROME

Iraq
07/24/2003  M 08/31/1969       INS HSD KROME

INS KROME SPC

DENTAL TREATMENT RECORD CONTINUATION FORM

| e | Tooth # | Diagnosis · Treatment · Remarks | Signature |
|---|---------|----------------------------------|-----------|
| OV 1 2 | 2003 | Patient returned from Oral Surgeon. Pt | |
| (Ba) | 17 | had #17 extracted under IV sedation. Pt is | |
| | | doing well. | |
| 036761 | | Rx'd Tramadol 50mg | J Gilas |
| | | (x 4 days) | CDR Luis E. Garabis, DDS |
| | | 1 tab for pain | Chief Dental Officer |

APT FREDERICK TOWNROE, RPh
Registered Pharmacist

| Ord Date 11/12/03 | HUSSAIN, SAMIR 75-253-244 | L GARABI | 0900 |
| Exp. Date 11/15/03 | TAKE ONE TABLET FOUR TIMES A DAY BY MOUTH AS NEEDED FOR PAIN | | 1300 |
| Rx # 36038 | TRAMADOL HCL 50MG TAB | #16 | 1700 2100 |

Filled By: _____
Typed By: _____

INS KROME SPC

## **EXHIBIT B**

**Honorable Dianne Feinstein Letter**

COMMITTEE ON APPRC
COMMITTEE ON THE JUDICIARY
. . . . . . . . . ON RULES AND ADMINISTRATION

# United States Senate
### WASHINGTON, DC 20610-0504

February 9, 1999

Mr. Samir J. Hussain
1541 N Martel Ave Apt 231
Los Angeles, California  90046

Dear Mr. Hussain:

The Department of Justice has told me that your application was approved on January 27, 1999 and a new card was ordered.  You should receive the new card in 45 to 60 days.

I hope that this information is helpful and that it will clarify the situation for you.  If you have further questions, or if there is any way my office can help you in the future on other federal problems, I hope you will contact me again.

With warmest personal regards.

Sincerely yours,

Dianne Feinstein
United States Senator

DF:mjb

**<u>EXHIBIT C</u>**

**Request for Evidence**

**U.S. Department of Justice**
Immigration and Naturalization Service

*Nebraska Service Center*
*P.O. Box 82521*
*Lincoln, NE 68501-2521*

Date: Jun 9 2000

Refer to File No.:

SAMIR HUSSAIN
7474 HOLLYWOOD BLVD
LOS ANGELES CA 90046

04/26/2000    WAC-00-137-51209 LINEMS01

## REQUEST FOR EVIDENCE

*THE INITIAL DOCUMENTATION SUBMITTED WITH YOUR FORM I-765, (Application for Employment Authorization), **IS NOT SUFFICIENT TO WARRANT FAVORABLE CONSIDERATION OF YOUR APPLICATION**. Submittal of the following items and/or additional information will assist in the processing of your application.*

**Please submit the items checked below:**

1. ___ Form I-765 must be accompanied by two color photos; therefore, **PLEASE SUBMIT TWO COLOR PHOTOS OF YOURSELF, TAKEN WITHIN THE LAST 30 DAYS, AND NOT PREVIOUSLY USED**. These photos must have a white background. Photos must be glossy, unretouched, and not mounted. Dimension of the facial image should be about 1 inch from chin to top of hair or head, shown in 3/4 frontal view of right side of face with right ear visible. Using soft pencil or felt pen, print name (and alien registration number, if known) on the back of each photograph. You should show these instructions to the photographer who takes the pictures.

2. ___ **Photo ID:** Submit a photocopy of a photo identity document such as a **passport showing your picture and name, and date of birth**, or a driver's license, or another type of photo ID, issued by a government agency, with the same information. The identity document photocopy must *clearly show* the photograph and identity information.

3. ___ I-94: Submit a photocopy of the front and back of *your* Form I-94 (ARRIVAL/DEPARTURE RECORD) or the most recent I-797 Approval Notice authorizing an extension or change of status.

   *** If the Form I-94 is not available, submit a photocopy of the page(s) from the passport establishing admission into the United States.*

4. ___ Proof of ASYLUM status: Submit photocopies of the documentation issued by this Service granting you asylum status.

5. ___ **I-538:** Submit a photocopy of the completed Application by Nonimmigrant Student for Extension of Stay, School Transfer, or Permission to Accept or Continue Employment (Form I-538).

6. ___ **Endorsed I-20:** Submit a photocopy of your Form I-20 A-B or I-20 M-N endorsed within the past 30 days by a designated school official. It must be endorsed on the bottom half of page 4.

7. ___ **Economic Hardship:** Submit documentary evidence which details the unforeseen economic circumstances that caused your request (Include a listing of all assets, incomes, liabilities, expenses, etc.).

8. ___ **IAP-66:** Submit a photocopy of your J-1's (principal alien's) Certificate of Eligibility for Exchange Visitor (J-1) Status (Form IAP-66).

*(Continued on reverse side)*

**<u>EXHIBIT D</u>**

**Handwritten Letter Regarding Application for Employment Authorization**

Request file to resend remial notice!

HSP
Order file

_____ No A#/LIN#
_____ Cannot make exact match
_____ What is current FCO?
_____ Other

_____ Foreign Address
_____ Please review A#
__X__ Remail Notice/ Ret 11-14-00
_____ Document   WAC 0013751209

A# A75 253 244    I'm sending this letter because I didn't recieve any reply on my case #WAC00-137-51209 dated on 4/5/00 I send 2 letters prior to this one gave my new address because I moved out of the state of california I'm curently in Florida and it's the end of November and I still didn't recieve any reply on my letter dated 6/23/00 I explain that I had a situation with my mail been stolen at that time and I gave also my new address but I didn't

`

## EXHIBIT E

**Handwritten Letter Regarding Request for Travel Document**

Cover Letter.

TO: NEBraska Service center

Fax: 1402-219-6171          Pages: 4

Reciept # LIN-06-048-50667

## Urgent

Pls Find Attached all Documets

and Letter Regarding This case.
Thank you.

Samir J. Hussain

A# 75253244          Fax #: 305-826-544:

cell: 305-215-0344          H: 305-826-544:

Email: Samiralany1@yahoo.com

Address: 67 E 41 St
         Hialeah, FL. 33013

Page: 1

To Whom it may concern?

This is Samir J. Hussain

A# 75253244. I had Filled FOR I131

on Dec/27/05 my Reciept# LIN-06-048-50

AS OF today There is no word about the status

of my case.

I applied to travel because my mother is

ill and I haven't seen her in 15 Years

due to the situation in IRaq.

curently she Resides in Syria since she
Left IRaq. about a month aga due to

the Security Situation.

I am in urgent need to go see her

since her health is declining. my mothe

is 78 Years old and she can't trave

I was suppose to go See her in

EGYpt, but her visa was delayed

and bought myself a plane ticket to go to Syria. I am due to Leave the Country on The 27th of April, and Still need a visa for Syria and the Netherland were I am going to Stop.

I am writing today to Plead For Your help to speed up the issuance of my travel document So I can go and See my ill mother Wich She Can't wait any Longer.

I would be Forever gratfull For Your help and Kindness.

Thank You

Samir J. Hussain

Page: 2

Tel: 305-215-03(

Email: Samiralanyl (@

Yahoo.com

Cell: 786-262-63

<u>**COMPOSITE EXHIBIT F**</u>

**DHS's Letter dated April 13, 2006
and
Refugee Travel Document**

Department of Homeland Security
I   Box 82521
Lincoln, NE  68501-2521



**U.S Citizenship
and Immigration
Services**

April 13, 2006
LIN0604850667

SAMIR J HUSSAIN
67 E 41ST
HIALEAH FL  33013

Dear Sir or Madam:

This acknowledges your expedite request received by this office regarding the I-131 filed on your behalf.  Current Service policy provides that expedited processing requests may be accepted for the following reasons:

1. Severe financial loss to company or individual
2. Extreme emergent situation
3. Humanitarian situation
4. Non-profit status of petitioner in pursuit of cultural/social interest in the U.S.
5. Department of Defense or National Interest Situation (Note: Request must come from official United States Government Entity and state that the delay will be detrimental to our government.)
6. Service Error
7. Compelling interest of the Service

Based upon the information you provided, a determination was made that your request did meet the current criteria for expedited processing.  Your correspondence has been connected with the file. The adjudicating officer will review the information and proceed accordingly.

If you have any further questions please feel free to contact the National Customer Service Center at their toll free number, 1-800-375-5283 or you may access the USCIS website at www.uscis.gov should you have any further questions or need additional information.

Sincerely,

Gregory W. Christian
Acting Director
NSC/SMH109

UNITED STATES DEPARTMENT
OF HOMELAND SECURITY
U.S. Citizenship and Immigration Services

This is NOT a United States Passport

The Travel Document does not protect your residence for naturalization purposes.

Pursuant to the provision of section 273 of the Immigration and Nationality Act, this document is issued to the person named herein and may be used to readmit its rightful holder to the United States, if otherwise admissible. See important information on pages 21, 22, 23, 24 and on the inside of the back cover.

If this document is found, please return to:
U.S. Citizenship and Immigration Services
Nebraska Service Center
P.O. Box 87131
Lincoln, Nebraska 68501

THIS DOCUMENT AT ALL TIMES REMAINS THE PROPERTY OF THE UNITED STATES
AND SHALL BE RETURNED TO THE GOVERNMENT UPON DEMAND.

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR
NOT VALID UNLESS SIGNED

## UNITED STATES OF AMERICA
Department of Homeland Security

U.S. Citizenship and
Immigration Services

Refugee Travel Document
Form I-571 (Rev. 02/13/07)Y



Titre de voyage pour réfugié

| | | |
|---|---|---|
| Type/Catégorie | Country/Pays | File Number/Numéro de Dossier |
| **TP** | **IRAQ** | **A075253244** |
| Entries/Entrées | Book #/Nº de Livret | |
| **M** | **400064477** | |
| Surname/Nom | | |
| **HUSSAIN** | | |
| Given Names/Prénoms | | Middle Name/Deuxième Prénom |
| **SAMIR** | | **J** |
| Date of Birth/Date de Naissance | Gender/Sexe | Class/Catégorie |
| **31 AUG/AOÛT 1969** | **M** | **ASYLEE** |
| Date of Issue/Date de Délivrance | | Date of Expiration/Date d'Expiration |
| **09 AUG/AOÛT 2007** | | **09 AUG/AOÛT 2008** |
| Restrictions/Restrictions | | |
| **NONE** | | |

```
TPUSAHUSSAIN<<SAMIR<J<<<<<<<<<<<<<<<<<<<<<<<<
4000644776IRQ6908315M0808099LIN0722251111<04
```

## Purpose of Travel Document

A Travel Document issued by the U.S. Citizenship and Immigration Services has no effect under the immigration laws, except to show that the person holding the document is returning from a temporary visit abroad and relieved from having to obtain a visa at an American Embassy or Consulate to enter the United States. It does not exempt him or her from meeting other requirements of the immigration laws. The following and other aliens found to be inadmissible under the immigration laws are subject to removal if attempting to reenter the United States, notwithstanding they may be in possession of a Travel Document issued by the U.S. Citizenship and Immigration Services:

- Aliens who have been convicted of or admit having committed a felony or misdemeanor involving moral turpitude either before or after entering the United States;

- Other criminal, immoral, insane, mentally or physically defective aliens; and

- Those aliens determined to have a communicable disease of public health significance.



## Important Information for Holders of Travel Document

Depending on your immigration status and the circumstances of your case, you have been issued this Travel Document that contains a Permit to Reenter the United States (Form I-327) or Refugee Travel Document (Form I-571).

### A. Reentry Permit

A Reentry Permit is issued pursuant to Part 223.1(a), of Title 8, of the U.S. Code of Federal Regulations (CFR). The Reentry Permit allows a permanent resident to apply for admission to the United States upon return from abroad during the period of the permit's validity without the necessity of obtaining returning resident visa.

### B. Refugee Travel Document

1. A Refugee Travel Document is issued pursuant to Article 28, United Nations Convention of July 28, 1951, the Protocol of January 31, 1967, relating to the Status of Refugees, and Part 223.1(b), of Title 8, CFR. It is issued solely to provide the bearer with a travel document that does not affect or prejudice the bearer's nationality in any way.

2. The bearer will be permitted to return to the United States within the period of validity of this document and may be accorded the immigration status specified therein.

3. If the bearer of this document takes up residence in another country and wishes to travel again, he or she must apply to the competent authorities in that country for a new travel document. In such case, the new country of residence is requested to withdraw this travel document and return it to the USCIS Nebraska Service Center, P.O. Box 87131, Lincoln, NE 68501.



400064477

become ineligible for naturalization on the basis of his or her original entry or adjustment as an immigrant.

## Lawful Permanent Residents of the U.S.: Effect of Absence From the United States on Eligibility for Naturalization

A Travel Document issued by the U.S. Citizenship and Immigration Services does not relieve the person to whom issued from meeting the requirements of the naturalization laws. Notwithstanding the possession of such document, absence from the United States by an applicant for naturalization for a continuous period of one year or more during the period for which continuous residence in the United States is required for admission to citizenship will break the continuity of such residence. This law is effective, except where, prior thereto, the Secretary of the Department of Homeland Security has approved an absence in the employment of, or under contract with, the United States Government or an American institution of research recognized as such by the Secretary or in the employment of an American firm or corporation engaged in whole or part in the development of foreign trade and commerce of the United States or a subsidiary thereof, more than 50 percent of whose stock is owned by the American firm or corporation, or in the employment of a public international organization of which the United States is a member by treaty or statute, and by which the alien is not employed until after being lawfully admitted

for permanent residence. In order to qualify, the applicant must have at least one year of uninterrupted physical presence as a lawful permanent resident in the United States prior to requesting an approved absence. The granting of such approval does not exempt the applicant from the requirement that he or she be physically present in the United States for at least one-half of the period of residence required for naturalization, except in the case of those persons who are employed by, or under contract with, the Government of the United States, those persons who are authorized to perform the ministerial or priestly functions of a religious denomination having a bona fide organization within the United States, and those persons who are engaged solely by a religious denomination or by an interdenominational mission organization having a bona fide organization within the United States as a missionary, brother, nun or sister. Such approval should be applied for on Form N-470, "Application to Preserve Residence for Naturalization Purposes," (under Section 316(b) or 317, Immigration and Nationality Act). The form is available at any office of the U.S. Citizenship and Immigration Services, from the USCIS website at www.uscis.gov or by calling our National Customer Service Center at 1-800-375-5283. Aliens who are absent in connection with or for the purpose of performing the ministerial or priestly functions of a religious denomination having a bona fide organization in the United States, as a missionary, brother, nun or sister, are also eligible to file such application. Such aliens may acquire the required one year of uninterrupted physical presence after the absence.

## COMPOSITE EXHIBIT G

**DHS Form I-485, Application to Register Permanent Residence or Adjust Status
and
DHS Form G-325A, Biographic Information and
related I-797 and I-797C, USCIS Notice of Action**

OMB No. 1615-0023; Expires 09/30/08

**Department of Homeland Security**
U.S. Citizenship and Immigration Services

# I-485, Application to Register
## Permanent Residence or Adjust Status

| START HERE - Please type or print in black ink. | For USCIS Use Only | |
|---|---|---|
| **Part 1. Information about you.** | Returned | Receipt |

| Family Name | Given Name | Middle Name |
|---|---|---|
| Hussain | Samir | Jaber |

Address- C/O
Samir Hussain

| Street Number and Name | | Apt. # |
|---|---|---|
| 67 East 41st Street | | |

City
Hialeah

| State | Zip Code |
|---|---|
| Florida | 33013 |

| Date of Birth *(mm/dd/yyyy)* | Country of Birth: Iraq |
|---|---|
| ▉▉▉▉ | Country of Citizenship/Nationality: Iraqi |

| U.S. Social Security # | A # *(if any)* |
|---|---|
| ▉▉▉▉ | ▉▉▉▉ |

| Date of Last Arrival *(mm/dd/yyyy)* | I-94 # |
|---|---|
| 10/12/1996 | None |

| Current USCIS Status | Expires on *(mm/dd/yyyy)* |
|---|---|
| Asylee | Indefinite |

**For USCIS Use Only**

Returned

Resubmitted

Reloc Sent

Reloc Rec'd

Applicant Interviewed

**Part 2.    Application type.** *(Check one.)*

I am applying for an adjustment to permanent resident status because:

a. ☐ an immigrant petition giving me an immediately available immigrant visa number has been approved. (Attach a copy of the approval notice, or a relative, special immigrant juvenile or special immigrant military visa petition filed with this application that will give you an immediately available visa number, if approved.)

b. ☐ my spouse or parent applied for adjustment of status or was granted lawful permanent residence in an immigrant visa category that allows derivative status for spouses and children.

c. ☐ I entered as a K-1 fiancé(e) of a United States citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiancé(e). (Attach a copy of the fiancé(e) petition approval notice and the marriage certificate).

d. ☒ I was granted asylum or derivative asylum status as the spouse or child of a person granted asylum and am eligible for adjustment.

e. ☐ I am a native or citizen of Cuba admitted or paroled into the United States after January 1, 1959, and thereafter have been physically present in the United States for at least one year.

f. ☐ I am the husband, wife or minor unmarried child of a Cuban described above in (e) and I am residing with that person, and was admitted or paroled into the United States after January 1, 1959, and thereafter have been physically present in the United States for at least one year.

g. ☐ I have continuously resided in the United States since before January 1, 1972.

h. ☐ Other basis of eligibility. Explain. If additional space is needed, use a separate piece of paper.

**I am already a permanent resident and am applying to have the date I was granted permanent residence adjusted to the date I originally arrived in the United States as a nonimmigrant or parolee, or as of May 2, 1964, whichever date is later, and:** *(Check one.)*

i. ☐ I am a native or citizen of Cuba and meet the description in (e) above.

j. ☐ I am the husband, wife or minor unmarried child of a Cuban, and meet the description in (f) above.

**Section of Law**
☐ Sec. 209(b), INA
☐ Sec. 13, Act of 9/11/57
☐ Sec. 245, INA
☐ Sec. 249, INA
☐ Sec. 1 Act of 11/2/66
☐ Sec. 2 Act of 11/2/66
☐ Other

**Country Chargeable**

**Eligibility Under Sec. 245**
☐ Approved Visa Petition
☐ Dependent of Principal Alien
☐ Special Immigrant
☐ Other

**Preference**

**Action Block**

**To be Completed by Attorney or Representative, if any**
☐ Fill in box if G-28 is attached to represent the applicant

VOLAG #

ATTY State License #

Form I-485 (Rev. 04/01/06)Y

## Part 3.   Processing information.

| A. City/Town/Village of Birth<br>Baghdad, Iraq | Current Occupation<br>Teacher |
|---|---|
| Your Mother's First Name<br>Sauda | Your Father's First Name<br>Jaber |

Give your name exactly as it appears on your Arrival/Departure Record (Form I-94)
Samir Hussain

| Place of Last Entry Into the United States *(City/State)*<br>New York City, New York | In what status did you last enter? *(Visitor, student, exchange alien, crewman, temporary worker, without inspection, etc.)* |
|---|---|
| Were you inspected by a U.S. Immigration Officer?      ☒ Yes ☐ No | Visitor (B1/B2) |
| Nonimmigrant Visa Number<br>19961780660010 | Consulate Where Visa Was Issued<br>Cairo, Egypt |
| Date Visa Was Issued<br>(mm/dd/yyyy)  09/29/1996 | Gender: ☒ Male ☐ Female | Marital Status: ☐ Married ☒ Single ☐ Divorced ☐ Widowed |

Have you ever before applied for permanent resident status in the U.S.?      ☒ No ☐ Yes.  If you checked "Yes," give date and place of filing and final disposition.

**B.** List your present husband/wife, all of your sons and daughters (If you have none, write "none."  If additional space is needed, use separate paper).

| Family Name<br>None | Given Name | Middle Initial | Date of Birth *(mm/dd/yyyy)* |
|---|---|---|---|
| Country of Birth | Relationship | A<br># | Applying with you?<br>☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth *(mm/dd/yyyy)* |
| Country of Birth | Relationship | A<br># | Applying with you?<br>☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth *(mm/dd/yyyy)* |
| Country of Birth | Relationship | A<br># | Applying with you?<br>☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth *(mm/dd/yyyy)* |
| Country of Birth | Relationship | A<br># | Applying with you?<br>☐ Yes ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth *(mm/dd/yyyy)* |
| Country of Birth | Relationship | A<br># | Applying with you?<br>☐ Yes ☐ No |

**C.** List your present and past membership in or affiliation with every organization, association, fund, foundation, party, club, society or similar group in the United States or in other places since your 16th birthday. Include any foreign military service in this part. If none, write "none." Include the name(s) of organization(s), location(s), dates of membership, from and to, and the nature of the organization(s). If additional space is needed, use a separate piece of paper.

Iraqi Army; 1989-1992

**Part 3.  Processing information.**  *(Continued)*

Please answer the following questions.  (If your answer is "Yes" on any one of these questions, explain on a separate piece of paper. Answering "Yes" does not necessarily mean that you are not entitled to adjust status or register for permanent residence.)

1.  Have you ever, in or outside the United States:

    a.  knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested?  ☐ Yes ☒ No

    b.  been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?  ☐ Yes ☒ No

    c.  been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action?  ☐ Yes ☒ No

    d.  exercised diplomatic immunity to avoid prosecution for a criminal offense in the United States?  ☐ Yes ☒ No

2.  Have you received public assistance in the United States from any source, including the United States government or any state, county, city or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future?  *(see attached for explanation)*  ☒ Yes ☐ No

3.  Have you ever:

    a.  within the past ten years been a prostitute or procured anyone for prostitution, or intend to engage in such activities in the future?  ☐ Yes ☒ No

    b.  engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling?  ☐ Yes ☒ No

    c.  knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the United States illegally?  ☐ Yes ☒ No

    d.  illicitly trafficked in any controlled substance, or knowingly assisted, abetted or colluded in the illicit trafficking of any controlled substance?  ☐ Yes ☒ No

4.  Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to any person or organization that has ever engaged or conspired to engage in sabotage, kidnapping, political assassination, hijacking or any other form of terrorist activity?  ☐ Yes ☒ No

5.  Do you intend to engage in the United States in:

    a.  espionage?  ☐ Yes ☒ No

    b.  any activity a purpose of which is opposition to, or the control or overthrow of, the government of the United States, by force, violence or other unlawful means?  ☐ Yes ☒ No

    c.  any activity to violate or evade any law prohibiting the export from the United States of goods, technology or sensitive information?  ☐ Yes ☒ No

6.  Have you ever been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party?  ☐ Yes ☒ No

7.  Did you, during the period from March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ever order, incite, assist or otherwise participate in the persecution of any person because of race, religion, national origin or political opinion?  ☐ Yes ☒ No

8.  Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin or political opinion?  ☐ Yes ☒ No

9.  Have you ever been deported from the United States, or removed from the United States at government expense, excluded within the past year, or are you now in exclusion, deportation, removal or recission proceedings?  ☐ Yes ☒ No

10.  Are you under a final order of civil penalty for violating section 274C of the Immigration and Nationality Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any immigration benefit?  ☐ Yes ☒ No

11.  Have you ever left the United States to avoid being drafted into the U.S. Armed Forces?  ☐ Yes ☒ No

12.  Have you ever been a J nonimmigrant exchange visitor who was subject to the two-year foreign residence requirement and have not yet complied with that requirement or obtained a waiver?  ☐ Yes ☒ No

13.  Are you now withholding custody of a U.S. citizen child outside the United States from a person granted custody of the child?  ☐ Yes ☒ No

14.  Do you plan to practice polygamy in the United States?  ☐ Yes ☒ No

---

**Part 4.  Signature.** *(Read the information on penalties in the instructions before completing this section. You must file this application while in the United States.)*

**Your registration with U.S. Citizenship and Immigration Services.**

"I understand and acknowledge that, under section 262 of the Immigration and Nationality Act (Act), as an alien who has been or will be in the United States for more than 30 days, I am required to register with U.S. Citizenship and Immigration Services.  I understand and acknowledge that, under section 265 of the Act, I am required to provide USCIS with my current address and written notice of any change of address within **ten** days of the change.  I understand and acknowledge that USCIS will use the most recent address that I provide to USCIS, on any form containing these acknowledgements, for all purposes, including the service of a Notice to Appear should it be necessary for USCIS to initiate removal proceedings against me.  I understand and acknowledge that if I change my address without providing written notice to USCIS, I will be held responsible for any communications sent to me at the most recent address that I provided to USCIS. I further understand and acknowledge that, if removal proceedings are initiated against me and I fail to attend any hearing, including an initial hearing based on service of the Notice to Appear at the most recent address that I provided to USCIS or as otherwise provided by law, I may be ordered removed in my absence, arrested and removed from the United States."

**Selective Service Registration.**

**The following applies to you if you are a male at least 18 years old, but not yet 26 years old, who is required to register with the Selective Service System:** "I understand that my filing this adjustment of status application with U.S. Citizenship and Immigration Services authorizes USCIS to provide certain registration information to the Selective Service System in accordance with the Military Selective Service Act.  Upon USCIS acceptance of my application, I authorize USCIS to transmit to the Selective Service System my name, current address, Social Security Number, date of birth and the date I filed the application for the purpose of recording my Selective Service registration as of the filing date.  If, however, USCIS does not accept my application, I further understand that, if so required, I am responsible for registering with the Selective Service by other means, provided I have not yet reached age 26."

**Applicant's Certification.**

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct.  I authorize the release of any information from my records that U.S. Citizenship and Immigration Services (USCIS) needs to determine eligibility for the benefit I am seeking.

| Signature | Print Your Name | Date | Daytime Phone Number |
|---|---|---|---|
| | Samir Hussain | | ( 305 ) 215-0344 |

**NOTE:**  *If you do not completely fill out this form or fail to submit required documents listed in the instructions, you may not be found eligible for the requested document and this application may be denied.*

---

**Part 5.  Signature of person preparing form, if other than above.  (sign below)**

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print Your Full Name | Date | Phone Number (Include Area Code) |
|---|---|---|---|
| | | | ( ) |

| Firm Name and Address | | E-Mail Address (if any) | |
|---|---|---|---|

Department of Homeland Security
U.S. Citizenship and Immigration Services

OMB No. 1615-0008

# G-325A, Biographic Information

| (Family name) Hussain | (First name) Samir | (Middle name) Jaber | ☒ Male ☐ Female | Birthdate (mm/dd/yyyy) | Citizenship/Nationality Iraqi | File Number A |
|---|---|---|---|---|---|---|

| All Other Names Used (Including names by previous marriages) Samir Alany | City and Country of Birth Baghdad, Iraq | U.S. Social Security # (If any) |
|---|---|---|

| | Family Name | First Name | Date, City and Country of Birth (If Known) | City and Country of Residence |
|---|---|---|---|---|
| Father | Alany | Jaber | 1927; Iraq | Deceased |
| Mother (Maiden name) | Alany | Saudra | 1932; Iraq | Baghdad, Iraq |

| Husband (If none, so state) or Wife | Family Name (For wife, give maiden name) | First Name | Birthdate | City and Country of Birth | Date of Marriage | Place of Marriage |
|---|---|---|---|---|---|---|
| None | | | | | | |

| Former Husbands or Wives(if none, so state) Family Name (For wife, give maiden name) | First Name | Birthdate | Date and Place of Marriage | Date and Place of Termination of Marriage |
|---|---|---|---|---|
| None | | | | |

**Applicant's residence last five years. List present address first.**

| | | | | From | | To | |
|---|---|---|---|---|---|---|---|
| Street and Number | City | Province or State | Country | Month | Year | Month | Year |
| 67 East 41st Street | Hialeah | Florida | USA | 7 | 2004 | Present Time | |
| 260 NW 73rd Terr. | Miami | Florida | USA | 3 | 2004 | 6 | 2004 |
| 18201 SW 12th St. | Miami | Florida | USA | 7 | 2003 | 3 | 2004 |
| 260 NW 73rd Terr. | Miami | Florida | USA | 1 | 2003 | 7 | 2003 |
| 1120 SW 11th St., Apt. 6 | Ft. Lauderdale | Florida | USA | 5 | 2002 | 12 | 2002 |
| 440 NE 52nd Ter. | Miami | Florida | USA | 8 | 2001 | 4 | 2002 |

**Applicant's last address outside the United States of more than one year.**

| | | | | From | | To | |
|---|---|---|---|---|---|---|---|
| Street and Number | City | Province or State | Country | Month | Year | Month | Year |
| 8 Kaserel-Nil Street | Cairo | | Egypt | 3 | 1992 | 10 | 1996 |

**Applicant's employment last five years. (If none, so state.) List present employment first.**

| | | From | | To | |
|---|---|---|---|---|---|
| Full Name and Address of Employer | Occupation (Specify) | Month | Year | Month | Year |
| Berlitz International, Inc., 1200 Brickell Ave., Suite 305, Miami, FL 33131 | Teacher | 3 | 2005 | Present Time | |
| Rema Designs, 2299 NW 25th Ave., Miami, FL 33142 | Florist | 2 | 2004 | 3 | 2005 |
| Unemployed | | 4 | 2002 | 2 | 2004 |
| Hotel Leon, 840 Collins Ave., Miami Beach, FL 33139 | Front Desk Agent | 1 | 2002 | 4 | 2002 |
| Hotel Impala, 1228 Collins Ave., Miami Beach, FL 33139 | Front Desk Manager | 9 | 2000 | 11 | 2001 |

**Show below last occupation abroad if not shown above. (Include all information requested above.)**

| | | From | | To | |
|---|---|---|---|---|---|
| Legrillon Restaurant, 8 Kaserel-Nil Street, Cairo, Egypt | Assistant Manager | 3 | 1992 | 10 | 1996 |

| This form is submitted in connection with application for: ☐ Naturalization ☒ Status as Permanent Resident ☐ Other (Specify): | Signature of Applicant | Date |
|---|---|---|

| Submit all copies of this form. | If your native alphabet is in other than Roman letters, write your name in your native alphabet below: |
|---|---|

**Penalties:** Severe penalties are provided by law for knowingly and willfully falsifying or concealing a material fact.

# Applicant:
**Be sure to put your name and Alien Registration Number in the box outlined by heavy border below.**

| Complete This Box  (Family Name) | (Given Name) | (Middle Name) | |
|---|---|---|---|
| Hussain | Samir | Jaber | |

(1) Ident.

Form G-325A (Rev. 05/31/05)N (Prior editions may be used until 12/31/05)

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797C, Notice of Action**

# THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>SRC-06-206-53076 | | CASE TYPE  I485   APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS |
|---|---|---|
| RECEIVED DATE<br>June 22, 2006 | PRIORITY DATE | APPLICANT   A075 253 244<br>HUSSAIN, SAMIR J. |
| NOTICE DATE<br>June 27, 2006 | PAGE<br>1 of 1 | |

| | |
|---|---|
| SAMIR J. HUSSAIN<br>67 E 41ST ST<br>HIALEAH FL 33013 | **Notice Type:** Receipt Notice<br><br>Amount received: $ 395.00<br><br>Section: Asylee adjustment |

**Receipt notice** - If any of the above information is incorrect, call customer service immediately.

**Processing time** - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at **uscis.gov**.
- On our website you can also sign up to get free e-mail updates as we complete key processing steps on this case.
- Most of the time your case is pending the processing status will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you. If you move while this case is pending, call customer service when you move.
- Processing times can change. If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service. Please save this notice, and have it with you if you contact us about this case.

**Notice to all customers with a pending I-130 petition** - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available. Filing and approval of an I-130 relative petition is only the first step in helping a relative immigrate to the United States. Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to a lawful permanent resident. This process will allow USCIS to concentrate resources first on cases where visas are actually available. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to **www.state.gov/travel** <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

**If this receipt is for an I-485, or I-698 application**
USCIS WILL SCHEDULE YOUR BIOMETRICS APPOINTMENT. You will be receiving a biometrics appointment notice with a specific time, date and place where you will have your fingerprints and/or photos taken. You MUST wait for your biometrics appointment notice prior to going to the ASC for biometrics processing. This I-797 receipt notice is NOT your biometrics appointment notice and should not be taken to an ASC for biometrics processing.

**WHAT TO BRING TO YOUR BIOMETRICS APPOINTMENT-**
Please bring your biometrics appointment letter (with specific time, date and place where you will have your fingerprints and/or photo taken) AND your photo identification to your biometrics appointment.
Acceptable kinds of photo identification are:
- a passport or national photo identification issued by your country,
- a drivers license,
- a military photo identification, or
- a state - issued photo identification card.

Always remember to call customer service if you move while your case is pendin        lative
petition, also call customer service if you should decide to withdraw your pet        zen.

---

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
TEXAS SERVICE CENTER
P O BOX 851488 - DEPT A
MESQUITE TX 75185-1488
**Customer Service Telephone: (800) 375-5283**



Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797, Notice of Action**

### THE UNITED STATES OF AMERICA

| ASC Appointment Notice | APPLICATION NUMBER SRC0620653076 | | NOTICE DATE 6/28/2006 |
|---|---|---|---|
| CASE TYPE I485 Application to Register Permanent Resident or Adjust Status | SOCIAL SECURITY NUMBER | USCIS A# A075253244 | CODE 3 |
| | TCR | SERVICE CENTER TSC | PAGE 1 of 1 |

SAMIR JABER HUSSAIN
67 E 41ST ST
HIALEAH, FL 33013

BIOMETRICS PROCESSING STAMP
ASC SITE CODE: _____
BIOMETRICS QA REVIEW BY: _____
ON 7/11/06
TENPRINTS QA REVIEW BY: _____
ON 7/11/06

To process your application, the U. S. Citizenship & Immigration Services (USCIS) must capture your biometrics.

**PLEASE APPEAR AT THE BELOW APPLICATION SUPPORT CENTER AT THE DATE AND TIME SPECIFIED.**
**IF YOU FAIL TO APPEAR AS SCHEDULED, YOUR APPLICATION WILL BE CONSIDERED ABANDONED.**

| APPLICATION SUPPORT CENTER | DATE AND TIME OF APPOINTMENT |
|---|---|
| USCIS HIALEAH | 07/11/2006 |
| 3700 WEST 18TH AVE | 8:00 AM |
| WESTLAND PROMENADE, SUITE 110 | |
| HIALEAH, FL 33012 | |

**WHEN YOU GO TO THE APPLICATION SUPPORT CENTER TO HAVE YOUR BIOMETRICS TAKEN, YOU MUST BRING:**
1. **THIS APPOINTMENT NOTICE** and
2. **PHOTO IDENTIFICATION.** Naturalization applicants must bring their Alien Registration Card. All other applicants must bring a passport, driver's license, national ID, military ID, or State-issued photo ID. If you appear without proper identification, your biometrics may not be taken.

### REQUEST FOR RESCHEDULING

Please reschedule my appointment for the next available:  ☐ Wednesday afternoon  ☐ Saturday afternoon

U. S. Citizenship & Immigration Services (USCIS) cannot guarantee the day preferred, but will do so to the extent possible. Upon receipt of your request, you will be provided a new appointment notice. Make a copy of this notice for your records, then mail the original with your request to USCIS HIALEAH, 3700 WEST 18TH AVE, WESTLAND PROMENADE, SUITE 110, HIALEAH, FL 33012.

APPLICATION NUMBER 1

I485  -  SRC0620653076

If you have any questions regarding this notice, please call 1-800-375-5283.

### WARNING!

*Due to limited seating availability in our lobby area, only persons who are necessary to assist with transportation or completing the biometrics worksheet should accompany you.*

*If you have open wounds or bandages/casts when you appear, the USCIS may reschedule your appointment if it is determined your injuries will interfere with taking your biometrics.*

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797C, Notice of Action**

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>SRC-06-206-53076 | CASE TYPE I485    APPLICATION TO ADJUST TO PERMANENT<br>RESIDENT STATUS |
|---|---|
| RECEIVED DATE<br>June 22, 2006 | PRIORITY DATE | APPLICANT    A075 253 244<br>HUSSAIN, SAMIR J. |
| NOTICE DATE<br>June 27, 2006 | PAGE<br>1 of 1 | |

SAMIR J. HUSSAIN
67 E 41ST ST
HIALEAH FL 33013

**Notice Type:**  Receipt Notice

Amount received: $  395.00

Section: Asylee adjustment

**Receipt notice** - If any of the above information is incorrect, call customer service immediately.

**Processing time** - Processing times vary by kind of case.
- You can check our current processing time for this kind of case on our website at **uscis.gov**.
- On our website you can also sign up to get free e-mail updates as we complete key processing steps on this case.
- Most of the time your case is pending the processing status will not change because we will be working on others filed earlier.
- We will notify you by mail when we make a decision on this case, or if we need something from you. If you move while this case is pending, call customer service when you move.
- Processing times can change.  If you don't get a decision or update from us within our current processing time, check our website or call for an update.

If you have questions, check our website or call customer service.  Please save this notice, and have it with you if you contact us about this case.

**Notice to all customers with a pending I-130 petition** - USCIS is now processing Form I-130, Petition for Alien Relative, as a visa number becomes available.  Filing and approval of an I-130 relative petition is only the first step in helping a relative immigrate to the United States.  Eligible family members must wait until there is a visa number available before they can apply for an immigrant visa or adjustment of status to a lawful permanent resident. This process should not delay the ability of one's relative to apply for an immigrant visa or adjustment of status. Refer to **www.state.gov/travel** <http://www.state.gov/travel> to determine current visa availability dates. For more information, please visit our website at www.uscis.gov or contact us at 1-800-375-5283.

**If this receipt is for an I-485, or I-698 application**
USCIS WILL SCHEDULE YOUR BIOMETRICS APPOINTMENT.  You will be receiving a biometrics appointment notice with a specific time, date and place where you will have your fingerprints and/or photos taken.  You MUST wait for your biometrics appointment notice prior to going to the ASC for biometrics processing.  This I-797 receipt notice is NOT your biometrics appointment notice and should not be taken to an ASC for biometrics processing.

**WHAT TO BRING TO YOUR BIOMETRICS APPOINTMENT-**
Please bring your biometrics appointment letter (with specific time, date and place where you will have your fingerprints and/or photo taken) AND your photo identification to your biometrics appointment.
Acceptable kinds of photo identification are:
- a passport or national photo identification issued by your country,
- a drivers license,
- a military photo identification, or
- a state - issued photo identification card.

Always remember to call customer service if you move while your case is pending              lative
petition, also call customer service if you should decide to withdraw your pet              zen.

*2·15·06*

Please see the additional information on the back.  You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
TEXAS SERVICE CENTER
P O BOX 851488 - DEPT A
MESQUITE TX 75185-1488
**Customer Service Telephone: (800) 375-5283**



## **EXHIBIT H**

**Copy of Mr. Hussain's Social Security Card
and
Employment Authorization Cards**

I.N.S Tel
# (400-375-3283





