UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMIR HUSSAIN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | Civil Action No. 07-1633 (PLF) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S RULE 56(F) MOTION**

Defendant the United States Department of Homeland Security ("DHS," "Defendant," or "Agency"), by and through its undersigned counsel, hereby opposes Plaintiff's Rule 56(f) Motion to Stay Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery ("Motion"). For the reasons stated herein, Plaintiff's Motion is without merit, and thus, Defendant respectfully requests that the Court deny Plaintiff's Motion and order Plaintiff to promptly file an opposition, if any, to Defendant's Motion for Summary Judgment ("MSJ").

**PRELIMINARY STATEMENT**

Plaintiff's extraordinary and unusual request for discovery in this FOIA action reflects a misapprehension of FOIA and is belied by Plaintiff's own brief in support. Notably, although Plaintiff asserts that he is unable to respond to Defendant's MSJ, he sets forth a lengthy, albeit unpersuasive, argument that the United States Citizenship and Immigration Services' ("USCIS's") search for records responsive to Plaintiff's FOIA request was unreasonable, and

therefore, Defendant's MSJ is without merit. *See* Plaintiff's Memorandum in Support of Motion ("Pl. Memo.") at 6-15. Indeed, Plaintiff devotes the majority of his argument in his brief to this topic. *See id.* Clearly, if Plaintiff can formulate a lengthy argument purporting to explain how USCIS's search was allegedly unreasonable, Plaintiff has enough information with which to mount an opposition to Defendants' MSJ in this action. In sum, simply because Plaintiff mistakenly believes that USCIS's search was inadequate under FOIA, does not mean the parties need to expend resources on discovery in this action when USCIS has fully explained what searches it conducted in response to Plaintiff's FOIA request.

Indeed, Plaintiff fails to explain with any precision what additional information is needed to ascertain what search efforts USCIS took in response to Plaintiff's FOIA request. The Declaration of Brian J. Welsh ("Welsh Declaration") submitted with Defendant's MSJ, details the system that was searched (the Alien File / Central Index System, or the "A-File Database"), why USCIS believed that Plaintiff's A-File, which was found using the A-File Database, was the sole source of potentially responsive information in its custody and possession, which search terms were used (*e.g.*, Plaintiff's name, alien number, date of birth), and the results of such search. Indeed, based upon USCIS's search, it located Plaintiff's A-File -- which USCIS reasonably believed to contain the universe of responsive documents in its possession and custody -- and released all reasonably segregable information in that file to Plaintiff. Notably, Plaintiff does not dispute that the A-File information released by USCIS concerned Plaintiff and was responsive to his FOIA request.

In sum, the Welsh Declaration sufficiently describes the steps that USCIS took to search for responsive records.[1] If Plaintiff believes that USCIS's search, described in detail in the Welsh Declarations, was somehow deficient, he is free to argue in opposition to Defendant's MSJ, as he does unpersuasively in his Motion, that USCIS's search was unreasonable. If the Court determines that USCIS's search was unreasonable, then it can order USCIS to perform additional searches and file additional declarations describing the new searches. But to allow Plaintiff to go on a proverbial fishing-expedition, when the Agency has adequately described its search processes to date, and Plaintiff has failed to articulate any evidence of bad faith, is contrary to the interests of justice, the spirit and intent of the Local Rules, and the law of FOIA itself.

## ARGUMENT

### I. THE STANDARD FOR PERMITTING DISCOVERY IN THIS CONTEXT.

Plaintiff simply has not shown that discovery in this FOIA action is necessary before the Court considers Defendant's MSJ.

#### A. The General Rule 56(f) Standard.

Generally under Federal Rule of Civil Procedure ("Rule") 56(f), "a court 'may deny a motion for summary judgment or order a continuance to permit discovery if the party opposing the motion adequately explains why, at that timepoint, it cannot present by affidavit facts needed to defeat the motion.'" *Scott-Blanton v. Universal City Studios Prods. LLLP*, 246 F.R.D. 344,

---

[1] Further, although Defendant maintains that the Welsh Declaration is more than sufficient under FOIA, in the spirit of compromise and to allay any concerns that Defendant somehow failed to sufficiently describe its search for responsive records, Defendant submits herewith a Supplemental Declaration of Brian J. Welsh ("Supplemental Welsh Declaration"), which explains in minute and exhaustive detail the search efforts taken by the Agency in response to Plaintiff's FOIA request. *See* Supp. Welsh Decl., attached hereto as Ex. A ("Attached Ex. A").

346 (D.D.C. 2007) (Urbina, J.) (denying Rule 56(f) motion), *quoting Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861 (D.C. Cir. 1989); *and Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164 (D.C. Cir. 1981). "[T]he purpose of Rule 56(f) is to prevent 'railroading' the non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery." *Dickens v. Whole Foods Market Group, Inc.*, Civ. A. No. 01-1054 (RMC), 2003 WL 21486821, at *2, n.5 (D.D.C. Mar. 18, 2003) (denying Rule 56(f) motion), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "Whether the circumstances warrant a continuance to permit discovery is a decision that falls within the discretion of the district court." *Scott-Blanton*, 246 F.R.D. at 346, *citing Stella v. Mineta*, 284 F.3d 135, 147 (D.C.Cir.2002).

**B. <u>Discovery in FOIA Actions is Unusual and Extraordinary.</u>**

The standard under Rule 56(f) is more stringent in FOIA actions. Indeed, discovery is not favored in lawsuits under the FOIA.[2] *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (Friedman, J.) (denying request in FOIA case for "discovery regarding the searches conducted by defendant because the supporting declarations [allegedly] lack[ed] the detail necessary to determine exactly how defendant searched for responsive documents"); *see also Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) (Lamberth, J.) (denying request for discovery in FOIA action where court found, *inter alia*, no indication of bad faith and that the agency's declarations sufficiently described the searches conducted); *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 36 (D.D.C. 2002) (Lamberth, J.) (denying request

---

[2] This rule -- that discovery in a FOIA action is unusual and extraordinary -- is further recognized by the Local Civil Rules. Indeed, FOIA cases have been excluded from the typical meet and confer requirements of the

for discovery on agency's FOIA search)., *distinguishing Campbell v. U.S. Dep't of Justice*, 193 F. Supp. 2d 29, 35 (D.D.C. 2001).[3]

Indeed, "[d]iscovery in FOIA cases is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Id.* at 36. Moreover, discovery is not to be granted when discovery is sought for the "bare hope of falling upon something that might impugn the affidavits" submitted by the government. *Military Audit Project v. Casey*, 656 F.2d 724, 751-52 (D.C. Cir. 1981) (affirming denial of discovery in FOIA action) (citations and internal quotations omitted). Lastly, "when an agency's affidavits or declarations are deficient regarding the adequacy of its search . . . the courts generally will request that the agency supplement its supporting declarations[,]" instead of ordering discovery. *Judicial Watch*, 185 F. Supp. 2d at 54.

As noted below, Plaintiff has failed to show that USCIS acted in bad faith, or that the Welsh Declarations do not reasonably explain USCIS's search procedures in response to Plaintiff's FOIA request.

---

Rules and Local Civil Rules because "Freedom of Information Act actions . . . typically do not require discovery[.]" *See* Cmt. to LCvR 16.3(b).

[3] "The [district] court in *Campbell* held that discovery was appropriate since the FBI *utterly failed* to carry its burden of demonstrating that it undertook a reasonably calculated search to uncover relevant documents. In the present case the FBI reasonably searched for documents in a manner calculated to locate responsive documents." *Schrecker*, 217 F. Supp. 2d at 36 (emphasis added). Furthermore, the district court in *Campbell* merely permitted discovery as to the location and contents of specific files in dispute; unlike Plaintiff's request here, which seeks nearly unbounded discovery on USCIS's response to Plaintiff's FOIA request.

## II. PLAINTIFF HAS FAILED TO SHOW ANY INDICATION OF BAD FAITH OR OTHER GROUNDS FOR DISCOVERY IN THIS FOIA ACTION.

Plaintiff simply fails to show that Defendant has engaged in bad faith, that the Agency's declarations are somehow insufficient, or that discovery is required for any other reason; and, thus, Plaintiff's Motion should be denied.

### A. <u>There Exists No Evidence that the Agency Acted in Bad Faith.</u>

Plaintiff has not shown any indication that Defendant acted in bad faith. Plaintiff seems to imply that discovery may be appropriate in this action based upon supposed bad faith due to the Agency's delay in responding to Plaintiff's FOIA request (*see* Pl. Memo at 1), and because of the unsupported assertion that Plaintiff was detained by a DHS component other than USCIS "merely for being Iraqi." *Id.* at 2. As to the later, Plaintiff offers no support for this spurious allegation, and thus, it is an insufficient basis upon which to compel discovery.

As to the former, numerous courts have held that "initial delays in responding to a FOIA request are rarely, if ever, grounds for discrediting later affidavits by the agency." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (affirming decision that agency search was adequate), *citing Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986); *and Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 772 (D.C. Cir. 1981); *see also Boyd v. Criminal Div. of U.S. Dept. of Justice*, 475 F.3d 381, 391 (D.C. Cir. 2007) ("This court has rejected the notion that an initial agency delay in responding to a FOIA request constitutes bad faith."). Indeed, USCIS receives nearly 100,000 FOIA requests per year, and despite recently deployed measures to improve its response time, USCIS's FOIA burden is immense and delays, regrettably, occur. *See* Supp. Welsh Decl. at ¶ 8, Attached Ex. A. Accordingly, Plaintiff has not

presented a scintilla of evidence tending to show bad faith, and thus, discovery cannot be compelled on this ground.

### B. Plaintiff Has Failed to Show that the Agency's Declarations are Not Reasonably Detailed.

Plaintiff also argues that the Welsh Declaration is "insufficiently detailed and conclusory," because it fails to (i) mention the specific search terms used to describe the sought-after records, (ii) explain how Plaintiff's specific request was handled differently than other A-File requests, and (iii) identify whether USCIS pursued any leads generated from its review of the initial search records. *See* Pl. Memo. at 7-8. For the reasons noted below, Plaintiff's arguments are misguided and unsupported by applicable law.

"At the summary judgment stage, the agency has the burden of showing that it complied with the FOIA, [ ] and in response to a challenge to the adequacy of its search for requested records the agency may meet its burden by providing 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched.'" *Iturralde*, 315 F.3d at 313-13, *quoting Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Further, "[a]n agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom and in what manner." *Schrecker*, 217 F. Supp. 2d at 33, *citing Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). That is, a FOIA declaration "need not 'set forth with meticulous documentation the details of an epic search for the requested records.'" *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986) (affirming decision that agency search was reasonable and adequate), *quoting Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

Moreover, the focus is on whether the search prompted by the particular FOIA request was reasonable, not whether the same methodology was applied to other FOIA cases. *See Schrecker*, 217 F. Supp. 2d at 36 ("The standard for searching for responsive documents is a standard of reasonableness and here the FBI has conducted a reasonable search and therefore it is not necessary for FBI to copy the same search methodology as other cases, which are unrelated to the present case."). Applying this standard, the Welsh Declarations are sufficient as a matter of law.

*First*, as to search terms, the Welsh Declaration specifically mentions the information used to retrieve his A-File. That is, the Welsh Declaration notes, that "based on Plaintiff's name, alien number, [and] date of birth . . . an electronic search for responsive files was conducted of the agency's system of records known as the [A-File Database.]" Welsh Decl. at ¶ 5. Accordingly, Plaintiff's argument that the Agency failed to identify search terms is without merit.[4]

*Second*, as to how Plaintiff's FOIA request was handled differently than others, such information is unnecessary for summary judgment in this FOIA action. As noted above, the relevant inquiry in a FOIA action is the reasonableness of the particular search prompted by the FOIA request, not whether the same or different methodology was applied in making other searches. *See Schrecker*, 217 F. Supp. 2d at 36. Indeed, the D.C. Circuit has expressly noted that the adequacy of a particular search is dependent upon the particular circumstances of a case. *See, e.g., Davis v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006) ("adequacy of an agency's

4 Further, as noted above, the Supplemental Welsh Declaration, attached hereto as Ex. A, further elaborates on the search terms, and describes in exhaustive and minute detail how they were used. *See* Supp. Welsh Decl. at ¶ 14, Attached Ex. A.

search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case. And we expressly cautioned that it would be inappropriate for the court to mandate a bright-line set of steps for an agency to take in this situation, because FOIA requires both systemic and case-specific exercises of discretion and administrative judgment and expertise") (internal citations and quotations omitted). Accordingly, comparisons to other FOIA cases, and search methodologies employed for other FOIA requests, are simply irrelevant to whether the Agency employed a reasonable search in this case. *See id.* Thus, the failure to include comparisons to other FOIA searches does not make the Welsh Declarations somehow deficient.[5]

*Lastly*, the Welsh Declarations are not deficient for failing to identify whether USCIS pursued any leads generated from its review of the initial search records. A FOIA declaration must merely state the steps and methodology of a component's search, and the reasons why the component believed that such steps and methodologies were reasonably calculated to discover the requested documents. *See Iturralde*, 315 F.3d at 313-13. The Agency has done exactly this in the Welsh Declarations. Further, in the Supplemental Welsh Declaration, USCIS explains why the "leads" Plaintiff identifies were not pursued by USCIS -- *e.g.*, as noted below, USCIS is not compelled to forward Plaintiff's FOIA request onto other DHS components. *See* Supp. Welsh Decl. at ¶¶ 16-17, Attached Ex. A. Therefore, USCIS has explained its search and the

---

5 The sole case that Plaintiff cites for the extraordinary premise that a FOIA declaration needs to compare the search actually conducted to other FOIA searches, *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998), simply does not support Plaintiff's argument. Even at its broadest *Campbell* does not come close to discussing or imposing such a requirement on FOIA declarations. Rather, *Campbell* reinforces the notion that the reasonableness of any particular FOIA search must be analyzed under the facts of the particular FOIA request. As noted below, because Plaintiff requested from USCIS information on his interactions with immigration authorities regarding his detention, USCIS searched the one source in its possession and custody that was likely to have such information -- Plaintiff's A-File.

rationale behind its search procedures. Accordingly, Plaintiff's request for discovery should be denied.

**C. <u>Discovery Is Not Required For Other Reasons.</u>**

Aside from a meritless attack on the propriety of the Agency's actions and the Welsh Declarations, Plaintiff has failed to identify any other reason why discovery might be appropriate in this action. Indeed, any such argument is strongly refuted by the cornucopia of publically available information that USCIS provides on its website. *See* Supp. Welsh Decl. at ¶¶ 7, 8, 13, 16, Attached Ex. A. Notably, Plaintiff cites a plethora of this material in support of his Motion. *See, e.g.*, Pl. Memo at p. 8, n.5; p. 9, n.7, n.8; 13, n.13, n.14. Thus, Plaintiff has sufficient information at his disposal to oppose Defendant's MSJ if he so chooses.

**III. USCIS'S SEARCH WAS REASONABLE.**

Although whether USCIS's search is ultimately found to be reasonable or unreasonable by this Court is irrelevant in determining whether discovery should be granted before the Court considers Defendant's MSJ, Defendant below briefly addresses Plaintiff's assertions that such search was unreasonable. Plaintiff generally argues that USCIS's search was unreasonable because (i) USCIS failed to search information systems other than the A-File Database; (ii) USCIS failed to pursue supposed "leads" in the materials it retrieved and reviewed in response to Plaintiff's FOIA request; and (iii) USCIS failed to discover certain documents that Plaintiff already had in his possession. *See* Pl. Memo at 10-15.

**A. <u>USCIS Searched the System It Reasonably Believed Contained the Universe of Responsive Documents in Its Custody and Possession.</u>**

As noted in the Welsh Declarations, USCIS understood that Plaintiff's request essentially sought records concerning his interactions with immigration authorities regarding his detention.

*See* Welsh Decl. at ¶ 5; Supp. Welsh Decl. at ¶¶ 9-11, Attached Ex. A. This understanding is clearly consistent with Plaintiff's description of the records he requested:

> Mr. Hussain's "Apprehension Record"; Any Border Patrol Disposition; I-213 record of deportable alien; and any other information possessed by DHS regarding Mr. Hussain's detention on July 24, 2003.

Pl. FOIA Req. at 1, Compl. at Ex. A. Based upon its understanding, USCIS searched the system within its possession and custody which would contain that information -- *i.e.*, the A-File Database. *See* Welsh Decl. at ¶ 5; Supp. Welsh Decl. at ¶ 12, Attached Ex. A. Indeed, the System Notice for the A-File Database explains the contents and purpose of an A-File:

> A-File data is collected on individuals covered by provisions of the Immigration and Nationality Act of the United States and individuals who are under investigation, who were investigated by the DHS in the past, who are suspected of violating the immigration-related laws administered by DHS, or are witnesses and informants having knowledge of such violations. The A-File is the record that contains all transactions involving an individual as he/she passes through the U.S. immigration and inspection process, and chronicles interactions with the U.S. Government. Previously, legacy INS performed all of these functions.

A-File Database System Notice, Attached Ex. B. Accordingly, based upon its understanding of its systems, USCIS reasonably determined that the A-File Database, which is the access point for A-Files, was the sole potential source of information responsive to Plaintiff's FOIA request.

USCIS's understanding that the A-File Database was the only system that was likely to have responsive information, was further reinforced by its knowledge of its other information systems. *See* Supp. Welsh Decl. at ¶ 11, Attached Ex. A. Indeed, the publically available System Notices for USCIS's other information systems further show that USCIS's belief in this regard was reasonable. For example, USCIS maintains an Asset Management Information

System ("AMIS"), which tracks the movement of property and equipment for federal immigration authorities. *See* AMIS System Notice, Attached Ex. C. USCIS also, for example, maintains an Orphan Petitioner Index and Files ("OPIF"), which contains information concerning orphan petitions -- *i.e.*, requests by prospective adoptive parents. *See* OPIF System Notice, Attached Ex. D. Clearly, USCIS was reasonable in its belief that these systems were unlikely to contain information concerning Plaintiff's interaction with immigration authorities concerning his detention. *See also* Supp. Welsh Decl. at ¶ 16.c, d, e, Attached Ex. A (explaining why other USCIS information systems were not searched). Accordingly, USCIS's decision to search only the A-File Database was reasonable under the particular facts of Plaintiff's FOIA request, and his own description of the records he sought.[6]

### B. USCIS Was Under No Obligation to Forward Plaintiff's FOIA Request to Other DHS Components; and Otherwise Did Not Fail to Pursue Leads.

A large majority of Plaintiff's argument that USCIS's search was unreasonable is based upon the flawed premise that USCIS was somehow required to forward Plaintiff's request to other DHS components, and pursue every potential lead, no matter how tenuous or unlikely to return responsive documents. Plaintiff's arguments are contrary to well established law.

---

[6] Plaintiff asserts that USCIS was obligated to expand and read as broadly as possible Plaintiff's description of the documents he sought in his FOIA request, which was submitted by Plaintiff's counsel. This assertion has been refuted by numerous courts, which have held that while an agency must liberally read a FOIA request, the Agency "is not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *See Kowalczyk v. U.S. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996); *Mogenhan v. U.S. Dep't of Homeland Sec.*, Civ. A. No. 06-2045 (EGS), 2007 WL 2007502, *3 (D.D.C. Jul. 10, 2007) ("The D.C. Circuit has held that an agency must read a FOIA request as it is drafted -- not as the requester might wish it was drafted."), *citing Miller v. Casey*, 730 F.2d 773, 777 (D.C.Cir.1984).

**1. USCIS Was Not Required to Forward Plaintiff's Request to Other DHS Components.**

Under DHS's FOIA regulations, 6 C.F.R. § 5.4(a), "[i]n determining which records are responsive to a [FOIA] request, a component ordinarily will include *only records in its possession* as of the date the component begins its search for them." *See id* (emphasis added).[7] Further, courts have held that when a FOIA request is directed to one agency component, that agency component is not required to forward such a request to other components or agencies, unless the agency's regulations require such a referral. *See, e.g., Nash v. U.S. Dep't of Justice*, 992 F. Supp. 447, 449 (D.D.C. 1998) (holding that Plaintiff's request directed to the Bureau of Prisons ("BOP"), a component of the Department of Justice ("DOJ"), did not necessitate a FOIA search by the Executive Office of United States Attorneys ("EOUSA"), another DOJ component, even though EOUSA records were found in BOP's FOIA search), *citing Church of Scientology v. IRS*, 792 F.2d 146, 150 (D.C. Cir. 1986) (establishing that it is requester's obligation to make FOIA requests to agency component that he believes possesses responsive materials); *Nat'l Sec. Archive v. Executive Office of the President*, 688 F. Supp. 29, 33 (D.D.C. 1988) (request to one office was insufficient to request documents in the possession another sister entity); *Moayedi v. U.S. Customs & Border Prot.*, 510 F. Supp. 2d 73, 81 (D.D.C. 2007) ("most agencies have published regulations that FOIA requests seeking information from particular field offices must be made to the respective field offices, agencies are generally not required to search offices other

---

7 Given the volume of FOIA requests received by USCIS and other DHS components, DHS's regulation makes practical sense. If USCIS was required to forward each of the nearly 100,000 FOIA requests it receives each year to other DHS components if it suspected that other components might have responsive information, USCIS's FOIA workload, and the FOIA workload of all other DHS components, would immeasurably increase. *See Judicial Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (Lamberth, J.) ("FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters.") (citation and internal quotations omitted).

than those to which the request has been directed"); *cf. Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 20-21 (D.D.C. 2004) (Walton, J.) (finding an inadequate search where the Department of Interior's regulations specifically required its components to forward FOIA requests to other components, and component failed to do so).[8]

FOIA itself requires requesters to make requests in accordance with published agency rules. *See* 5 U.S.C. § 552(a)(2); *Church of Scientology*, 792 F.2d at 150. Accordingly, USCIS was not required to forward Plaintiff's request along to Immigration and Customs Enforcement ("ICE") or Customs and Boarder Protection ("CBP"), pursuant to DHS regulations. If Plaintiff believes ICE and CBP hold information that he wants, he is free to make FOIA requests to such components. *See Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996) ("The agency is not required to speculate about potential leads. More specifically, the Bureau is not obliged to look beyond the four corners of the request for leads to the location of responsive documents. Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request.").

**2. The Responsive Information USCIS Found and Released Contained No Obvious Leads to Information Within Its Custody.**

In searching for responsive documents, an agency is only obligated "to pursue any 'clear and certain' leads it cannot in good faith ignore." *Cooper v. U.S. Dep't of Justice*, Appeal No. 03-5172, 2004 WL 895748, at *2 (D.C. Cir. Apr. 23, 2004), *citing Kowalczyk*, 73 F.3d at 389.

---

8 None of the cases cited by Plaintiff support a contrary position. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (not discussing whether a request to one component requires forwarding to another component, merely holding that a governmental entity must search all of its systems that it reasonably believes to contain responsive information); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326-27 (D.C. Cir. 1999) (same); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (same, finding that FBI was required to search other systems in its custody, but not addressing systems in other DOJ components' custody).

Further, the D.C. Circuit has held that "it will be the rare case indeed in which an agency record contains a lead so apparent that the Bureau cannot in good faith fail to pursue it." *Kowalczyk*, 73 F.3d at 389. "Of course, if the requester discovers leads in the documents he receives from the agency, he may pursue those leads through a second FOIA request." *Id.*; *see also Nash*, 992 F. Supp. at 449; *Citizens for Responsibility & Ethics in Wash. v. Dep't of Interior*, 503 F. Supp. 2d 88, 100 (D.D.C. 2007) (Walton, J.) ("If the agency were required to undertake an additional search every time information became available that clarified a prior request, it could extend indefinitely the delay in processing new requests.") (internal quotations omitted); *Wilber v. CIA*, 273 F. Supp. 2d 119, 124 (D.D.C. 2003) (Collyer, J.) (an agency is only required "to follow through on obvious leads to discover request documents"), *quoting Valencia-Lucena*, 180 F.3d at 325. Applying this standard, it is clear that USCIS conducted a reasonable search.

The only lead to information in USCIS's possession or custody that Plaintiff has identified is to the Computer Linked Application Information Management System ("CLAIMS"). *See* Pl. Memo at 11-12. Plaintiff's identified "lead" is based upon certain computer screen print-outs from CLAIMS that were included in Plaintiff's A-File. *Id.* However, as the Supplemental Welsh Declaration describes, printouts from CLAIMS relevant to an individual's interaction with USCIS are included in an individual's A-File. *See* Supp. Welsh Decl. at ¶ 16.c, Attached Ex. A. Furthermore, as described in the System Notice description of CLAIMS, based upon the type of information contained on CLAIMS, it is unlikely to hold additional information concerning Plaintiff's detention. *See* CLAIMS System Notice, Attached Ex. E. Lastly, even if the screen printouts were some evidence that some information regarding Plaintiff was contained within CLAIMS, there was no obvious lead that CLAIMS contains

information on Plaintiff's detention or the other categories of documents that he requested, as to make this lead one of the rare circumstances in which a follow-up search was required.

### C. The "Undiscovered" Documents Noted By Plaintiff Do Not Impugn USCIS's Search.

Plaintiff's argument that he possesses certain documents not released by USCIS in connection with his FOIA request is irrelevant.

*First*, none of the documents Plaintiff has provided would have likely been included in his A-File at the time that USCIS searched in the Fall of 2005. That is, as noted in the Supplemental Welsh Declaration, none of the documents Plaintiff provides were directed to or from USCIS before this time. *See* Supp. Welsh Decl. at ¶ 17, Attached Ex. A. As noted above, pursuant to DHS regulation, a search by a DHS component "will include only records in its possession as of the date the component begins its search for them." 6 C.F.R. § 5.4(a).

*Second*, in determining the reasonableness of USCIS's search the focus is on the procedures employed, not the results. Indeed, the fundamental question is not "whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). That is, "a search is not unreasonable simply because it fails to produce all relevant material." *Meeropol v. Meese*, 790 F.2d 942, 952 (D.C. Cir. 1986); *see also Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Perfection is not the standard by which the reasonableness of a FOIA search is measured."). In fact, the sole case cited by Plaintiff in this regard, specifically notes, "the issue is not whether any further documents might conceivably exist[.]" *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993).

Accordingly, even if USCIS's search did not return every responsive paper in its possession or custody, such a fact is irrelevant in determining whether USCIS's search was adequate.

**IV. PLAINTIFF'S REQUESTED DISCOVERY IS OTHERWISE IMPROPER.**

Lastly, even if Plaintiff has shown that discovery is proper in this action, which he has not, Plaintiff fails to specifically articulate the topics on which he requires discovery. That is, Plaintiff generally states that he wants discovery on "Defendant's standard FOIA search procedures, the scope of Defendant's search for responsive documents, and records not previously released by Defendant's FOIA search." Pl. Memo. at 15.[9] This vague three item list is simply insufficient under Rule 56(f), as the rule requires that the moving party "point out the specific facts to which he would gain access if permitted further discovery." *Sullivan v. Catholic Univ. of Am.*, 387 F. Supp. 2d 11, 13 (D.D.C. 2005) (Robertson, J.). Indeed, based upon the multitude of discovery devices that Plaintiff requests (*i.e.*, deposition, interrogatories, and document requests), it appears that Plaintiff simply hopes to go on a fishing expedition to find something to impugn the Welsh Declarations. Accordingly, even if Plaintiff's Motion were to be supported by some legal or logical authority, which for the reasons above it is not, it should be denied.

[9] As noted above, sufficient information on the first two topics has been provided to Plaintiff in publically available information, regulations and the Welsh Declarations; and the third topic is irrelevant to any issue in this case.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Motion should be denied, and the Court should require that Plaintiff promptly file an opposition, if any, to Defendant's MSJ. A proposed order is attached.

Dated: May 22, 2008
Washington, DC

Respectfully submitted,

_____________________________________

JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney

/s/

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/

BRIAN P. HUDAK
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 514-7143

*Attorneys for Defendant*

# EXHIBIT
# A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **SAMIR HUSSAIN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 07-1633 (PLF)** |
| **v.** | ) | |
| | ) | |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTAL DECLARATION OF BRIAN J. WELSH**

I, BRIAN J. WELSH, hereby declare:

1. I am the Assistant Center Director, in the Freedom of Information and Privacy Acts ("FOIA/PA") Unit, National Records Center ("NRC"), United States Citizenship and Immigration Services ("USCIS"), within the Department of Homeland Security ("DHS"), in Lee's Summit, Missouri. I have held this position of Assistant Center Director since February 21, 2006. Prior to the formation of the DHS, this office was a component of the Immigration and Naturalization Service ("INS"), within the Department of Justice ("DOJ"). In October 2003, FOIA/PA became part USCIS within the DHS.

2. Through the exercise of my official duties, I am generally familiar with Plaintiff's civil action. I make the following statements based upon my personal knowledge, and upon information made available to me in my official capacity.

3. I understand that Plaintiff recently filed Rule 56(F) Motion for Stay of Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery, in which Plaintiff alleges that my prior declaration was insufficiently detailed and conclusory.

4. As such, the USCIS Office of Chief Counsel requested that I prepare this supplemental declaration to further explain the statement I made in my original declaration.

5. Plaintiff submitted a FOIA request for records to USCIS's Central Office in Washington, DC ("COW") seeking the following information:

> Mr. Hussain's Apprehension Record; Any Border Patrol Disposition; I-213 Record of deportable alien; and any other information possessed by DHS regarding Mr. Hussain's Detention on July 24, 2003.

6. Plaintiff noted on his USCIS FOIA request form his alien number, complete name, date of birth, place of entry, date of entry and certain other information.

7. As a general matter, once FOIA/PA receives a FOIA request, that request is inputted into USCIS's Freedom of Information Act / Privacy Act Information Processing System ("FIPS"), which is used to manage and organize all USCIS FOIA requests. Information on FOIA/PA's general procedures is publically available on USCIS's website (www.uscis.gov) by navigating to: About USCIS →Freedom of Information and Privacy Acts → USCIS FOIA PA Handbook. The direct URL to such handbook is also provided below:

   http://www.uscis.gov/files/nativedocuments/FOIA_HANDBOOK.pdf

8. USCIS receives nearly 100,000 FOIA requests per year. Detailed information on the volume of USCIS FOIA requests is publically available on USCIS's website (www.uscis.gov) by navigating to: About USCIS → Freedom of Information and Privacy Acts → FOIA Annual Reports. The direct URL to such webpage is also provided below:

   http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=774fd0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=34139c7755cb9010VgnVCM10000045f3d6a1RCRD

9. After Plaintiff's FOIA request was received and reviewed, based upon Plaintiff's description of the documents he was seeking and COW's knowledge of USCIS's information systems, COW determined that the requested documents would be contained only within Plaintiff's alien file ("A-File").

10. The A-File is the record in USCIS's custody that contains copies of information regarding all transactions involving an individual as they pass through the U.S. Immigration and Inspection processes. Indeed, the A-File contains information generated by USCIS and other DHS components and agencies, namely Immigration and Customs Enforcement ("ICE"), Customs and Border Protection ("CBP"), and U.S. Department of State ("DOS"). Accordingly, Plaintiff's A-File contains the universe of documented transactions between Plaintiff and U.S. immigration authorities in USCIS's custody.

11. Accordingly, COW believed that the information sought by Plaintiff's FOIA request of USCIS, which focused entirely on Plaintiff's interactions with immigration authorities regarding his detention, would be contained within his A-File, if at all.

12. Based upon this assessment, COW conducted a search of the *Alien File/Central Index System ("CIS") -- DHS/CIS 001 (formerly, Justice/INS 001A)* -- for Plaintiff's A-File, which COW believed would provide access to or the location of all files likely to contain responsive materials (*i.e.*, Plaintiff's A-File).

13. CIS is a shared system of records within USCIS's custody. CIS is utilized to access individuals' A-Files. Through CIS FOIA/PA can access electronic or digitized A-Files, locate hardcopy A-Files, and review certain other biographical data. DHS has published extensive information on CIS in the form of a System Notice, which can be found on USCIS's webpage (www.uscis.gov) by navigating to: About CIS → Freedom of Information and Privacy Acts (FOIA) → System Notices → Alien File / Central Index System (A-file/CIS). The direct URL to the System Notice is also provided below:

http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=fca9c253d8f3f010VgnVCM1000000ecd190aRCRD&vgnextchannel=c54f0ccc1793f010VgnVCM1000000ecd190aRCRD

14. COW searched the CIS system using a "Sounds Like" ("Soundex") search on Plaintiff's name, and an exact search on Plaintiff's date of birth. As a result of this search, the CIS system returned only one A-File "hit." The alien number on such hit was compared with Plaintiff's alien number, which Plaintiff provided on his USCIS FOIA request form, and it was found to be a match. After further reviewing the biographical data on the "hit" A-File, it was determined that the hit exactly matched Plaintiff's name, date of birth, country of origin, place of entry, and date of entry. Accordingly, COW determined that the hit A-File, was indeed Plaintiff's A-File.

15. As noted in my prior declaration, the CIS system indicated that Plaintiff's A-File, was in hard copy form and physically located at the NRC. Accordingly, thereafter, COW forwarded Plaintiff's FOIA request, along with the search results, to NRC for a direct response to Plaintiff. Thereafter, NRC acknowledged receipt of Plaintiff's request, and scanned Plaintiff's A-File into an electronic file. The remainder of USCIS's processing is explained in exhaustive and minute detail in my original declaration.

16. I also understand that Plaintiff has argued, among other things, that USCIS failed to search other information systems within its control and to forward Plaintiff's request to other DHS components. Notwithstanding these arguments, I continue to believe that USCIS conducted a reasonable and appropriate search in response to Plaintiff's FOIA request for the below reasons:

    a. Pursuant to DHS's FOIA regulations, 6 C.F.R. § 5.4(a), in response to a FOIA request submitted to USCIS, USCIS is only obligated to search for responsive records in its possession as of the date that USCIS begins such search.

b. The systems that Plaintiff contends were not searched by USCIS, the Deportable Alien Control System ("DACS") and the Nonimmigrant Information System ("NIIS") are in the custody of and maintained by ICE and CBP, respectively. The list of systems in the custody of and maintained by USCIS can be found on USCIS's webpage (www.uscis.gov) by navigating to: About CIS → Freedom of Information and Privacy Acts (FOIA) → U.S. Citizenship and Immigration Services Major Immigration Information Systems. The direct URL to such webpage is also provided below:

http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=fe30d0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=34139c7755cb9010VgnVCM10000045f3d6a1RCRD

Additionally, a listing of all DHS information systems, and the component that maintains and has custody over such systems can be found by navigating to: About CIS → Freedom of Information and Privacy Acts (FOIA), and selecting the "System Notices" link at the bottom of the page. The direct URL to such webpage is also provided below:

http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=79e0d0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=34139c7755cb9010VgnVCM10000045f3d6a1RCRD

c. Although the Computer Linked Application Information Management System ("CLAIMS") is a system maintained by USCIS, the information contained on such system is duplicative of information accessible through CIS. That is, relevant printouts of the CLAIMS system are included in an individual's A-File. More information on the CLAIMS system can be found on USCIS's webpage (www.uscis.gov) by navigating to: About CIS → Freedom of Information and Privacy Acts (FOIA) → System Notices → Computer Linked Application Information Management System (CLAIMS). The direct URL to the System Notice is also provided below:

http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=ff4ed0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=c54f0ccc1793f010VgnVCM1000000ecd190aRCRD

d. Further, although the Alien Status Verification Index ("ASVI") is a system maintained by USCIS, the information contained on such system is duplicative of information accessible through CIS -- *i.e.* in an individual's A-File. That is, ASVI merely lists an alien's current immigration status. This identical information is also available in the CIS / A-File. Further,

ASVI does not contain any documents or other potentially responsive information. More information on the ASVI system can be found on USCIS's webpage (www.uscis.gov) by navigating to: About CIS → Freedom of Information and Privacy Acts (FOIA) → System Notices → Alien Status Verification Index (ASVI). The direct URL to the System Notice is also provided below:

http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid=bfbdd0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=c54f0ccc1793f010VgnVCM1000000ecd190aRCRD

e. Indeed, none of the other information systems in the custody of and maintained by USCIS are likely to hold non-duplicative information responsive to Plaintiff's FOIA request. Details concerning such other USCIS information systems, including what records such systems maintain, are publically available through USCIS's website (www.uscis.gov) by navigating to About CIS → Freedom of Information and Privacy Acts (FOIA) → System Notices. As noted above, the list of USCIS maintained information systems can also be found on USCIS's website.

17. Further, Plaintiff attaches certain documents to his affidavit, which he contends were not released in connection with his FOIA request. The only exhibits that appear, on their face, to have been sent from or to USCIS are portions of Exhibits F, G, and H. However, all such documents post-date the search date for records in this action; and, thus, under the applicable DHS regulations such documents would not have been included in USCIS's search.

Further declarant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on May 22, 2008.

Brian J. Welsh
Assistant Center Director
Freedom of Information Act & Privacy Act

# EXHIBIT
# B




Home > About USCIS > Freedom of Information and Privacy Acts (FOIA) > System Notices

# System Notice for Alien File/Central Index System (A-file/CIS) DHS-USCIS 001

**4410-10**

**DEPARTMENT OF HOMELAND SECURITY**

**Office of the Secretary**

**Docket No. DHS-2006-0081**

**Privacy Act; Alien File (A-File) and Central Index System (CIS) Systems of Records**

**AGENCY:** Department of Homeland Security (DHS)

**ACTION:** System of Records Notice

**SUMMARY:** As part of its ongoing effort to review and update legacy system of records notices, the Department of Homeland Security is publishing a revision to the previously established Privacy Act system of records notice published by the former Immigration and Naturalization Service for hardcopy and digitized A-Files; and the Central Index System. The Department of Homeland Security is also updating the routine uses that were previously published for this system of records.

**DATES:** Written comments must be submitted on or before February 15, 2007

**ADDRESSES:** You may submit comments, identified by Docket Number DHS-2006-0081 by one of the following methods:

- Federal e-Rulemaking portal: http://www.regulations.gov. Follow the instructions for submitting comments via docket number DHS 2006-0081.
- Fax: (202-572-8727) (not a toll-free number).
- Mail: Hugo Teufel III, DHS Chief Privacy Officer, Department of Homeland Security, Washington, DC 20528.
- Instructions: All submissions received must include the agency name and docket number for this rulemaking. All comments received will be posted without change to http://www.regulations.gov, including any personal information provided.
- Docket: For access to the docket to read background documents or comments received go to http://www.regulations.gov.

**FOR FURTHER INFORMATION CONTACT:** For general questions, please contact: Elizabeth Gaffin, 20 Massachusetts Avenue, NW, Washington, DC 20529, by telephone (202) 272-1400. For privacy issues, please contact: Hugo Teufel III (571-227-3813), Chief Privacy Officer, Privacy Office, U.S. Department of Homeland Security, Washington, DC 20528.

**SUPPLEMENTARY INFORMATION:**

The Department of Homeland Security (DHS), implements United States immigration law and policy through the United States Citizenship and Immigration Services' (USCIS) processing and adjudication of applications and petitions submitted for citizenship, asylum, and other immigration benefits. USCIS also supports national security by preventing individuals from fraudulently obtaining immigration benefits and by denying applications from individuals who pose national security or public safety threats. United States Immigration policy and law is also implemented through Immigration and Customs Enforcement's (ICE) law enforcement activities and Customs and Border Protection's (CBP) inspection process and protection of our borders.

The A-File is the record that contains copies of information regarding all transactions involving an individual as he/she passes through the U.S. immigration and inspection process. Previously, legacy Immigration and Naturalization Services (INS) handled all of these transactions. Since the formation of DHS, however, these responsibilities have been divided among USCIS, ICE, and CBP. While USCIS is the custodian of the A-File, all three components create and use A-Files.

DHS, in its ongoing effort to update its legacy systems, is issuing the A-File and CIS system of records notice, DHS-USCIS 001. A notice detailing this system of records was last published in the Federal Register on September 7, 2001, as the INS Alien File (A-File) and Central Index System (CIS), JUSTICE/INS-001A (66 FR 46812). Until now, pursuant to the savings clause in the Homeland Security Act of 2002, Public Law 107-296, sec. 1512, 116 Stat. 2310 (Nov. 25, 2002) (6 U.S.C. 552), the USCIS has been relying on legacy Privacy Act systems.

Digitization of the A-File

To support current immigration operations, USCIS, ICE and CBP assemble paper-based A-Files that contain official record documents and attachments pertaining to individuals. These hardcopy A-Files are routed to authorized DHS employees who need access to them for immigration benefits processing, law enforcement, and protection of national security. USCIS is embarking on an enterprise-wide "Transformation Program" that will transition the agency from a fragmented, paper-based operational environment to a centralized and consolidated electronic environment. The new operational environment will employ the types of online customer accounts used in the private sector. This "person-centric" model will link information related to an individual in a single account in order to facilitate customer friendly transactions, track activities, and reduce identity fraud.

USCIS, as custodian of the A-File and part of the Transformation Program, has developed the Integrated Digitization Document Management Program (IDDMP) to provide electronic creation of, and access to, A-Files. The IDDMP manages the scanning of hard copy A-Files, the storage of the digitized A-Files, and electronic access to digitized A-Files.

Scanning is performed at a contractor owned and operated facility called the Records Digitization Facility (RDF). The digitized A-Files produced by the RDF are sent to USCIS' Quality Assurance (QA) system. After QA is performed, they are stored centrally, and images within the A-File are accessed and updated using the Electronic Data Management System (EDMS). For the purpose of this document, the RDF, QA system, and EDMS will be collectively referred to as the IDDMP. Access to the digitized A-Files is provided to DHS and other Federal, state, tribal, local or foreign government agencies responsible for providing benefits, investigating or prosecuting violations of civil or criminal laws, or protecting our national security.

The Privacy Act embodies Fair Information principles in a statutory framework governing the means by which the United States Government collects, maintains, uses, and disseminates personally identifiable information. The Privacy Act applies to information that is maintained in a "system of records." A "system of records" is a group of any records under the control of an agency from which information is retrieved by the name of an individual or by some identifying number, symbol, or other identifying particular assigned to the individual. Individuals may request their own records that are maintained in a system of records in the possession or under the control of DHS by complying with DHS Privacy Act regulations, 6 CFR 5.21.

The Privacy Act requires that each agency publish in the Federal Register a description denoting the type and character of each system of records in order to make agency recordkeeping practices transparent, to notify individuals about the use to which personally identifiable information is put, and to assist the individual to more easily find files within the agency.

In accordance with 5 U.S.C. 552a(r), DHS has provided a report of this revised system of records to the Office of Management and Budget and to the Congress.

**DHS-USCIS-001**

**System name:** The Department of Homeland Security (DHS), Alien File (A-File – hardcopy or digitized copy) and Central Index System (CIS)

**System location:** The database housing the digitized A-Files is located within USCIS' data center in the Washington, DC metropolitan area. Hard copies are located at Headquarters, Regional, District, and other USCIS file control offices in the United States and foreign countries as detailed on the agency's website, www.USCIS.gov. Authorized USCIS, ICE, and CBP personnel may request and view the paper A-File. Paper A-Files are sent and received by file control offices. USCIS will directly access digitized A-Files using the IDDMP. ICE and CBP access to the digitized A-File via the IDDMP will be provided through the Law Enforcement Service Center (LESC). CIS is available in USCIS offices. Remote access terminals for CIS will also be located in other components of the DHS on a limited basis.

**Categories of individuals covered by the system:**

A. Individuals covered by provisions of the Immigration and Nationality Act of the United States.

B. Individuals who are under investigation (including those who are possible national security threats or threats to the public safety), or who were investigated by the DHS in the past, or who are suspected of violating immigration-related criminal or civil provisions of treaties, statutes, regulations, Executive Orders, and Presidential proclamations administered by DHS, and witnesses and informants having knowledge of such violations.

**Categories of records in the system:**

A. The hardcopy paper A-File (which, prior to 1940, was called Citizenship File (C-File) contains all the individual's official record material such as: naturalization certificates; various forms and attachments (e.g., photographs); applications and petitions for benefits under the immigration and nationality laws; reports of investigations; statements; reports; correspondence; and memoranda on each individual for whom DHS has created a record under the Immigration and Nationality Act. Subsets of information may be used to determine eligibility for citizenship under Section 320 of the Immigration and Nationality Act.

B. The electronic copy of the A-File provided by IDDMP's digital repository contains scanned images of the paper A-File searchable using identical index fields as CIS.

C. CIS contains personal identification data such as A-File number, date and place of birth, date and port of entry, as well as the location of each official hardcopy paper A-File.

**Authority of maintenance for the system:**

Sections 103 and 290 of the Immigration and Nationality Act, as amended (8 U.S.C. 1103 and 1360), and the regulations issued pursuant thereto; and section 451 of the Homeland Security Act of 2002 (P.L. 107-296).

**Purpose(s):**

A-File data is collected on individuals covered by provisions of the Immigration and Nationality Act of the United States and individuals who are under investigation, who were investigated by the DHS in the past, who are suspected of violating the immigration-related laws administered by DHS, or are witnesses and informants having knowledge of such violations. The A-File is the record that contains all transactions involving an individual as he/she passes through the U.S. immigration and inspection process, and chronicles interactions with the U.S. Government. Previously, legacy INS performed all of these functions.

Since the formation of DHS, these immigration-related functions have been divided among the following three components: 1) CBP, which performs the border and inspection processes; 2) USCIS, which performs the immigration benefit adjudication process; and 3) ICE, which performs the investigatory, deportation, and immigration court functions. Although USCIS is the custodian of the A-File, all three components create and use A-Files. Once the A-File is digitized, information will be accessed by USCIS, ICE, and CBP so that they may perform their mission requirements. Information contained within the A-File may also be shared with other components within DHS responsible for law enforcement and national security intelligence activities.

The CIS system is used primarily by DHS employees for immigration benefits processing, protection of national security, and to administer and enforce immigration and nationality laws, and related statutes. These uses include: assisting the Department with processing applications for benefits under applicable immigration laws; detecting violations of these laws; the referral of such violations for prosecution; law enforcement; the inspection process; and protection of our borders.

**Routine uses of records maintained in the system, including categories of users and the purposes of such uses:**

In addition to those disclosures generally permitted under 5 U.S.C. Section 552a(b) of the Privacy Act, all or a portion of the records or information contained in this system may be disclosed to authorized entities, as is determined to be relevant and necessary, outside DHS as a routine use pursuant to 5 U.S.C. Section 552a(b)(3) as follows:

A. To clerks and judges of courts exercising naturalization jurisdiction for the purpose of filing petitions for naturalization and to enable such courts to determine eligibility for naturalization or grounds for revocation of naturalization.

B. To the Department of State in the processing of petitions or applications for benefits under the Immigration and Nationality Act, and all other immigration and nationality laws including treaties and reciprocal agreements.

C. To appropriate Federal, state, tribal, and local government law enforcement and regulatory agencies, foreign governments, and international organizations, for example: the Department of Defense; the Department of State; the Department of the Treasury; the Central Intelligence Agency; the Selective Service System; the United Nations; and INTERPOL; as well as to other individuals and organizations during the course of an investigation by DHS or the processing of a matter under DHS' jurisdiction, or during a proceeding within the purview of the immigration and nationality laws, when DHS deems that such disclosure is necessary to carry out its functions and statutory mandates to elicit information required by DHS to carry out its functions and statutory mandates.

D. To an appropriate Federal, state, tribal, local, or foreign government agency or organization, or international organization, lawfully engaged in collecting law enforcement intelligence, whether civil or criminal, or charged with investigating, prosecuting, enforcing or implementing civil or criminal laws, related rules, regulations or orders, to enable these entities to carry out their law enforcement responsibilities, including the collection of law enforcement intelligence and the disclosure is appropriate to the proper performance of the official duties of the person receiving the disclosure.

E. To the United States Department of Justice (DOJ) (including United States Attorneys' offices) or other Federal agency conducting litigation or in proceedings before any court, adjudicative or administrative body, or to the court or administrative body, when it is necessary to the litigation and one of the following is a party to the litigation or has an interest in such litigation: (1) any

employee of DHS in his/her official capacity; (2) any employee of DHS in his/her individual capacity where DOJ or DHS has agreed to represent said employee; or (3) the United States or any agency thereof.

F. To an appropriate Federal, state, local, tribal, territorial, foreign, or international agency, if the information is relevant and necessary to a requesting agency's decision concerning the hiring or retention of an individual, or issuance of a security clearance, license, contract, grant, or other benefit, or if the information is relevant and necessary to a DHS decision concerning the hiring or retention of an employee, the issuance of a security clearance, the reporting of an investigation of an employee, the letting of a contract, or the issuance of a license, grant or other benefit and when disclosure is appropriate to the proper performance of the official duties of the person making the request.

G. To the Office of Management and Budget in connection with the review of private relief legislation as set forth in OMB Circular No. A-19 at any stage of the legislative coordination and clearance process as set forth in the Circular.

H. To an attorney or representative (as defined in 8 CFR 1.1(j)) who is acting on behalf of an individual covered by this system of records in connection with any proceeding before USCIS or the Executive Office for Immigration Review.

I. To a Federal, state, tribal, or local government agency to assist such agencies in collecting the repayment of loans, or fraudulently or erroneously secured benefits, grants, or other debts owed to them or to the United States Government, or to obtain information that may assist USCIS in collecting debts owed to the United States Government; to a foreign government to assist such government in collecting the repayment of loans, or fraudulently or erroneously secured benefits, grants, or other debts owed to it provided that the foreign government in question:

(1) Provides sufficient documentation to establish the validity of the stated purpose of its request; and

(2) Provides similar information to the United States upon request.

J. To student volunteers whose services are accepted pursuant to 5 U.S.C. 3111 or to students enrolled in a college work-study program pursuant to 42 U.S.C. 2751 et seq.

K. To a Congressional office from the record of an individual in response to an inquiry from that Congressional office made at the request of that individual.

L. To the National Archives and Records Administration or other Federal government agencies pursuant to records management inspections being conducted under the authority of 44 U.S.C. Sections 2904 and 2906.

M. To an obligor who has posted a bond with USCIS for the subject. USCIS may provide only such information as either may:

(1) Aid the obligor in locating the subject to insure his or her presence when required by DHS; or

(2) Assist the obligor in evaluating the propriety of the following actions by DHS: either the issuance of an appearance demand or notice of a breach of bond--i.e., notice to the obligor that the subject of the bond has failed to appear which would render the full amount of the bond due and payable.

N. To a coroner for purposes of affirmatively identifying a deceased individual (whether or not such individual is deceased as a result of a crime).

O. Consistent with the requirements of the Immigration and Nationality Act, to the Department of Health and Human Services (HHS), the Centers for Disease Control and Prevention (CDC), or to any state or local health authorities, to:

(1) provide proper medical oversight of DHS-designated civil surgeons who perform medical examinations of both arriving aliens and of those requesting status as a lawful permanent resident; and

(2) to ensure that all health issues potentially affecting public health and safety in the United States are being or have been, adequately addressed.

P. To a Federal, state or local government agency seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law.

Q. To contractors and their agents, grantees, experts, consultants, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for DHS, when necessary to accomplish an agency function related to this system of records. Those provided information under this routine use are subject to the same Privacy Act limitations as are applicable to DHS officers and employees.

R. To the appropriate Federal, state, local, tribal, territorial, or foreign, or international agency responsible for investigating, prosecuting, enforcing, or implementing a statute, rule, regulation, or order, where DHS becomes aware of, or in

conjunction with other information determines, that a violation or potential violation of civil or criminal law has occurred.

S. To the Social Security Administration (SSA) for the purpose of issuing a Social Security number and card to an alien who has made a request for a Social Security number as part of the immigration process and in accordance with any related agreements in effect between the SSA, DHS and the Department of State entered into pursuant to 20 CFR 422.103(b)(3); 422.103(c); and 422.106(a), or other relevant laws and regulations.

T. To a former employee of DHS, in accordance with applicable regulations, for purposes of: responding to an official inquiry by a Federal, state, or local government entity or professional licensing authority; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

U. To an individual's prospective or current employer to the extent necessary to determine employment eligibility.

V. To Federal and foreign government intelligence or counterterrorism agencies or components where DHS becomes aware of an indication of a threat or potential threat to national or international security, or where such use is to assist in anti-terrorism efforts and disclosure is appropriate to the proper performance of the official duties of the person making the disclosure;

W. To appropriate agencies, entities, and persons when:

(1) it is suspected or confirmed that the security or confidentiality of information in the system of records has been compromised;

(2) it is determined that as a result of the suspected or confirmed compromise there is a risk of harm to economic or property interests, identity theft or fraud, or harm to the security or integrity of this system or other systems or programs (whether maintained by DHS or another agency or entity) that rely upon the compromised information; and

(3) the disclosure is made to such agencies, entities, and persons when reasonably necessary to assist in connection with efforts to respond to the suspected or confirmed compromise and prevent, minimize, or remedy such harm.

**Policies and practices for storing, retrieving, accessing, retaining and disposing of records in the system:**

**Storage:**

Paper A-File and C-File records are stored in file folders. The digitized A-Files are stored in an electronic repository housed in USCIS' data center. CIS data is also stored in USCIS data center.

**Retrievability:**

The location of paper A-Files can be searched in CIS on the following metadata: A-Number; C-File number; name; and date of birth. Digitized A-Files can be searched and retrieved by metadata, which at a minimum includes: primary A-Number; first name; last name; date of birth; and country of birth. Full-text searches can also be performed on the digitized A-Files.

**Safeguards:**

USCIS offices are located in buildings under security guard or authorized contractors for the Federal government, and access to premises is by official identification. Information in this system is also safeguarded in accordance with applicable laws, rules and policies including the DHS Information Technology Security Programs Handbook. All records are protected from unauthorized access through appropriate administrative, physical, and technical safeguards including restricting access to authorized personnel who require information in the records for the performance of their official authorized duties, using locks, and password protection identification features. The system will not have classified information.

Outside agencies will not have direct access to the IDDMP. They will follow the current practice for accessing physical A-Files, which is to appear in person at the local USCIS office. They are required per the USCIS Records Operations Handbook, to work with their local USCIS office to view A-File information. After showing proper credentials and demonstrating a need to know the specific information requested in the performance of their official duties, the representative will work directly with USCIS records personnel to view the relevant portions of the A-File.

**Retention and Disposal:**

The A-File records are retained for 75 years from the date the file is retired to the Federal Records Center or date of last action (whichever is earlier) and then destroyed. C-File records are to be destroyed 100 years from March 31, 1956. Automated master index records are permanent and are scheduled to be transferred to NARA in 2006. When a paper A-File is digitized, the digitized A-File becomes the official record and maintains the same retention schedule as the original paper A-File. Options for disposition of paper A-Files that have been digitized are currently under review.

**System manager(s) and address:**

The Service-wide system manager is the Director, Office of Records Services, Department of Homeland Security, 111 Massachusetts Avenue, NW, Second Floor, Washington, DC 20529.

**Notification procedure:**

To determine whether this system contains records relating to you, provide a written request containing the following information:

1. Identification of the record system;
2. Identification of the category and types of records sought; and
3. The requesting individual's signature and verification of identity pursuant to 28 U.S.C. 1746, which permits statements to be made under penalty of perjury. Alternatively, a notarized statement may be provided.

Address inquiries to the system manager at:

Director, Office of Records Services, Department of Homeland Security, 111 Massachusetts Avenue, NW, Second Floor, Washington, DC 20529

or to the Freedom of Information/Privacy Act Office at:

Freedom of Information/Privacy Act Office, USCIS, National Records Center, P.O. Box 648010, Lee Summit, MO 64064-8010.

**Record access procedures:**

All requests for access must be made in writing and addressed to the Freedom of Information Act/Privacy Act (FOIA/PA) officer at USCIS. Requesters are directed to clearly mark the envelope and letter “Privacy Act Request.” Within the text of the request, provide the A-File number and/or the full name, date and place of birth, and either a notarized signature of the individual who is the subject of the record or a statement requesting individual's signature and verification of identity pursuant to 28 U.S.C. 1746, which permits statements to be made under penalty of perjury, and any other information which may assist in identifying and locating the record, and a return address. For convenience, Form G-639, FOIA/PA Request, may be obtained from the nearest DHS office or online at www.uscis.gov and used to submit a request for access. The procedures for making a request for access to one’s records can also be found on the USCIS web site, located at www.uscis.gov.

**Contesting records procedures:**

Redress procedures are established and operated by the program through which the data was originally collected. In the case of redress requests pertaining to records held by DHS organizations, an individual who is not satisfied with the response can appeal his or her case to the DHS Chief Privacy Officer, who will conduct a review and provide final adjudication on the matter.

**Record source categories:**

Basic information contained in DHS records is supplied by individuals on Department of State and DHS applications and forms. Other information comes from inquiries or complaints from members of the general public and members of Congress; referrals of inquiries or complaints directed to the President or Secretary of Homeland Security; USCIS reports to investigations, sworn statements, correspondence, official reports, memoranda, and written referrals from other entities, including federal, state, and local governments, various courts and regulatory agencies, foreign government agencies and international organizations.

Exemptions claimed for the system:

Pursuant to 6 CFR Appendix C to Part 5, pertaining to the Immigration and Naturalization Service (INS) Alien File (A-File)

and Central Index System (CIS), JUSTICE/INS-001A (66 FR 46812) system of records notice, the records and information in this system are exempt from 5 U.S.C. 552a (c) (3) and (4), (d), (e) (1), (2), and (3), (e)(4) (G) and (H), (e) (5) and (8), and (g) of the Privacy Act. These exemptions apply only to the extent that records in the system are subject to exemption pursuant to 5 U.S.C. 552a (j)(2) and (k)(2). DHS intends to review these exemptions and, if warranted, issue a new set of exemptions within ninety (90) days of this publication.

Dated:

Hugo Teufel III,

Chief Privacy Officer.

# EXHIBIT C




Home > About USCIS > Freedom of Information and Privacy Acts (FOIA) > System Notices

# System Notice for Asset Management Information System (AMIS)

**Department of Justice/U.S. Immigration and Naturalization Service**
**(Note: Major Information System last noted by legacy INS)**

**TITLE:** Asset Management Information System

**ACRONYM:** AMIS

**ORIGINATOR:**

**ABSTRACT:** AMIS is a centralized, mainframe system that tracks the movement of all the assets of the Immigration and Naturalization Service (INS) from acquisition to disposal. The assets tracked include accountable property, automated data processing equipment, electronics, real property, weapons, and vehicles. The system also is used to assess and determine firearms qualifications on an ongoing basis to ensure that firearms are issued only to qualified and authorized personnel.

**PURPOSE:** AMIS simplifies the inventory process and provides an efficient and effective management tool for administering, controlling, and reporting INS inventory.

**ACCESS CONSTRAINTS:** All records in AMIS are protected from unauthorized access through appropriate administrative, physical, and technical safeguards. These safeguards include restricting access to those with a need-to-know to perform their official duties, using locks and alarm devices, passwords and/or encrypeted data communications.

**USE CONSTRAINTS:** Users of AMIS will be restricted to only those privileges necessary to perform assigned tasks.

**AGENCY PROGRAM:** The INS is the arm of the Department of Justice that is charged with border enforcement, immigration enforcement, and naturalization activities. AMIS is one of the tools utilized to accomplish this mission.

**SOURCES OF DATA:** Records are generated from property purchase orders; from acquisitions, transfer and disposal data; employee locator documentation and the record subject.

**RESPONSIBLE OFFICE FOR DISTRIBUTING INFORMATION**

**ORDER PROCESS:** A request for access to a record from the system will be made in writing with the envelope and the letter clearly marked APrivacy Access Request.@ Include in the request your full name, complete address, date of birth, place of birth, notarized signature or a statement under penalty of perjury to declare your identity is true, and other identifying data you may wish to furnish to assist in making a proper search of our records. The requester will also provide a return address for transmitting the information. Requests for access to information must be addressed to the office that maintains the record or the FOIA/PA Unit, INS, 425 I Street, NW, Washington, DC 20536.

**OFFICE OF CONTACT FOR FURTHER INFORMATION**

Major Organization Subdivision: Office of Management
Minor Organization Subdivision: Director, Freedom of Information Act/Privacy Act Branch
Name of Unit: FOIA/PA Unit
Street Address: 425 I Street, N.W.
City: Washington, D.C.
State: NA
Zip Code: 20536
Country: USA
Hours of Service: 8:00 a.m. B 4:30 p.m.
Telephone: (202) 514-3278
Fax: (202) 514-4310
E-mail Address: NA

**DATE OF LAST MODIFICATION**: December 24, 1998

# EXHIBIT D






# System Notice for Orphan Petitioner Index and Files

**JUSTICE/INS-007**

**SYSTEM NAME:**

Orphan Petitioner Index and Files.

**SYSTEM LOCATION:**

Headquarters, District offices and suboffices of the Immigration and Naturalization Service (Service) in the United States and foreign countries, as detailed in JUSTICE/INS-999, last published in the Federal Register on April 13, 1999 (64 FR 18052).

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who are prospective petitioners or who have filed an application for Advance Processing of Orphan Petition under the Immigration and Nationality Act, as amended.

**CATEGORIES OF RECORDS IN THE SYSTEM:**

The system contains form I-600A, Application for Advance Processing of Orphan Petition, filed for advance processing of orphan petitions by prospective adoptive parent(s); documentation of prospective adoptive parent(s)' United States citizenship and marital status, agency responses indicating whether prospective adoptive parent(s) have any arrest records; and home studies which include statements of financial ability and other elements that relate to the ability of the prospective adoptive parents to provide proper care to beneficiary orphans.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

8 U.S.C. 1103 and 1154; and 42 USC 14901.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSE OF SUCH USE:**

Information in the system will be used by employees of the Immigration and Naturalization Service to determine the status of pending requests or petitions, to locate related files and other records promptly, and to determine the suitability of prospective petitioners as adoptive parents. Information regarding the status and progress of cases and the suitability of prospective petitioners as adoptive parents may be disseminated to other components of the Department of Justice, Members of Congress, and the President. In addition:

A. Relevant information from this system may be referred to the Department of State in the processing of petitions or issuance of visas for benefits under the Immigration and Nationality Act, as amended.

B. Information from this system may be referred to officials of other Federal, State and local government agencies and adoption agencies and social workers to elicit information required for making a final determination of the petitioner's ability to care for a beneficiary orphan.

C. To an attorney or representative who is acting on behalf of an individual covered by this system of records as defined in 8 CFR 1.1(j) in conjunction with any proceeding before the Immigration and Naturalization Service or the Executive Office for Immigration Review.

D. To the news media and the public pursuant to 28 CFR 50.2 unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy.

E. To a Member of Congress, or staff acting upon the Member's behalf, when the Member or staff requests the information on behalf of and at the request of the individual who is the subject of the record.

F. To the General Service Administration (GSA) and the National Archives and Records Administration (NARA) in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906.

G. To contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal government, when necessary to accomplish an agency function related to this system of records.

H. To a court or adjudicative body before which the appropriate DOJ component is authorized to appear when any of the following is a party to litigation or has an interest in litigation and such records are determined by the appropriate DOJ component

to be arguably relevant to the litigation:

1. The DOJ component, or any subdivision thereof, or

2. Any employee of the DOJ in his or her official capacity, or

3. Any employee of the DOJ in his or her individual capacity where the DOJ has agreed to represent the employee or has authorized a private attorney to represent him or her, and

4. The United States, where the DOJ determines that the litigation is likely to affect it or any of its subdivisions.

I. Pursuant to subsection (b)(3) of the Privacy Act, the Department of Justice may disclose relevant and necessary information to a former employee of the Department for purposes of: responding to an official inquiry by a federal, state, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE:**

Records are maintained as paper records in file folders.

**RETRIEVABILITY:**

Records are retrieved by the name of the petitioner.

**SAFEGUARDS:**

Most INS offices are located in buildings under security guard, with access limited to INS and other Federal Government employees and authorized visitors. All records are stored in spaces which are locked outside of normal office hours.

**RETENTION AND DISPOSAL:**

Records from the advance processing file folders are retained for one year after the completion of all advance processing. After one year the records are returned to the petitioner or the responsible state or licensed agency. Materials which cannot be returned to the petitioner or responsible state or licensed agency will be destroyed.

**SYSTEM MANAGER AND ADDRESS:**

Associate Commissioner, Examinations, Immigration and Naturalization Service, 425 I Street, NW, Washington, DC 20536.

**NOTIFICATION PROCEDURES:**

Inquiries should be addressed to the District Director or Officer in Charge of the Service office where the file is located. If the file location is not known, inquiries may be addressed to the System Manager, as noted above. To enable the Service to identify whether the system contains a record relating to an individual, the requester must provide the individual's full name, date of birth, place of birth, and a description of the subject matter.

**RECORD ACCESS PROCEDURES:**

A person desiring access to a record shall submit a request in writing to the agency official designated under "Notification Procedure" above. The requester must also identify the record by furnishing the information listed under that caption. If a request to access a record is made by mail, the envelope and letter shall be clearly marked "Privacy Act Request," and a return address must be provided for transmitting any information.

**CONTESTING RECORDS PROCEDURES:**

An individual desiring to request amendment of records maintained in this system of records should direct his or her request to the System Manager or to the appropriate FOIA/PA Officer noted in System Locations. The request should state the information being contested, the reason(s) for contesting it, and the proposed amendment thereof. Persons filing such requests should mark the envelope with the following legend "Privacy Act Amendment Request."

**RECORD SOURCE CATEGORIES:**

Information in the system is obtained from requests and petitions filed by the petitioners; public and private adoption agencies and social workers; and federal state, local and foreign government agencies.

**SYSTEMS EXEMPTED FOR CERTAIN PROVISIONS OF THE ACT:**

This system is exempt from subsection (d) of the Privacy Act. This exemption applies to the extent that information in this system is subject to exemption pursuant to 5 U.S.C. 552a(k)(1). INS has published implementing regulations in accordance with the requirements of 5 U.S.C. 553(b), (c) and (e) and these have been published in the Federal Register. See 28 C.F.R. 16.99(e).

Home Contact Us Privacy Policy Website Policies PDF Reader No FEAR Freedom Of Information Act USA.gov

U.S. Department of Homeland Security

# EXHIBIT E






# System Notice for Computer Linked Application Information Management System (CLAIMS)

JUSTICE/INS-013

**SYSTEM NAME:**

Computer Linked Application Information Management System (CLAIMS 3 and 4).

**SYSTEM LOCATION:**

The Department of Justice (DOJ) Data Processing Center with data access by Immigration and Naturalization Service (INS) users from Headquarters, Regional and District offices, Service Centers, and sub-offices as detailed in JUSTICE/INS-999, last published in the Federal Register on April 13, 1999 (64 FR 18052), and on the Internet at the INS Web page, at http://www.INS.gov.

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:**

Individuals who have filed applications or petitions for benefits under the Immigration and Nationality Act, as amended, and/or who have submitted fee payments with such applications or petitions; and individuals who have paid fees for access to records under the Freedom of Information/Privacy Acts (FOIA/PA).

**CATEGORIES OF RECORDS IN THE SYSTEM:**

Biographic information which identifies individuals named above, e.g., name and address, date of birth, country of birth and alien registration number. Records in the system may also include such information as date documents were filed or received in INS, application/petition status, location of record, FOIA/PA or other control number when applicable, and fee receipt data.

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:**

8 U.S.C. 1103; 8 U.S.C. 1363; and 31 U.S.C. 3512.

**PURPOSE(S):**

CLAIMS 3 and 4 consists of three major components: 1) The Local Area Network (LAN) version is used mainly by the INS Service Centers to support the processing and maintenance of applications and petitions information into computer data format; 2) The centralized mainframe component, retains data uploaded from the Service Center LAN operations and provides real-time on-line nationwide inquiries and update capabilities to authorized INS representatives, and; 3) The re-engineered Client/Server version of CLAIMS automates aspects of applications associated with naturalization/citizenship and benefits processing. Both investigative and administrative records are maintained in this system in order to permit the INS to function efficiently. Reports are also generated from the data within the system. The CLAIMS 3 and 4 components enable INS to provide automated support to process applications and/or petitions for benefits; determine the status of pending applications and petitions for benefits; account for and control the receipt and disposition of any fees and refunds collected, and FOIA/PA requests; and locate related physical and automated files to support INS responses to inquiries about these records.

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND THE PURPOSES OF SUCH USES:**

A. To any Federal agency, where appropriate, to enable such agency to make determinations regarding the payment of Federal benefits to the record subject in accordance with that agency's statutory responsibilities.

B. In an appropriate proceeding before a court, grand jury, or administrative or regulatory body when records are determined by the Department of Justice to be arguably relevant to the proceeding.

C. To an actual or potential party or to his or her attorney for the purpose of negotiation or discussion on such matters as settlement of the case or matter, or informal discovery proceedings.

D. To the news media and the public pursuant to 28 CFR 50.2 unless it is determined that release of the specific information in the context of a particular case would constitute an unwarranted invasion of personal privacy.

E. To a Member of Congress, or staff acting upon the Member's behalf, when the Member or staff requests the information on behalf of and at the request of the individual who is the subject of the record.

F. To General Services Administration and National Archives and Records Administration in records management inspections conducted under the authority of 44 U.S.C. 2904 and 2906.

G. To an obligor who has posted a bond with the INS for the subject. INS may provide only such information, as either (1) may aid the obligor in locating the subject to insure his or her presence when required by INS or (2) assist the obligor in evaluating the propriety of the following actions by INS: breach of bond--i.e., notice to the obligor that the subject of the bond has failed to appear which would render the full amount of the bond due and payable.

H. To the appropriate agency/organization/task force, regardless of whether it is Federal, State, local, foreign, or tribal, charged with the enforcement (e.g., investigation and prosecution) of a law (criminal or civil), regulation, or treaty, of any record contained in this system of records which indicates either on its face, or in conjunction with other information, a violation or potential violation of that law, regulation, or treaty.

I. To contractors, grantees, experts, consultants, students, and others performing or working on a contract, service, grant, cooperative agreement, or other assignment for the Federal Government, when necessary to accomplish an agency function related to this system of records.

J. Pursuant to subsection (b)(3) of the Privacy Act, the Department of Justice may disclose relevant and necessary information to a former employee of the Department for purposes of: responding to an official inquiry by a federal, state, or local government entity or professional licensing authority, in accordance with applicable Department regulations; or facilitating communications with a former employee that may be necessary for personnel-related or other official purposes where the Department requires information and/or consultation assistance from the former employee regarding a matter within that person's former area of responsibility.

**POLICIES AND PRACTICES FOR STORING, RETRIEVING, ACCESSING, RETAINING, AND DISPOSING OF RECORDS IN THE SYSTEM:**

**STORAGE**: Information is stored on magnetic disks and tape.

**RETRIEVABILITY**: Records may be retrieved by: the Alien File Number (A-Number) in some instances; the name of the individuals covered by the system; and by application/petition receipt number.

**SAFEGUARDS**: Most INS offices are located in buildings under security guard, and access to premises is by official identification. Offices are locked during non-duty hours. Access to this system is obtained through remote terminals that require the use of restricted passwords and a user ID.

**RETENTION AND DISPOSAL**: The following INS proposal for retention and disposal is pending approval by NARA. Information located on the LAN database will be archived in accordance with the archiving criteria for each different INS form downloaded into the system, i.e., one to three years after date of last completed action to a repository where it will remain 15 years before destruction. Archived reports are maintained at INS Service Centers for 15 years and then are destroyed. The re-engineered client/server data will be deleted 15 years after INS has completed the final action on the benefit request.

**SYSTEM MANAGER(S) AND ADDRESS**: Deputy Executive Associate Commissioner, Office of Field Operations, Immigration Services Division, 435 I Street NW, Room 7246, Washington, DC 20536.

**NOTIFICATION PROCEDURES**: Inquiries should be addressed to the system manager.

**RECORDS ACCESS PROCEDURE**: Requests for access to records in this system must be in writing. Such requests may be submitted by mail or in person. If a request for access is made by mail, the envelope and letter shall be clearly marked Privacy Access Request. The requester should provide his or her full name, date and place of birth, verification of identity in accordance with 8 CFR 103.21(b), and any other identifying information that may be of assistance in locating the record. Requests to contest or amend information contained in the system should be made to the system manager or the FOIA/PA officer at any INS office. The requester should also provide a return address for transmitting the records to be released.

**CONTESTING RECORDS PROCEDURE**: Requests to contest or amend information contained in the system should be made to the System Manager or the FOIA/PA officer at any INS office. State clearly and concisely the information being contested, the reason for contesting it, and the proposed amendment thereof. Clearly mark the envelope, ``Privacy Act Amendment Request.'' The record must be identified in the same manner as described for making a request for access.

**RECORD SOURCE CATEGORIES**: Information contained in this system of records is obtained from the individuals covered by the system.

**SYSTEM EXEMPTED FROM CERTAIN PROVISIONS OF THE ACT**: None.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SAMIR HUSSAIN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | ) | Civil Action No. 07-1633 (PLF) |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Plaintiff's Rule 56(F) Motion to Stay Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery, and Defendant's opposition thereto, it is hereby:

ORDERED that Plaintiff's Motion is DENIED, and it is further

ORDERED that Plaintiff shall have 14 days from the date of this Order in which to file any opposition to Defendant's pending Motion for Summary Judgment.

SIGNED:

Date

PAUL L. FRIEDMAN
United States District Judge