# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                         )
**SAMIR HUSSAIN,**                       )
                                         )
                        **Plaintiff,**   )
                                         )
            **v.**                       )    **Civil Action No. 07-1633 (PLF)**
                                         )
**UNITED STATES DEPARTMENT OF**          )
**HOMELAND SECURITY,**                   )
                                         )
                        **Defendant.**   )
_____)

## REPLY IN SUPPORT OF PLAINTIFF'S RULE 56(F) MOTION TO STAY DISPOSITION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PENDING LEAVE TO SEEK DISCOVERY

Plaintiff Samir Hussain ("Plaintiff" or "Mr. Hussain"), by and through counsel, hereby submits this Reply in Support of Plaintiff's Rule 56(f) Motion to Stay Disposition of Defendant's Motion for Summary Judgment Pending Leave to Seek Discovery ("Motion"), in response to Defendant United States Department of Homeland Security's ("Defendant") Memorandum of Points and Authorities in Opposition to Plaintiff's Rule 56(f) Motion ("Opposition").

## I.  INTRODUCTION

While discovery is not routine in FOIA cases, a plaintiff does not face the insurmountable hurdle that Defendant suggests.  (Opposition at 4-5.)  Indeed, another court in this District has explicitly recognized that it "is beyond question that discovery is appropriate and often necessary in a FOIA case" where the record demonstrates a factual dispute as to the adequacy of an agency's search.  Murphy v. F.B.I., 490 F. Supp. 1134, 1136, 1137 (D.D.C. 1980).  The undisputed record on the Motion demonstrates that substantial doubt exists regarding the adequacy of Defendant's search for the records that Mr. Hussain requested under FOIA.  He is

therefore entitled to the reasonable discovery that he seeks.

## II. ARGUMENT

### A. The Standard for Discovery in a FOIA Action is Whether Substantial Doubt Exists as to the Adequacy of a Search, not Whether Plaintiff has Enough Information to Respond to Defendant's Motion for Summary Judgment

The federal courts have acknowledged as a matter of common sense that an agency's professions of an adequate search must, in appropriate circumstances, be tested. For this reason, under Rule 56(f) of the Federal Rules of Civil Procedure, if substantial doubt exists as to the adequacy of an agency's search, a FOIA plaintiff is entitled to reasonable discovery to help the court more precisely examine the bonafides of the agency's professsions:

> Therefore, especially mindful of the disadvantage faced by the plaintiff in attempting to test the claims raised by the agency in a FOIA action, where the plaintiff has pointed to some countervailing factor calling into question the completeness of the agency's search or otherwise questioning the satisfactory nature of the agency's response, an issue of material fact, precluding the denial of discovery and award of summary judgment, may be recognized.

Shurberg Broadcasting of Hartford, Inc. v. FCC, 617 F. Supp. 825, 831 (D.D.C. 1985) (citations omitted); see also Exxon Corp. v. FTC, 466 F. Supp. 1088, 1094 (D.D.C. 1978), aff'd, 663 F.2d 120 (D.C. Cir. 1980) (holding that discovery is appropriate where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory); Citizens for Responsibility & Ethics in Washington v. DOJ, No. 05-2078, 2006 WL 1518964 *3 (D.D.C. June 1, 2006) (holding that discovery may be granted if a plaintiff has made a sufficient showing of the agency acting in bad faith, raised a sufficient question of an agency's good faith, or when a factual dispute exists and a plaintiff questions the affidavits submitted by the agency).

If the adequacy of an agency's search is challenged, it is *the agency's* burden to demonstrate beyond material doubt that the search was reasonable and calculated to uncover all relevant documents. Kronberg v. DOJ, 875 F. Supp. 861, 869 (D.D.C. 1995); see also Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency may meet this burden by submitting, in good faith, reasonably-detailed and non-conclusory affidavits. See Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Such affidavits may be controverted, however, *either* by contrary evidence in the record *or* by evidence of the agency's bad faith. Spannaus v. CIA, 841 F. Supp. 14, 16 (D.D.C. 1993); see also, Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Accordingly, Defendant's unprovoked argument that it did not act in bad faith (Opposition at 6) is irrelevant since a court need not find that an agency acted in bad faith in order to grant discovery. See Krikorian v. Dep't of State, 984 F.2d 461, 468 (D.C. Cir. 1993).

Under the standard for discovery in FOIA actions, as set forth above, the right to discovery clearly does not turn on whether a plaintiff has enough information with which to mount an opposition to a motion for summary judgment. Therefore, Defendant not only incorrectly argues that given Mr. Hussain's "lengthy argument" in his Memorandum, "Plaintiff has enough information with which to mount an opposition to Defendants' [sic] MSJ in this action" (Opposition at 2), Defendant also inaccurately suggests that the standard for discovery in a FOIA case is whether a plaintiff has enough information to respond to a defendant's dispositive motion (Id. at 2-3). On the contrary, as set forth above, Mr. Hussain is entitled to move for discovery prior to opposing Defendant's Motion for Summary Judgment if the record demonstrates that substantial doubt exists as to the adequacy of Defendant's search. In this case, Mr. Hussain has: (1) demonstrated that Defendant's affidavit is insufficient and conclusory; and

(2) presented evidence that unquestionably contradicts Defendant's representations regarding the adequacy of its search. (Memorandum at 10-15.) As a result, there exists substantial doubt regarding the adequacy of Defendant's search, and Mr. Hussain is entitled to discovery.

### B. Plaintiff Has Demonstrated That Substantial Doubt Exists Regarding The Adequacy Of Defendant's Search.

#### 1. Despite Defendant's Contrary Assertions, Defendant's Affidavits are Insufficiently Detailed and Conclusory.

In a transparent effort to overcome the deficiencies of the original declaration of Brian J. Welsh ("Original Welsh Declaration"),[1] Defendant submitted a supplemental declaration from Brian J. Welsh ("Supplemental Welsh Declaration").[2] The two Welsh Declarations together do not satisfy Defendant's burden under FOIA for several reasons.

*First*, the two Welsh Declarations fail to describe with reasonable detail the structure of the file system of the United States Citizenship and Immigration Services ("USCIS"), the component of Defendant that received the FOIA request, in order to enable the Court to satisfy itself that all appropriate files have been searched. See Church of Scientology v. I.R.S., 792 F.2d 146, 151 (D.C. Cir. 1986), aff'd, 484 U.S. 9 (1987) (holding that FOIA affidavits must recite "facts which enable the District Court to satisfy itself that all appropriate files have been searched, *i.e.*, that further searches would be unreasonably burdensome. Such an affidavit would presumably identify the searched files and describe at least generally the structure of the agency's file system which makes further search difficult.") The Supplemental Welsh Declaration acknowledges that, contrary to the suggestion in the Original Welsh Declaration, the Alien File/Central Index System (the "A-File Database") is not the sole file

---

[1] The Memorandum describes the insufficiently detailed and conclusory nature of the Original Welsh Declaration in detail. (Memorandum at 6-10.)

[2] Far from "allay[ing] any concerns that Defendant somehow failed to sufficiently describe its search for responsive records" (Opposition at 3 n.1), as reflected *infra*, the Supplemental Welsh Declaration raises more questions than it answers.

system maintained by USCIS.[3]  In fact, prodded by Mr. Hussain's explanation to this Court that USCIS maintains a more extensive filing network than Defendant initially revealed, Defendant now acknowledges that the A-File Database is actually *one (1) of nine (9)* "Major Immigration Information Systems" maintained by USCIS[4] (See Supplemental Welsh Decl. ¶¶ 16.b., 16.c., 16.d.).  Defendant's piecemeal representations about USCIS's file system structure, however, do not affirmatively represent to the Court that these are the *only* information systems in the custody of and maintained by USCIS.  Mr. Hussain, based on this record, is entitled to establish the other information systems that USCIS should have searched.

Second, the two Welsh Declarations conspicuously fail to discuss, as Mr. Hussain demonstrated in support of his Motion (Memorandum at 8-9), that it is current USCIS policy to process requests for classified national security information off-line and not in FIPS (USCIS's automated database for managing FOIA requests) and that prior to 2007, USCIS processed sensitive or high-profile records at its headquarters, rather than at its National Records Center ("NRC").  This information is particularly relevant to this case since FIPS seems to have been the only processing system employed by USCIS (see Supplemental Welsh Decl. ¶ 7), and NRC is the only USCIS facility from which records were pulled in response to Mr. Hussain's September 15, 2005 FOIA request (see Supplemental Welsh Decl. ¶ 15).   Given the circumstances surrounding Mr. Hussain's arrest and detention (see Memorandum at 9 n.10 and Exh. B thereto), the location of sensitive, high-profile, and/or classified records is crucial to Mr. Hussain's records request.  Yet Defendant nowhere addresses its off-line processing system or alternative processing location for sensitive, high-profile, and/or classified records, and therefore,

---

[3] The Original Welsh Declaration suggests that USCIS's *sole* system of records is the "A-File Database" and fails to mention any other USCIS file system (See Original Welsh Decl. ¶ 5) (". . . an electronic search for responsive files was conducted of the agency's system of records known as the *Alien File/Central Index System* . . . .").
[4] See http://www.uscis.gov/portal/site/uscis/menuitem.5af9bb95919f35e66f614176543f6d1a/?vgnextoid= fe30d0676988d010VgnVCM10000048f3d6a1RCRD&vgnextchannel=34139c7755cb9010VgnVCM10000045f3d6a 1RCRD.

has not demonstrated the adequacy of its search regarding this aspect of its recordkeeping.  This

inexplicable omission further gives rise to Mr. Hussain's need for limited discovery.

   *Third*, the Supplemental Welsh Declaration is conclusory in that Mr. Welsh

continues to insist that "Plaintiff's A-File contains the universe of documented transactions

between Plaintiff and U.S. immigration authorities in USCIS's custody."  (Supplemental Welsh

Decl. ¶ 10.)  However, as noted above, neither Defendant in its Opposition nor Mr. Welsh in the

Supplemental Welsh Declaration address the evidence indicating that Mr. Hussain's A-File does

not, in fact, contain the universe of documented transactions between himself and U.S.

immigration authorities in USCIS's custody.  Mr. Hussain has shown the Court that records he

requested are likely located at USCIS headquarters, rather than NRC, or available through an off-

line processing system, separate from FIPS.  (Memorandum at 8-9.)  Therefore, this Court should

not accept Defendant's "glib government assertion[s] of complete disclosure or retrieval," Perry

v. Block, 684 F.2d 121, 162 (D.C. Cir. 1982).

   Since the Welsh Declarations are insufficiently detailed and conclusory,

Defendant may not rely on them in order to demonstrate the adequacy of its FOIA search.  See

Safecard Servs., Inc., 926 F.2d at 1200.  Consequently, Defendant has failed to meet its burden

of establishing a reasonable search in this case.  See Oglesby, 920 F.2d at 68.

  **2.  Defendant's Affidavits are Directly Controverted by Evidence Showing that Defendant's Search was Unreasonable.**

   **a.  The Supplemental Welsh Declaration directly conflicts with the USCIS FOIA PA Handbook.**

   Mr. Welsh states in the Supplemental Welsh Declaration that FIPS "is

used to manage and organize *all* USCIS FOIA requests."  (Supplemental Welsh Decl. ¶ 7)

(emphasis added).  Mr. Welsh's assertion that FIPS is used to process all USCIS FOIA requests

is directly controverted by the USCIS FOIA PA Handbook (the "Handbook") (to which Mr. Welsh makes reference in the Supplemental Welsh Declaration). The Handbook states: "Requests for information containing classified National Security Information will be processed off-line and not in FIPS."[5] Since the Supplemental Welsh Declaration is controverted by evidence on the record, Defendant may not rely on it in order to demonstrate the adequacy of its FOIA search. See Spannaus, 841 F. Supp. at 16; Military Audit Project, 656 F.2d at 738.

> **b. Contrary to Defendant's assertion, USCIS was required to consult with or refer Mr. Hussain's request to other components of Defendant.**

If required by its regulations, an agency component must communicate with other agency components in order to adequately process a FOIA request, and if the agency component fails to do so, its search is inadequate. See Wilderness Soc. v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 20-21 (D.D.C. 2004) (Walton J.) (holding that the agency component conducted an inadequate search when it failed to forward the FOIA request to other components, as specifically required by the agency's regulations). Defendant declares, however, that USCIS was not required by its regulations to forward Mr. Hussain's FOIA request to other components of Defendant. In support of this proposition, Defendant cites its FOIA regulation 5.4(a), which states that "[i]n determining which records are responsive to a [FOIA] request, a component ordinarily will include only records in its possession as of the date the component begins its search for them." 6 C.F.R. § 5.4(a); (Opposition at 13-14).

Defendant fails to disclose, however, that pursuant to Defendant's FOIA regulation 5.4(d), if an agency component receives a request for records containing information relating "to an investigation of a possible violation of law [that] was originated by another

---

[5] http://www.uscis.gov/files/nativedocuments/FOIA_HANDBOOK.pdf, "United States Citizenship and Immigration Services (USCIS) Freedom of Information Act (FOIA) and Privacy Act Handbook," June 2007.

component or agency, the receiving component shall either refer the responsibility for responding to the request regarding that information to that other component or agency *or* consult with that other component or agency."  6 C.F.R. § 5.4(d) (emphasis added).

Mr. Hussain requested the following records from USCIS: "Mr. Hussain's 'Apprehension Record'; any Border Patrol Disposition; I-213 Record of Deportable Alien; and any other information possessed by DHS[6] regarding Hussain's detention on July 24, 2003." (Compl. ¶ 14 and Exh. A thereto; Supplemental Welsh Decl. ¶ 5).  The Apprehension Record, Border Patrol Disposition, and the I-213 Record of Deportable Alien are clearly records that contain information relating to an investigation of a possible violation of immigration laws since they relate directly to Mr. Hussain's arrest and detention by immigration officials.

Furthermore, the functions of the following two components of Defendant demonstrate that the arrest and detention records requested by Mr. Hussain must have originated from one of these components: (1) Customs and Border Protection ("CBP") has inspection functions and runs the U.S. Border Patrol[7] and "is responsible for protecting our nation's borders in order to prevent terrorists and terrorist weapons from entering the United States, while facilitating the flow of legitimate trade and travel";[8] and (2) Immigration and Customs Enforcement ("ICE") is responsible for immigration law enforcement, including detention and removal, intelligence, and investigations[9] and is "the largest investigative arm of the Department of Homeland Security, is responsible for identifying and shutting down vulnerabilities in the nation's border, economic, transportation and infrastructure security."[10]  Indeed, the "Border Patrol Disposition" requested by Mr. Hussain had to have originated from the U.S. Border Patrol.

---

[6] Notably, Mr. Hussain requested records possessed by Defendant, not simply USCIS.
[7] http://www.dhs.gov/xabout/history/editorial_0133.shtm.
[8] http://www.dhs.gov/xabout/structure/#1.
[9] http://www.dhs.gov/xabout/history/editorial_0133.shtm.
[10] http://www.dhs.gov/xabout/structure/#1.

Accordingly, since Mr. Hussain requested records from USCIS that contained information relating "to an investigation of a possible violation of law," including his Apprehension Record, Border Patrol Disposition, I-213 Record of Deportable Alien, and other detention records, which records originated from either CBP or ICE, by Defendant's regulations, USCIS was required to either refer the responsibility for responding to Mr. Hussain's request to CBP or ICE or consult with CBP or ICE.  See 6 C.F.R. § 5.4(d).  Since USCIS failed to do so, its search is inadequate. See Wilderness Soc., 344 F. Supp. at 20-21.

In addition, pursuant to Defendant's FOIA regulation 5.4(e), if an agency component receives a request for records containing information that has been classified, or may be appropriate for classification, by another component or agency under an executive order concerning the classification of records, "the receiving component shall refer the responsibility for responding to the request regarding that information to the component or agency that classified the information, or which should consider the information for classification, or which has the primary interest in it, as appropriate."  6 C.F.R. § 5.4(e).  Based on the type of documents that Mr. Hussain requested, i.e., border patrol records, arrest and detention records, and his I-213 Record of Deportable Alien, and the fact that Mr. Hussain's country of origin was listed as Iraq on his original FOIA request (Compl. Exh. A), it is highly likely that records responsive to Mr. Hussain's request contain classified information or information appropriate for classification by CBP or ICE, given these components' functions, as noted above.  Therefore, USCIS was required to refer the responsibility for responding to Mr. Hussain's request to CBP or ICE in accordance with Defendant's FOIA regulations.  See 6 C.F.R. § 5.4(e).  Since USCIS failed to do so, its search is inadequate.  See Wilderness Soc., 344 F. Supp. at 20-21.

**c. Defendant's failure to produce a key file known to exist further evidences its inadequate search.**

While the reasonableness of an agency's search does not turn solely on the search results (Opposition at 16), in this case, the search results omitted one of the key records, Mr. Hussain's detention file, which Defendant was required to create and maintain pursuant to its Detention Operations Manual[11] (See Memorandum at 13-14).  Mr. Hussain's detention file has never surfaced, and Defendant has never offered any explanation as to why it is missing and where it may be.

In addition, regardless of whether USCIS possesses Mr. Hussain's detention file, it was required to consult with ICE, the component that operates Krome Service Processing Center,[12] the detention facility where Mr. Hussain was detained (Memorandum at 1), on the whereabouts of the detention file since the detention file was generated by ICE (via the staff at Krome Service Processing Center)[13] and contains information relating to a law enforcement investigation (see Memorandum at 13, noting that an "Alien Booking Record" and "Classification Work Sheet" are required components of the detention file).  See 6 C.F.R. § 5.4(d).  Since the detention file also likely contains classified information or information appropriate for classification by ICE, USCIS was also required to refer the responsibility for responding to the detention file request to ICE in accordance with Defendant's FOIA regulations.  See 6 C.F.R. § 5.4(e).  Consequently, Defendant's failure to explain in any way the absence of Mr. Hussain's detention file, which is a key responsive record that is known to exist, is a "positive indication[] of overlooked materials," precluding summary judgment and justifying discovery in this case.  See Valencia-Lucena, 180 F.3d at 327 (concluding that defendant's

---

[11] See http://www.ice.gov/partners/dro/opsmanual/;
http://www.ice.gov/doclib/partners/dro/opsmanual/DetentFiles.pdf.
[12] See http://www.ice.gov/pi/dro/facilities.htm.
[13] See http://www.ice.gov/doclib/partners/dro/opsmanual/DetentFiles.pdf.

search was unreasonable because the record itself reveals "positive indications of overlooked materials" (internal citation omitted)).

### C.    Plaintiff is Seeking Only Limited Discovery.

In support of his discovery request, Mr. Hussain expressly seeks only limited discovery. (See Motion at 1 and 2, ¶ 3; Memorandum at 3 and 13-14.)    Defendant, however, mischaracterizes Mr. Hussain's discovery request as "nearly unbounded."  (Opposition at 5 n.3.) Furthermore, Defendant argues that Mr. Hussain has failed to "point out the specific facts to which he would gain access if permitted discovery," as required by Rule 56(f) of the Federal Rules of Civil Procedure.[14]    (Id. at 17.)  Notwithstanding that the case that Defendant cites in support of this Rule 56(f) requirement is not a FOIA case, another court in this District has previously granted limited discovery to a FOIA plaintiff who requested discovery on essentially the same three (3) subjects requested by Mr. Hussain.  See Bangoura v. U.S. Dep't of the Army, No. 05-0311, 2006 WL 3734164 at *2, *6 (D.D.C. Dec. 8, 2006) (finding that the plaintiff demonstrated the existence of an issue regarding the adequacy of the defendant's FOIA search and awarding limited discovery) (the "Bangoura Opinion"); see also Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery at 24, Bangoura v. U.S. Dep't of the Army, No. 05-0311, 2006 WL 3734164 (D.D.C. Dec. 8, 2006) (the "Bangoura Memorandum").[15]  The Bangoura

---

[14] Defendant misleadingly states that Rule 56(f) requires a movant to "point out the specific facts to which he would gain access if permitted discovery." (Opposition at 17, citing Sullivan v. Catholic Univ. of Am., 387 F. Supp. 2d 11, 13 (D.D.C. 2005) (Robertson, J.)).  However, the Sullivan Court does not, in fact, state that Rule 56(f) requires a movant to identify specific discoverable facts, only that the plaintiff in that case neither properly invoked Rule 56(f) nor pointed out those specific facts:  "Plaintiff also failed properly to invoke Rule 56(f), see King v. United States Dep't of Justice, 830 F.2d 210, 232 n. 157 (D.C.Cir.1987), or to point out the specific facts to which he would gain access if permitted further discovery, or to convincingly explain why he was unable to produce them at this time."  See 387 F. Supp. at 13 (emphasis added).

[15] In Bangoura, the plaintiff requested "limited discovery to investigate the scope of the agency search for responsive documents, the Army's investigation procedures, and information not previously released by the Army's investigation of its systems."  (Bangoura Memorandum at 24.)  Similarly, Mr. Hussain is requesting "limited

Opinion and the <u>Bangoura</u> Memorandum are attached hereto as Exhibit A.  Therefore, Mr. Hussain adequately describes the nature of the information sought to be obtained through discovery.  (<u>See</u> Memorandum at 15.)  Furthermore, the Court obviously has the discretion to set the terms and scope of Mr. Hussain's discovery.

### III. CONCLUSION

Because Mr. Hussain has demonstrated that substantial doubt exists as to the adequacy of Defendant's search, his Motion should be granted, and the Court should grant limited discovery in this case.

Dated: May 30, 2008                                    Respectfully Submitted,

                                                       /s/ Charles D. Tobin
                                                       Charles D. Tobin (Bar No. 455593)
                                                       Holland & Knight LLP
                                                       2099 Pennsylvania Ave. N.W.
                                                       Suite 100
                                                       Washington, D.C. 20006
                                                       (202) 955-3000 Phone
                                                       (202) 955-5564 Fax
                                                       *Counsel for Plaintiff*

---

discovery to investigate Defendant's standard FOIA search procedures, the scope of Defendant's search for responsive documents, and records not previously released by Defendant's FOIA search."  (Memorandum at 15.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May, 2008, a true and correct copy of the foregoing Memorandum of Points and Authorities in Response to Defendant's Opposition to Plaintiff's Rule 56(f) Motion was served on counsel for Defendant by the Electronic Case Filing system and by U.S. mail, postage prepaid, addressed as follows:

> Jeffrey A. Taylor, Esq.
> Rudolph Contreras, Esq.
> Brian P. Hudak, Esq.
> Civil Division, E-4806
> 555 4th Street, N.W.
> Washington, D.C. 20530
> (202) 514-7143
> (202) 514-8780 (fax)

/s/ Charles D. Tobin
Charles D. Tobin

# 5363716_v5

**EXHIBIT A**

Bangoura Opinion and Bangoura Memorandum

Westlaw.

Not Reported in F.Supp.2d                                                                                                 Page 1
Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110
**(Cite as: 2006 WL 3734164 (D.D.C.))**

United States District Court, District of Columbia.
Alseny Ben BANGOURA, Plaintiff,
v.
UNITED STATES DEPARTMENT OF THE
ARMY, Defendant.
**No. Civ.A. 05-0311.**

Dec. 8, 2006.

*MEMORANDUM OPINION AND ORDER*

ROBINSON, Magistrate J.

**\*1** Plaintiff's Motion to Stay Summary Judgement Under 56(f) Pending Leave to Seek Discovery ("Plaintiff's Motion") (Docket No. 26) is pending for determination by the undersigned. Upon consideration of the motion; the memoranda in support thereof and in opposition thereto; the proffers and arguments of counsel at the hearing on the motion, and the entire record herein, the Plaintiff's motion will be GRANTED.

## I. BACKGROUND

On October 28, 2004, the Plaintiff, accompanied by a friend, went to a State Department Credit Union Bank, located at Ft. McNair, to withdraw money from recently deposited State Department checks. Second Amended Complaint, ¶ 7. The bank teller was unable to withdraw the funds the Plaintiff requested, and then summoned the bank's branch manager. *Id.,* ¶ 8. The branch manager called the military police to report that two "Middle Eastern looking men" were acting suspiciously in the bank and a short time thereafter, two military police offers came to the bank and arrested the Plaintiff and his friend. *Id.,* ¶¶ 9, 11-13. The Plaintiff and his friend were escorted to the Ft. McNair Military Police Unit, where they were separated for questioning. *Id.,* ¶ 15. Plaintiff was taken to a back room where military police officers wrote on a form his answers to preliminary questions; during this session he was not allowed to make a phone call and was initially not allowed to use the restroom. *Id.,* ¶¶ 16-18.

The Plaintiff had to wait over an hour before two United States Army Criminal Investigation Division

(CID) investigators arrived to interrogate him. *Id.,* ¶ 19. The CID investigators were given the notes taken by the military police officers. Before interrogating the Plaintiff, the CID investigators informed him that he had committed a serious felony and asked if he wanted a lawyer. *Id.,* ¶¶ 20, 23. Plaintiff maintained that he was innocent and waived his right to remain silent and his right to counsel by signing a DA Form 3881 before the CID investigators continued their questioning. *Id.,* ¶¶ 24-27. After being questioned by the CID investigators, the military police officers returned and informed the Plaintiff that he was arrested in error and was free to leave. *Id.,* ¶¶ 28-29.

After being released, the Plaintiff went back to the bank to inquire about why he was arrested. He was informed by the bank teller that it was the bank's procedure, and that they had to call the military police. *Id.,* ¶¶ 30-31. After leaving the bank, the Plaintiff went back to the Military Police Unit to request information about his arrest and detention; his request was denied and he was escorted by the military police off the base. *Id.,* ¶¶ 33-37.

Plaintiff's counsel sent a FOIA request by first class mail to the military police unit of the Military District of Washington seeking the release of any and all materials in its possession regarding the Plaintiff's arrest. *Id.,* ¶ 41. Plaintiff's counsel did not receive a response to the November 15, 2004 request, and therefore sent another request on December 13, 2004. *Id.,* ¶¶ 41-42. The December 13, 2004 request was sent after the 20-day statutory time period in which the Military Police was required to respond to the FOIA request pursuant to 5 U.S.C. § 522(a)(6)(A)(I); in the request, counsel warned that legal action could be taken if the requests continued to be ignored. *Id.,* ¶¶ 42-47. After the Plaintiff had initiated litigation, the United States Army Crime Records Center ("USACRC") responded on August 18, 2005 with a five-page report containing redactions. *Id.,* ¶ 51. The USACRC listed privileges at the bottom, but it did not state which privilege supported a redaction. The document was not accompanied by a Vaughn index. *Id.,* ¶¶ 52-53.

**\*2** On September 15, 2005, counsel for the Plaintiff requested records from USACRC regarding the call

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110
**(Cite as: 2006 WL 3734164 (D.D.C.))**

made by the bank manager, copies of the alleged fraudulent checks, and information regarding the arrest of Plaintiff's friend. *Id.,* ¶ 54. The Plaintiff only received a copy of the checks with a letter stating that no other items were found. *Id.,* ¶ 56. On February 3, 2006, counsel for Plaintiff informed Defendant's counsel that he did not believe Defendant's FOIA responses had been adequate, which led to the production of a three-page document consisting of the notes from the Plaintiff's interrogation. *Id.,* ¶¶ 59, 62. On March 14, 2006, counsel for Plaintiff submitted another letter requesting more documentation, and the USACRC then located the "Daily Staff Journal or Duty Officers Log" and a CID "Agent's Activity Summary" and provided these documents with redactions and without a Vaughn index. *Id.,* ¶¶ 64-67.

## II. CONTENTIONS OF THE PARTIES

Plaintiff, in his Memorandum of Points and Authorities in Support of Plaintiff's Cross Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery ("Plaintiff's Mem.") contends that the Defendant has not adequately searched its records to provide the documents the Plaintiff has requested. Plaintiff's Mem. at 13. Plaintiff seeks leave to take discovery regarding the adequacy of Defendant's search so he can fully respond to Defendant's motion for summary judgment. *Id.* The Plaintiff realizes that discovery in a FOIA case is rare and not available if an agency has made a detailed declaration in good faith and there is no factual dispute remaining (citing *Pub. Citizen Health Research Group v. FDA,* 997 F.Supp. 56, 72).*Id.* However, the Plaintiff contends that the Defendant has not provided sufficient evidence to establish that it has conducted a "reasonably calculated" search. *Id.* at 15. It is also the Plaintiff's contention that regardless of the reasonableness of the search, it was conducted in bad faith, as evidenced by the discrepancies and errors that occurred during the search. *Id.* at 19-20. Therefore, the Plaintiff asks for limited discovery with respect to the adequacy of the search, including interrogatories and a deposition of a government agent pursuant to Federal Rule of Civil Procedure 30(b)(6). *Id.* at 23-24.

Defendant, in its Opposition to Plaintiff's Cross Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery ("Defendant's Opp."), contends that discovery is not appropriate in this

FOIA case. Defendant's Opp. at 11. In support of its contention, the Defendant relies on *Morley v. CIA,* No. 03-2545, 2006 U.S. Dist. LEXIS 6858, at *3-4 (D.D.C. February 17, 2006). *Id .* In *Morley,* this court held that "[i]n order to obtain discovery in accordance with Rule 56(f) of the Federal Rules of Civil Procedure, a FOIA plaintiff generally 'must establish how the specific discovery requested would create a genuine issue of material fact." ' *Id.Morley* also provides that a court may accept affidavits offered by an agency to support its motion for summary judgment, "without pre-summary judgment discovery," if the affidavits are made in good faith and have reasonable detail regarding how the search was conducted. *Id.* The Defendant submits that the Plaintiff's unsupported allegations of bad faith and his speculation that additional documents exist are not sufficient enough to justify discovery in this case. *Id.*

*3 Plaintiff, in Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery ("Plaintiff's Reply"), contends that discovery is appropriate and the Defendant has failed to provide sufficient evidence of its good faith. Plaintiff's Reply at 9. Plaintiff contends that he has provided evidence of the government's failures to comply with FOIA, however, the Defendant has not responded to the legitimacy of discovery in this case. *Id.* Plaintiff also contends that Defendant has not confirmed whether or not the documents the Plaintiff requested exist. *Id.*

## III. STATUTORY FRAMEWORK

The purpose of FOIA is to allow citizens to have greater access to the information under the control of administrative agencies, unless the information is exempted by the statute, so citizens will be informed about the government's activities. *See* 5 U.S.C. § 552. FOIA also requires an agency to publish information about its purpose, its organizational structure, and its rules and regulations in the Federal Register. Id. § 522(a)(1). The administrative agency has twenty days to respond to a FOIA request. 5 U.S.C. § 522(6)(A)(I). In "unusual circumstances" an agency may grant itself an extension of ten additional working days. *Id.* § 522(6)(B). If an agency does not respond as required by the statute, then the federal courts have jurisdiction to "enjoin the agency from withholding records." *Id.* § 522(a)(4)(B).

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110
**(Cite as: 2006 WL 3734164 (D.D.C.))**

### IV. STANDARD OF REVIEW
*Federal Rule of Civil Procedure 56(f)*

Federal Rule of Civil Procedure 56(f) provides:
[s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgement or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
The opposing party must state in an affidavit why it cannot present by affidavit reasons why the summary judgment motion should be denied. *Doe v. United States Dep't of Labor,* 2006 U.S. Dist. LEXIS 62924 (D.D.C.2006). The explanation in the affidavit must be made on personal knowledge and set forth facts as would be admissible in evidence and show that the affiant is competent to testify to the matters stated in the affidavit. *Id.* "The party that is seeking discovery has the burden of identifying the facts to be discovered that would create a triable issue and why the party cannot produce those facts in opposition to the motion." *Banks v. Veneman,* 402 F.Supp.2d 43, 47 (D.D.C.2005). In addition, the party has to demonstrate a reasonable basis for why he believes that discovery might reveal triable issues of fact. *Id.*

*FOIA*

"Discovery is to be sparingly granted in FOIA actions." *Pub. Citizen Health Research Group v. FDA,* 997 F.Supp. 56, 72 (D.D.C.1998). In this Circuit it has been established that the court may forego discovery and grant summary judgment based on affidavits that are relatively detailed, non-conclusory, and apparently submitted in good faith. *Shurberg Broadcasting of Hartford, Inc. v. Fed. Commc'n Comm'n,* 617 F.Supp. 825, 831 (D.C.C.1985). Such affidavits are to be considered equally trustworthy when they allege that all documents were produced and when they allege that the documents identified are exempt. *Id.* Discovery may be granted if a plaintiff has made a sufficient showing of the agency acting in bad faith, raised a sufficient question of an agency's good faith, or when a factual dispute exists and a plaintiff questions the affidavits submitted by the agency. *Citizens for Responsibility & Ethics in Wash. v. United States Dept. of Justice,* No. 05-2078, 2006 U.S. Dist. LEXIS

34857 (D.D.C. June 1, 2006). However, discovery is not to be granted for the purpose of hoping to fall "upon something that might impugn the affidavits" submitted by the government. *Id.*

### V. DISCUSSION
*4 The Plaintiff contends that the Defendant has failed to conduct an adequate search for records as required by FOIA and seeks leave to file for discovery. Plaintiff's Mem. at 13. Plaintiff claims that the Defendant failed to conduct a reasonably calculated search and that when the sufficiency of a search is challenged, the government has to demonstrate "beyond material doubt" that the search was reasonably calculated to uncover all relevant documents (citing *Kronberg v. Dep't of Justice,* 875 F.Supp. 861, 869 (D.D.C.1995)). *Id.* at 15. Plaintiff acknowledges that the government is allowed to rely on reasonably detailed and nonconclusory affidavits that are submitted in good faith to prove that it has conducted a reasonable search, but submits that the affidavits may be controverted by contrary evidence or by evidence of bad faith by the agency. *Id.* at 15-16. The Plaintiff argues that if an affidavit does not adequately establish the reasonableness of a search, where questions about the caliber of the search arise, then the court may require a more thorough account of the search procedures and grant discovery under Rule 56(f) (citing *Founding Church of Scientology Inc. v. Nat'l Sec. Agency,* 610 F.2d 824 (1979); *Shurberg Broadcasting,* 917 F.Supp. 825; *Exxon Corp v.Fed. Trade Comm'n,* 466 F.Supp. 1088 (1978)). *Id.* at 16.

Defendant, citing *Morley v. CIA,* No. 03-2545, 2006 U.S. Dist. LEXIS 6858, at *3-4 (D.D.C. February 17, 2006), contends that the Plaintiff has to establish how the discovery that he requested would create a genuine issue of material fact. Defendant's Opp. at 11. In citing *Morley,* Defendant also claims that the court may accept the affidavits of an agency in support of its motion for summary judgment without discovery if the affidavits are made in good faith and provide reasonable detail regarding how the search was conducted. *Id.* During his oral argument, counsel for the Defendant stated that the Defendant believed discovery was not necessary, and this action is just a "fishing expedition" by the Plaintiff.

The Defendant provided the declarations of Phillip J. McGuire and Jeff Wood as evidence of the adequacy

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110
**(Cite as: 2006 WL 3734164 (D.D.C.))**

of its FOIA searches. Mr. Wood states that he is Records Control Clerk for the Directorate of Emergency Services in Fort Myer, Virginia. Wood Declaration, ¶ 1. Mr. Wood states that USACRC contacted his office in February and March, 2006 to have him search for records regarding the Plaintiff; Mr. Wood stated that he searched his office's paper files from October, 2004 and entered the Plaintiff's name in the Centralized Operations Police Suite (COPS) database, but found no records relating to the Plaintiff. *Id.* ¶ 5. Plaintiff contends that this does not give a reasonably detailed account of the search methods that should have been used, and omits any indication of whether Defendant's search was in accordance with any standardized search procedures for similar FOIA requests. Plaintiff's Mem. at 17. Plaintiff's counsel made the same argument during oral arguments regarding paragraphs four and five of Wood's declaration. The Defendant, during oral arguments, contended that paragraphs four and five were sufficient and that there is no need for discovery.

**\*5** Mr. McGuire, in his declaration, stated that he is currently the director of USACRC, U.S. Army Criminal Investigation Command (CID) Fort Belvoir, Virginia, and that he supervises the Freedom of Information and Privacy Act Division at USACRC. McGuire Declaration, ¶¶ 1-3. He states that he is familiar with the procedures used by USACRC in responding to requests for information pursuant to FOIA; however, he does not say what those procedure are. *Id.,* ¶ 3. Mr. McGuire stated that he conducted four searches for documents relating to the Plaintiff, searching the same electronic reporting system (ACI2) twice, once in August, 2005 and again in March, 2006, but did not explain why the documents found in the March, 2006 search were not found in August, 2005. *Id.* ¶¶ 9-15. The Defendant did not provide the checks that were the cause of the Plaintiff's arrest until the second search, and on the third search, the Defendant was able to produce notes regarding the Plaintiff that were prepared by a special agent. *Id.* ¶¶ 9-15. Mr. McGuire does not explain why he did not search the COPS database in his initial search and when he did search the COPS database, he found the Duty Officer's Log which related to Plaintiff's arrest.

Plaintiff contends that the declaration submitted by Mr. McGuire is insufficient; conclusory; does not

reflect any systematic approach to the searches, and lacks specific information regarding Army search policies, procedures or protocol. Plaintiff's Mem. at 19. During oral arguments, Plaintiff's counsel stated that Mr. McGuire failed to describe the COPS database and did not mention why the Defendant failed to search for the 730s, notes taken from the bank tellers, which were mentioned in the Duty Officer's Log. The Duty Officer's Log also mentioned that the Plaintiff was told to not to return to the base, but there was no mention of a search by Mr. McGuire for a banning order.

The Defendant, during oral argument, stated that the declaration by Mr. McGuire was sufficient and meets the standards of FOIA, relying principally upon paragraphs 5, 8, 9 and 10-17. Defendant also claimed that Mr. Wood searched the COPS database, and therefore Mr. McGuire did not need to. Defendant stated that 730s are used to collect someone's contact information and since the Plaintiff was not charged, there was no need to save a 730. Defendant stated that the reason there was no search for a banning order is because one was not issued; if one is issued a copy is given to the person who is banned as part of the banning procedure. Defendant also claimed that the checks were not produced in the first search because those were not government documents, since the checks were not produced by the government.

A FOIA search, to be adequate, must be reasonably calculated to discover the requested documents. *Judicial Watch, Inc. v. Dep't of Defense,* No. 05-390, 2006 U.S. Dist. LEXIS 44003 at *5 (D.D.C. June 28, 2006). "To be adequate, a search need not uncover all relevant documents, so long as the agency can show that it searched all locations likely to contain documents responsive to the FOIA request." *Id.* The adequacy of the search is not determined by the results of the search, nor the quantity of the information released, but rather by the appropriateness of the methods used to conduct the search. *Iturralde v. Comptroller of the Currency,* 315 F.3d 311, 315 (D.C.Cir.2003).

**\*6** The undersigned finds that Plaintiff has demonstrated that there is an issue regarding the adequacy of the search conducted by the Defendant which warrants discovery. [FN1] The declarations submitted by the Defendant do not describe in reasonable detail the methods used in conducting its

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110
**(Cite as: 2006 WL 3734164 (D.D.C.))**

search, and fail to explain why more documents were found after the Plaintiff was told twice there were no more documents to be found. "[T]he discovery of a single document after the completion of a reasonable search does not render the search unreasonable, particularly when ... the rationale for the late discovery is understandable." *Judicial Watch, Inc.,* 2006 U .S. Dist. LEXIS 44003, at *10. However, the Defendant does not provide any rationale for the delay in finding the requested documents and does not explain why the search procedures were not adequate enough to find the documents during the initial search. Therefore, the undersigned finds that Plaintiff should be allowed to conduct limited discovery regarding the adequacy of Defendant's search.

> FN1. The undersigned makes no findings herein regarding the "bad faith" attributed by Plaintiff to Defendant.

### VI. CONCLUSION

Upon consideration of the motion, opposition, reply and the entire record herein, and for the reasons set forth herein, it is this 8th day of December, 2006,

ORDERED that Plaintiff's Motion to Stay Summary Judgment Under 56(f) Pending Leave to Seek Discovery (Docket No. 26) is GRANTED; and it is

FURTHER ORDERED that Plaintiff is allowed to serve up to ten interrogatories, limited in scope to the adequacy of Defendant's search; and it is

FURTHER ORDERED that Plaintiff is allowed to conduct one 30(b)(6) deposition, limited in scope to the adequacy of the search, and that the questions to be asked must be submitted to Defendant's counsel before the deposition; and it is

FURTHER ORDERED that the limited discovery for which this order provides shall be completed by no later than January 31, 2007; and it is

FURTHER ORDERED that Plaintiff's Motion for an Enlargement of Time Within Which to Respond to Summary Judgment (Docket No. 27) is GRANTED, and that a scheduling conference is scheduled for 9:30 a.m. on Wednesday, February 7, 2007; and it is

FURTHER ORDERED that in the interim, further consideration of Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Docket No. 23), and of Plaintiff's Cross Motion for Partial Summary Judgment (Docket No. 25), is STAYED.

Not Reported in F.Supp.2d, 2006 WL 3734164 (D.D.C.), 35 Media L. Rep. 1110

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MR. ALSENY BEN BANGOURA     §
    §
    §
    §
     Plaintiff     §
    §
v.     §    Civil Action No. 05-00311 (RBW)
    §
    §
    §
UNITED STATES     §
DEPARTMENT OF THE ARMY     §
    §
    §
    §
        Defendant.     §

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR PARTIAL
## SUMMARY JUDGMENT AND MOTION FOR LEAVE TO SEEK DISCOVERY

Mr. Alseny Ben Bangoura files this Memorandum in support of this Cross Motion for

Partial Summary Judgment and Motion for Leave to Seek Discovery under the Second Amended

Complaint, filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 1552.

# I. INTRODUCTION

Defendant is not entitled to dismissal under either Rule 12(b)(6) or 56 of the Federal

Rules of Civil Procedure. Plaintiff has adequately and fully stated a claim upon which relief can

be granted and questions of fact remain in this proceeding. Moreover, evidentiary questions are

outstanding solely due to the Defendant's non-responsive, incomplete, and inconsistent FOIA

submissions. FOIA is a statute of maximum disclosure and the facts of the case present a prime

example of agency "stonewalling" that Congress and the Courts frown upon. See Stone v. F.B.I.,

727 F.Supp.662, 666 (D.D.C.1990); U.S. Dep't of Justice v. Reporters Committee For Freedom

1

of the Press, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).  There is a strong public

interest in a full vetting and accounting of this case.[1]

As a freelance journalist, Mr. Bangoura has initiated this FOIA request to unveil the

shroud of government secrecy surrounding his arrest.  Indeed, Mr. Bangoura's action reflects

what has become apparent on the 40th anniversary of FOIA—that the law has not lived up to its

promise of transparency in government.[2]  This administrative secrecy is compounded by the fact

that open government is not stressed from the highest ranks of the administration.[3]

Accordingly, Mr. Bangoura respectfully requests the following.  For Count One of the

Amended Complaint, failure to respond to the FOIA request within the mandatory statutory time

period under 5 U.S.C. Section 552(a)(6)(A)(i), Plaintiff seeks partial Summary Judgment in his

favor.  For Count Two, the Defendant has failed to provide an adequate *Vaughn* index or a

suitable equivalent, the Plaintiff seeks partial Summary Judgment in its favor.  For Count Three,

the Defendant's unfounded assertion of privilege, questions of fact exist but the Plaintiff cannot

respond to this Count until he has a clear statement of the applicable privileges to the

---

[1] National Association of Home Builders v. Norton, 309 F.3d 26 (D.C.Cir.2002) ("The purpose
of the Freedom of Information Act . . . is to pierce the veil of administrative secrecy and open
agency action to the light of public scrutiny. . . .  FOIA reflects " 'a general philosophy of full
agency disclosure unless information is exempted under clearly delineated statutory language."
Id. at 31-32. (*internal citations omitted*)).
[2] Jimmy Carter. We Need Fewer Secrets. WASH. POST. (Jul. 3, 2006)  at A21 (According to a
recent government report it has been commonplace for some agencies to violate the FOIA
mandatory 20-day response period routinely.  President Carter found that median response times
may top 905 working days at the Department of Agriculture and 1,113 working days at the
Environmental Protection Agency.).
[3] John W. Dean. *Worse Than Watergate: The Secret Presidency of George W. Bush*, Time
Warner Book Group:  New York (2004) (arguing that the G.W. Bush White House has been the
most secretive administration since the Nixon presidency).

specifically-claimed exemptions.[4]  Plaintiff would able to respond substantively to Defendant's

assertions of privilege if he were provided with a *Vaughn* index and had further information on

Defendant's policies and procedures vis a vis privilege and exemption correlations.

For Count Four, the Defendant's failure to conduct an adequate search, the Plaintiff seeks

leave to file a Motion for Discovery.  While Plaintiff understands that discovery is generally not

favored in a FOIA case, the Defendant's multiple FOIA submission errors indicate something

more than sheer incompetence is at play in this case.   Mr. Bangoura has reason to believe bad

faith occurred on the part of the Defendant.  The cumulative number of egregious errors by the

Defendant, combined with the fact that Mr. Bangoura was detained merely for being "Middle

Eastern-looking," lead Mr. Bangoura to believe the Defendant engaged in racial profiling, then

evaded full disclosure under FOIA to cover its tracks.  See Plaintiff's Amended Complaint ¶ 11-

15, 43-69.  All that Mr. Bangoura  asks for is to understand the circumstances of his arrest and,

thus far, through typical FOIA procedures and resultant litigation he has been unable to do so.

Thus, Plaintiff seeks circumscribed discovery, limited to interrogatories and a deposition of a

government official pursuant to FRCP 30(b)(6) in order to respond to Count Four in an adequate

and substantive manner.

## II. BACKGROUND

Plaintiff strongly disputes the Defendant's characterization of the facts, and pursuant to

Local Rule 7(h), a separate concise statement detailing all genuine issues of fact accompanies

---

[4] Accordingly, the Plaintiff has filed a Motion for Extension of Time to Respond to Counts Three
and Four.  It is imperative that Mr. Bangoura knows the outcome of this motion prior to
submitting a full summary judgment response for these Counts.

this motion.[5]  As background for Plaintiff's legal argument, a brief statement of the standard of review and facts appear below.

On October 28, 2004, Mr. Bangoura, accompanied by Mr. John, went to the State Department Federal Credit Union to withdraw funds recently deposited from two State Department checks.  The teller could not withdraw the money and called the manager, Cindy Chamberlain for assistance.  Ms. Chamberlain, for reasons unknown to Mr. Bangoura, called the Fort McNair Military Police and reported that two "Middle Eastern-looking men" were at the bank acting suspiciously.  Shortly thereafter, two military police officers arrived at the bank, conferred with Ms. Chamberlain, and ultimately placed Messrs. Bangoura and John under arrest.

After being escorted to the United States' Army Fort McNair Military Police Unit ("MPU"), both Bangoura and John were separated and detained for questioning.  Mr. Bangoura was forbidden from making phone calls, was initially prohibited from using the restroom, and was detained over an hour simply waiting for investigators from the United States Army Criminal Investigation Division (CID) to arrive at the scene.  Mr. Bangoura was held in custody for several hours and to this date nothing is known regarding Mr. John's arrest.

During Army CID officer questioning, Mr. Bangoura was informed that he faced serious felony allegations.  The Army CID officers, recognizing that Mr. Bangoura was in custodial interrogation, Mirandized him and had him sign a waiver of his right to remain silent and obtain counsel.  The investigators then proceeded to interrogate Mr. Bangoura about his ethnic origin, the nature of his job and his employment with the Office of Broadcast Affairs at the Department of State.

---

[5] Since Plaintiff has only moved for Summary Judgment on Counts 1 and 2, Plaintiff reserves the right to add to his factual statement for Counts 3 and 4 after the applicable discovery period.

4

After several hours in custody, the officers informed Mr. Bangoura that he had been arrested in error and he was free to leave. Mr. Bangoura immediately sought information from both the State Department Federal Credit Union and from the Army MPU regarding the reasons for his arrest, detention and interrogation. His attempts proved fruitless. Subsequently, on February 6, 2006, the October 28, 2004 arrest of Mr. Bangoura by the Military Police at the State Department Credit Union at Ft. McNair, recorded on the National Crime Information Center database, was raised to impugn Mr. Bangoura's credibility by the Department of Homeland Security Immigration and Customs Enforcement in adversarial asylum proceedings conducted before the Executive Office of Immigration Review (EOIR- immigration court) in Baltimore, Maryland. Even when Mr. Bangoura explained that this was a false arrest and he was ultimately released from custody free of charges, the Department of Homeland Security trial attorney commented to the effect that unlike Mr. Bangoura, 99% of other asylum-seekers do not have arrest records to begin with. While Mr. Bangoura was ultimately accorded relief from immigration removal by EOIR, Mr. Bangoura's arrest obviously represents a permanent negative taint for his immigration record and carries a permanent stigma for employment purposes.

Mr. Stephen Hanlon, Mr. Bangoura's *pro bono* counsel, sent a FOIA request to the Military Police Unit of the Military District of Washington on November 15, 2004 for the release of "any and all records pertaining to the Military Police Unit ("MPU") arrest and detention of Mr. Alseny Ben Bangoura on October 28, 2004 at approximately 10:50 a.m. at the State Department Federal Credit Union in South West Washington, D.C. including, but not limited to, a copy of his arrest record and any statements or documents he subsequently signed before MPU investigators while in MPU custody." See Ex. A (emphasis ours).

5

The Army's Military Police did not respond, nor did they acknowledge receipt of the FOIA request. Federal statute requires the government to respond to FOIA requests within 20 days. See 5 U.S.C. § 552(a)(6)(A)(i). Despite this requirement, the Military Police permitted the 20-day time limit for response to lapse and Mr. Hanlon sent a second request on December 13, 2004. See Ex. B. Hanlon indicated that legal action would follow if the MPU continued to ignore the FOIA request. The Military Police again failed to send any response within 20 days after receipt of the FOIA request. Later, the Military Police acknowledged receipt of both requests and its failure to respond. See Ex. C at 2.

As a result Mr. Bangoura filed suit, eight months after the statutory response period. On August 18, 2005, the United States Army Crime Records Center ("USACRC"), a part of the Army CID, finally produced a five-page report at the direction of Assistant United States Attorney ("AUSA") Kevin Robitaille. See Ex. D. This scant report contained redactions accompanied by indecipherable claims of privilege. Moreover, a *Vaughn* index did not accompany the document and Mr. Bangoura could not determine which claims of privilege pertained to each specific redaction. Notably, this and any subsequent production of documents was mediated through Defendant's counsel, AUSA Robitaille, and prompted through the course of litigation.

Mr. Bangoura's counsel sent a third request for information on September 15, 2005, specifically seeking records of the call from the bank to the Army's MPU and copies of the allegedly fraudulent checks. See Ex. E. The USACRC released copies of the checks to Mr. Bangoura on October 18, 2005, stating: "[T]he only additional items that were found [in the Department of the Army's records] were the two checks mentioned in your letter." See Ex. F. Counsel Larry Liebesman expressed concern about the adequacy of the USACRC's response to

6

the FOIA request in a letter to Mr. Kevin Robitaille on February 3, 2006. See Ex. G.

Subsequently, on February 23, 2006 a representative from the Department of Justice released

further documentation. See Ex. H. Like the first response, these documents contained many

redactions but failed to indicate what exemption applied to each piece of redacted evidence.

Unsatisfied with the haphazard response, Mr. Liebesman sent another letter requesting further

documentation from the USACRC on March 14, 2006. See Ex. I. The USACRC then produced

a Duty Officer's Log and an Agent's Activity Summary which were both relevant to the arrest

and investigation. See Ex. J. For a third time, Mr. Bangoura received incomprehensible

redactions in the government response, containing no *Vaughn* index.

Adding further complications to this case, the most recent government response indicates

the likely existence of other relevant documents, including interviews with bank tellers,

documentation of verbal threats, and a potential base banning order. Id. One year after the

mandatory statutory period, Mr. Bangoura eagerly awaits relevant discoverable documents which

would have been discovered in the course of a complete and competent search.

## III.  POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Count One – Failure to Respond to FOIA Request Within Statutory Time Period

As a matter of law, Defendant failed to respond during the mandatory 20-day statutory

time period for FOIA requests. See 5 U.S.C. § 552(a)(6)(A)(i). Mr. Stephen Hanlon sent the

first FOIA request to the Army's Military Police Unit of the Military District of Washington on

November 15, 2004. The Defendant did not respond, reply, or even acknowledge the request

until August 18, 2005. This response occurred well over six months after Mr. Hanlon submitted

Mr. Bangoura's *second* FOIA request and a full six months after Mr. Bangoura filed his

complaint. Defendant admits that Mr. Bangoura received no response to his FOIA request. Def. Statement of Material Facts Which Are Not in Genuine Dispute, ¶ 4. Mr. Bangoura waited well beyond the 20-day statutory period and seeks relief from the government's clear statutory violation.

Plaintiff requests declaratory relief in the form of an order stating that Defendant failed to respond, reply, or even acknowledge the FOIA request until over six months after the initial FOIA request and six months after Mr. Bangoura filed suit. Plaintiff requests this declaratory relief to establish, by Court Order, that the Defendant acted in flagrant disregard of the 20-day time period for response set forth in 5 U.S.C. § 552(a)(6)(A)(i). Declaratory relief is available per Swan View Coalition v. Dep't of Agriculture, 39 F.Supp.2d 42, 46 (D.D.C.1999). The Court has acknowledged its authority to grant declaratory relief to a plaintiff in the context of summary judgment in FOIA litigation, even when the specific challenge to the agency's action subsequently becomes moot. See Swan View, at 46; see also United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); Houston v. Dep't of Housing and Urban Dev., 24 F.3d 1421, 1429 (D.C.Cir.1994).

The Defendant's unjustifiably prolonged delay and the protracted nature of its response to the FOIA request merit declaratory relief for the Plaintiff. In determining whether declaratory relief is appropriate, this Court must consider the Defendant's conduct both before and after the illegal action took place. See Swan View, at 46; see also W.T. Grant Co., at 633; Payne Enterprises, Inc. v. United States, 837 F.2d 486, 491-92 (D.C.Cir.1988). It must also consider the nature of the violation and Defendant's expressions of future compliance. Swan View, at 46; see also W.T. Grant Co., at 632-33; Payne Enterprises, at 491-2. "Taking all these considerations as a whole, a court will generally grant declaratory relief if there exists some

8

*cognizable danger of recurrent violation.*" Swan View, at 46 (citing W.T. Grant Co., at 633) (emphasis added).

Defendant's dereliction was severe despite that they ultimately did produce some documentation in response to the FOIA request. Defendant's considerable and unjustifiable delay and the inadequacy of their subsequent responses, which occurred after the time violation, regrettably indicate that it would reasonably be expected to engage in similar behavior in the future vis a vis Ben Bangoura and any other prospective, similarly situated FOIA requester. The Defendant failed to respond in any way both to the initial and subsequent FOIA request and were unreasonably delinquent even after Plaintiff filed suit, taking a full six months after the filing to produce any documents. Its dereliction in response to the FOIA request is further exacerbated by the fact that the Provost Marshall *received* the FOIA request and *knowingly* failed to meet his statutory duty per 5 U.S.C. § 552(a)(6)(A)(i) to notify the Plaintiff that it did not have responsive records. See Meet and Confer Under 16.3 at 2. Adding to this sheer neglect of duty, the Provost Marshall also failed to meet his duty to forward the request to the appropriate custodian until after the Plaintiff filed suit. See "Department of the Army Freedom of Information Act Program," AR 25-55 §1—508, (1997).

The Defendant offers no plausible explanation for its failure to respond to the FOIA request for well over six months. Its failure to respond was not an aberration and its subsequent insufficient responses, particularly its most recent response – pointing to the existence of other documents, indicate Defendant's indifference to FOIA. As a result, the Plaintiff respectfully requests that the Court grant an order declaring that Defendant failed to respond Mr. Bangoura's FOIA request within the statutory time period.

**B. Defendant Failed to Provide a *Vaughn* Index or *Vaughn* Equivalent**

The government has failed to submit the requisite *Vaughn* index for the redactions to justify its claims of privilege. As a result, the Plaintiff seeks partial Summary Judgment on Count Two of the Amended Complaint. Additionally, the Plaintiff seeks an Order requiring the Defendant to produce a *Vaughn* index. Such an Order would enable Mr. Bangoura to respond fully to Defendant's Motion for Summary Judgment challenging Count Three of the Amended Complaint.

According to <u>Vaughn v. Rosen</u>, it is standard procedure for an agency to produce a *Vaughn* index prior to a challenge in district court to the appropriateness of the government's redactions. <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977 (1974). The *Vaughn* index requirement is imposed in connection with the defendant's filing of a motion for summary judgment in a civil action. <u>Schwarz v. Dep't of Treasury</u>, 131 F.Supp.2d 142, 147 (D.D.C.2000) (citing <u>Weisberg v. United States Dep't of Justice</u>, 745 F.2d 1476, 1485 (D.C.Cir.1984)). In the *Vaughn* index, the government agency is required to define its categories functionally and conduct a document-by-document review, assigning the proper exemption categories and explaining how each segment of redacted text falls under the claimed exemption. <u>Bevis v. Dep't of State</u>, 801 F.2d 1386, 1389 (D.C.Cir.1986). It was developed to assure that one's right to information through FOIA is not "submerged beneath governmental obfuscation and mischaracterization." <u>Judicial Watch, Inc. v. Dep't of Army</u>, 402 F.Supp. 2d 241 (D.D.C.2005) (citing <u>Vaughn</u> at 826). In this case, Defendant has filed a Motion for Summary Judgment on two separate occasions and neglected to include a *Vaughn* index or suitable equivalent with either filing.

The failure to provide a *Vaughn* index or valid index-equivalent indicates that Defendant failed to conduct a thoughtful and systematic tailoring of each redaction to each exemption.

Failure to present a formalized *Vaughn* index is not in itself actionable and an agency may satisfy the burden of providing a *Vaughn* index-equivalent by other means, including submitting the documents in question for an *in camera* review or by providing a detailed affidavit or declaration.  Voinche v. FBI, 412 F.Supp.2d 60, 65 (D.D.C.2006); see also Gallant v. NLRB, 26 F.3d 168, 172 (D.C.Cir.1994).   The Court is to consider the function rather than the form of the index or index-equivalent.  Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C.Cir.1987) (citing National Treasury Employees Union v. U.S. Customs Service, 802 F.2d 525, 527 (D.C.Cir.1986); Lykins v. Dep't of Justice, 725 F.2d 1455, 1463 (D.C.Cir.1984); Goland v. CIA, 607 F.2d 339, 351-52 (D.C.Cir.1978), cert. denied, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980)).  However, the Defendant's submissions are severely lacking in either form or function.

Defendant erroneously asserts that the McGuire Declaration serves the functions of a *Vaughn* index in this case.  A *Vaughn* index or its equivalent must permit the court to conduct "a meaningful *de novo* review of the agency's claim of an exemption."  Voinche, at 65; Gallant, at 172-73; see also Delany, Miadail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C.Cir.1987). That is, it must enable the court and the Plaintiff to determine the nature of the document and the basis for withholding.  Williams v. FBI, 1991 WL 163757 (D.D.C.1991).  Cases under Vaughn require the agency to "itemize *each* document and explain the connection between the information withheld and the exemption claimed."  Oglesby v. Dep't of Army, 79 F.3d 1172 (D.C.Cir.1996) (emphasis in original) (finding the Army's proffered *Vaughn* index equivalent inadequate).  Each redaction must be correlated specifically and unambiguously to the corresponding exemption.  Keys v. Dep't of Justice, 830 F.2d 337 at 349-50 (D.C.Cir.1987).

11

The McGuire Declaration fails to treat the abundant and ambiguous redactions in a systematic manner. Instead, Mr. McGuire's "Conclusion" section explains in only two vague sentences that the application of exemptions b(2), b(6), and b(7)(c) apply to approximately 100 redactions on ten pages of documents provided. His conclusion deals summarily with the redactions, rather than explaining how the deletions correlate to each particular corresponding exemption. See id.; see also Founding Church of Scientology, Inc. v. Bell, 603 F.2d 945, 948-49 (D.C.Cir.1979)(per curiam). The statement, "all other redactions…were of individual names and/or identifying information justified by Exemptions b(6) and b(7)(c)" leaves Mr. Bangoura guessing as to the applicable exemption. Mr. McGuire's indistinct and perfunctory explanation not only leaves Mr. Bangoura in the dark, but also hinders the Court in its review of the exemptions. As per Ray v. Turner, 587 F.2d 1187, 1197 (D.C.Cir.1978): "The reviewing court should not be required to *speculate* on the precise relationship between each exemption claim and the contents of the specific document" (emphasis added).

The failure of the government to provide clear and unambiguous exemptions fails both the letter and spirit of Vaughn. The *Vaughn* index requirement enables both sides to reconcile the government claims of privilege efficiently. In this case, Mr. Bangoura is paralyzed and cannot determine whether he has a lawful right to otherwise public information. To preserve the public interest in unambiguous disclosure of privilege as secured by Vaughn v. Rosen, the Plaintiff respectfully requests that the Cross Motion for Partial Summary Judgment on Count Two be granted.

## IV.   POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO SEEK DISCOVERY

### A. Defendant's Repeated Failures to Conduct an Adequate Search Indicate Bad Faith Under the Circumstances of this Case

Genuine issues of material fact remain regarding the adequacy of the Defendant's search, which is the subject of Count Four of Plaintiff's Amended Complaint. Despite Mr. Bangoura's demonstrated diligence, each of Defendant's document productions has left unresolved questions and indications that further documentation exists in this case. As a result, Mr. Bangoura respectfully requests Leave to File for Discovery in order to respond fully to the Defendant's Motion for Summary Judgment.

Mr. Bangoura recognizes that discovery in a FOIA case is rare and not available where an agency submits reasonably detailed declarations in good faith and where the court is satisfied that no factual dispute remains. Pub. Citizen Health Research Group v. FDA, 997 F.Supp. 56, 72 (D.D.C.1998). An exception to this general rule permits discovery when the Plaintiff makes a sufficient showing that the agency acted in bad faith. See Carney v. United States Dep't of Justice, 19 F.3d 807, 812 (2d Cir.1994). The facts justify discovery in this case.

Mr. Bangoura is still waiting for relevant, non-privileged documents, which would have been produced if the government agent had merely *reviewed* the documents he produced to Mr. Bangoura. Defendant's failure to review documents is best exemplified in two submissions, the Agent's Investigation Report and the Duty Officer's Log. The Agent's Investigation Report, contained in the first submission of documents, indicates on its face that the MPU had copies of the checks that were at issue in Ben's arrest. Yet the checks were not searched for or produced until two months later, only after Plaintiff's counsel specifically requested them to the Department of Justice. The Duty Officer's Log, contained in Defendant's fourth submission of

documents indicates on its face that further documentation exists that has not been searched for

or produced as required by FOIA. In particular, it indicates interviews were taken from the

tellers, a base banning order was issued against Mr. Bangoura, and officers accused Mr.

Bangoura of making verbal threats. Yet none of these documents were produced. These

multiple errors are not merely serendipitous, especially for a man singled out for his "Middle

Eastern-looking" appearance shortly before the arrest.

     In moving for summary judgment in FOIA litigation, the moving agency must

demonstrate that it has conducted a search *reasonably calculated to uncover all relevant*

*documents.* Code v. FBI, 1997 WL 150070 (D.D.C.1997); Weisberg v. Dep't of Justice, 745

F.2d 1476, 1485 (D.C.Cir.1984) (emphasis added). While the agency is not required to search

every record system, nor to do a perfect search per Truitt v. Dep't of State, 897 F.2d 540, 542-45

(D.C.Cir.1990); and Meeropol v. Meese, 790 F.2d 942, 956 (D.C.Cir.1986), the agency will be

held to a standard of reasonableness, accounting for the prevailing circumstances. Code, at 2;

Truitt, at 542; Kronberg v. Dep't of Justice, 875 F.Supp. 861, 869 (D.D.C.1995); Campbell v.

Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998).

     To justify discovery once the defendant agency has satisfied its burden of meeting the

standard for summary judgment, the plaintiff must point to some countervailing factor to call

into question the completeness of the agency's search, or make a showing of bad faith on the part

of the agency sufficient to impugn the agency's affidavits or declarations, or provide some

tangible evidence that an exemption claimed by the agency should not apply or summary

judgment is otherwise inappropriate. See Goland v. CIA, 607 F.2d 339, 355 (D.C.Cir.1978), cert

denied, 445 U.S. 927 (1980); see also Founding Church of Scientology of Washington, D.C., Inc.

v. National Security Agency, 610 F.2d 824, 833-38 (D.C.Cir.1979) (finding agency's response to

FOIA request unsatisfactory, raising an issue of material fact and precluding denial of

discovery); Shurberg Broadcasting of Hartford, Inc. v. FCC, 617 F.Supp.825, 831 (D.D.C.1985);

Exxon Corp. v. Federal Trade Com'n, 466 F.Supp. 1088, 1094 (D.D.C.1978), aff'd, 663 F.2d 120

(D.C.Cir.1980). Whether the agency acted in bad faith is determined through an inquiry as to

whether the search was *reasonably calculated to produce relevant documents*. Weisberg v. Dep't

of Justice, 705 F.2d 1344, 1351 (D.C.Cir.1983).

    It will be shown that Defendant's bare assertions of a reasonable search have no support

on the record. Instead, the evidence affirms the Defendant's response was permeated by

evasiveness and dereliction of duty.

### 1. Defendant Failed to Establish a "Reasonably Calculated" Search

    The affidavits submitted with Defendant's Motion for Summary Judgment fail to

establish the threshold standard – a reasonable search. If the sufficiency of a search is

challenged, the government must demonstrate beyond material doubt that the search was

reasonable and calculated to uncover all relevant documents. Kronberg v. Dep't of Justice, 875

F.Supp. 861, 869 (D.D.C.1995). See also, Truitt v. Dep't of State, 897 F.2d 540, 542

(D.C.Cir.1990); Weisberg v. Dep't of Justice, 705 F.2d at 1351 (D.C.Cir.1983); Campbell v.

Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998); Oglesby v. U.S. Dep't of Army, 79 F.3d 1172

(D.C.Cir.1996).

    In demonstrating the adequacy and reasonableness of a search, the government agency is

permitted to rely upon reasonably detailed and nonconclusory affidavits, submitted in good faith.

Meeropol v. Meese, 790 F.2d 942, 956 (D.C.Cir.1986). In a FOIA case in general, government

affidavits are entitled to a presumption of good faith. See Carney v. Dep't of Justice, 19 F.3d

809, 812 (2d Cir.1994); see also Kay v. FCC, 976 F.Supp. 23, 33 (D.D.C. 1997). The affidavits

15

must describe the documents and the justifications for nondisclosure in reasonably specific detail and demonstrate that the information withheld logically falls within the claimed exemption. Oglesby at 1185 (finding the Army had not provided sufficient information to justify a finding that their searches were reasonably calculated to uncover all responsive documents); see also, Military Audit Project v. Casey, 656 F.2d 724, 738, 751 (D.C.Cir.1981); Goland v. CIA, 607 F.2d 339, 352 (D.D.C.1978).

Affidavits may be controverted either by contrary evidence in the record or by evidence of agency bad faith. Spannaus v. CIA, 841 F.Supp. 14, 16 (D.D.C.1993); see also, Military Audit Project at 738. At bottom the sufficiency of the identification or the retrieval procedure is at issue. Weisberg v. Dep't of Justice, 627 F.2d 365, 370 (D.C.Cir.1980). If an affidavit is inadequate to establish the reasonableness of the search, such that substantial doubts about the caliber of the search arise, the court may require a more exhaustive account of its search procedures and grant discovery under Rule 56(f). Founding Church of Scientology of Washington, D.C., Inc, 610 F.2d 824; see also, Shurberg Broadcasting, 917 F.Supp. 825; Exxon Corp., 466 F. Sup. 1088.

In support of its Motion for Summary Judgment, the government has submitted declarations from Phillip J. McGuire ("McGuire Decl.") and Jeffrey Wood ("Wood Decl.") which, taken together, are insufficient, conclusory, do not reflect any systematic approach to the searches, and lack specific information enabling reasonable challenges to Army search policies, procedures, or protocol. Neither affidavit provides a summary of the established protocol at the USACRC or Fort Myers once a FOIA request is received. Instead both explain in a brief and unsubstantiated manner the names of the databases they searched and the types of information kept in these databases. As a result, Mr. Bangoura understands what databases Defendant

searched, but Mr. Bangoura has no basis for determining whether Defendant searched under the correct databases in a timely fashion as it would in any similar incident.

Mr. Wood concludes that his search of all of the paper files generated at Fort McNair, kept at Fort Myers where he is the Records Control Clerk for the Directorate of Emergency Services (DES), resulted in no records pertaining to Mr. Bangoura's arrest. He reports he searched in February and March of 2006 for records related to Mr. Bangoura's apprehension and that he searched "paper copy files for each day in October 2004…[and] also searched electronically in COPS [Centralized Operations Police Suite database] by entering the name Bangoura and found no records." Wood Decl. ¶5.

FOIA does not require courts to accept "glib government assertions of complete disclosure or retrieval." Perry v. Block, 684 F.2d 121, 162 (D.C.Cir.1982). Mr. Wood's two sentence description of his search through the records at Fort Meyers is curt and conclusory and fails to detail the depth of the search and procedures for quality control. Mr. Wood makes the simple statement that he typed in "Bangoura" to search the COPS database and shuffled through paper records for the month of October. This is far from a reasonably detailed account of the search methods and procedures that should be used and omits any indication as to whether Defendants' search was in accordance with standardized search procedures used in similar FOIA requests for felony arrest records. In our interrogatories we have identified the following unanswered questions:

- What is standard protocol for felony arrest searches?
- Is there staff training for FOIA procedures? If so, has Phillip McGuire, Jeffrey Wood or the MPU Provost Marshal received any training?
- How can the same database be searched twice with widely differing results?
- Is there a quality control mechanism when search procedures fail to produce or product contradictory documents?

17

Mr. McGuire's affidavit also belies any systematic approach to document location. Mr. McGuire explains the extensive record-keeping system within the USACRC but neglects to explain any prescribed methodology for searching these databases in response to a FOIA request. Instead, Mr. McGuire's explanation of each of his individual searches reflects searching of the least common denominator.

The litany of McGuire search errors are as follows. He failed to search for the checks— the purported reason for Mr. Bangoura's arrest. He did not confer with the supervisory regional office responsible for the CID field office that conducted the investigation. Additionally, Mr. McGuire admits that it took until February 2006, for him to search the files of the special agents who interviewed Mr. Bangoura. See McGuire Decl. ¶12. Mr. McGuire explains that these agent notes regarding Mr. Bangoura's interview and release were not in the possession of any military police unit or office, but were instead held at USACRC. McGuire Decl. ¶8. Yet he omits any explanation as to why it took nearly eight months after the USACRC claimed to have received the initial request to search these files. By February 2006, the USACRC had already conducted two previous searches. McGuire Decl. ¶ 8-11. Only on the third search, after repeated prodding from Mr. Bangoura's counsel, did the USACRC locate the three pages of special agent notes regarding Mr. Bangoura and the incident of October 28, 2004 in the special agent's file. McGuire Decl. ¶12. Again, it would appear only reasonable to include these files in the initial search.

Mr. McGuire also fails to explain the reason for searching the Automated Criminal Investigations and Intelligence System (ACI2) database twice, first in August 2005, and again in March 2006. Nor does he explain why further documentation, namely the Agent Activity Summary, produced March 30, 2006, was produced as a result of the *second* search in this

database. McGuire Decl. ¶15.  Mr. McGuire does not explain why the initial search did not include the COPS database, despite the fact that an overdue search into that database produced the Duty Officer's Log, an additional document directly related to Mr. Bangoura's October arrest.

Bear in mind, both McGuire and Wood bury their search descriptions in departmental acronyms.  All of these search engines and personnel are under the umbrella of the *same organization*, the United States Army.  Mr. Bangoura cannot suffer these ill effects merely because McGuire, Wood, and the MPU Provost Marshal have failed to communicate between departments.  Modern communication techniques permit integrated databases and emails between and among different departments.  Both Wood and McGuire had ample avenues of electronic communication in order to harmonize their respective search efforts.

The Woods and McGuire Declarations are patently insufficient in failing to explain their agency's standard search procedure, policies, protocols and agency coordination.  Further, their Declarations indicate that the searches were of an ad hoc nature.  This is far from an affirmative demonstration of a "reasonably calculated" search.

### 2. *Notwithstanding Reasonableness, the Search was in Bad Faith*

Agency searching worked to conceal rather than reveal information, evidencing more than mere technical error or incompetence.  The Defendant's persistent errors lead Plaintiff to believe that the Defendant's errors were strategic, especially when Mr. Bangoura was identified as "Middle Eastern-looking" immediately prior to his arrest at the State Department Credit Union.[6]

Mr. Bangoura has seen the following specific errors within the government's documents:

---

[6] Notably, in their Motion for Summary Judgment, the Defendant responded to Plaintiff's Original Complaint but did not respond to Plaintiff's Amended Complaint, where much more information was alleged.  While within their rights, Defendant did not provide a full vetting of the facts and circumstances in the case.

- **The Credit Union Call to the Military Police.** The records are still in dispute as to who called the MPU; the Agent's Activity Summary indicates that it was the bank manager but the Duty Officer's Log indicates that it was the teller. Standard telephonic records logging incoming and outgoing calls would document this phone call to the MPU. Standard telephone and dispatch procedures would indicate that the call was to report that two Middle Eastern-looking men were acting suspiciously.

- **Information Regarding Mr. John.** Information is also missing regarding both Mr. John, who accompanied Mr. Bangoura to the Credit Union and was also detained by the Military Police on that day. Both the Duty Officer's Log and Agent's Investigation Report, submitted most recently, on March 28, 2006, lack any reference to Mr. John.

- **Evidence is Missing Regarding Alleged Verbal Threats and the Resultant Base Banning Order.** The Duty Officer's Log referenced the escorting officers' forbidding Mr. Bangoura to return to the State Department Federal Credit Union at least in part because of verbal threats he allegedly made to the tellers. If this were true, documentation of such a premises banning order should exist. While Mr. Bangoura strongly denies making such verbal threats, if such an incident did occur, further documentation of such an occurrence should exist. In any other reasonable organization verbal threats would be documented as they are punishable under federal criminal statute. See 18 U.S.C. § 1875(c) (criminalizing threats to kidnap or injure a person).

- **Officer Interviews Are Missing from the Produced Records.** The Duty Officer's Log also suggested there were interviews with bank tellers, noting "730s were taken from the tellers." As stated in the Memorandum in Support of Motion for Leave, this is likely a Government-issued form for obtaining witness statements. Prepared witness statements or form 730s were never produced.

These numerous discrepancies and failure to produce documents that merely required reading a few sentences indicate that more than mere technical error is at stake in this case. In this instance there are more than mere technical failings on the part of the agency but rather glaring inconsistencies indicating that the agency did not act in good faith.

The inconsistencies and missing information show more than mere confidential incompetence. Reading behind the government's purported missteps, the US Army has motive to selectively omit documents. Apprehending "Middle-Eastern looking" men on a federal base for sham claims may admit a practice of racial profiling by the government or evidence a sheer

display discrimination by its employees.  Mr. Bangoura refuses to believe that the government's

actions are a mere comedy of errors.  Instead, what is more logical, in an electronic age of

dogged documentation, is that his request is a bad faith evasion of disclosure per the standard set

forth in <u>Founding Church of Scientology of Washington, D.C., Inc.</u> 610 F.2d at 836.

The government's numerous misrepresentations to the Plaintiff regarding the completion

of the search only strengthen the inference of bad faith.  On multiple occasions the government

represented that *all* records had been produced and no further documentation existed.  These

representations were blatantly erroneous.  Defendant later produced additional documents and

reneged on their earlier claims of full disclosure.  Plainly, their representations were absolutely

false.  How can Mr. Bangoura believe Defendants' claims of responsiveness now?

In fact, Defendant misled Plaintiff in this way not once, not twice, but three times and

released its additional information only upon Plaintiff's prompting.  The Defendant's repeated

misrepresentations are underlined below.  A letter dated August 18, 2005 from

Messrs. Wainstein and Robitaille to Plaintiff's counsel Larry Liebesman indicated that the Report

of Investigation was "<u>the *only* document in their custody</u> related to the incident involving Mr.

Bangoura and thus <u>the *only* document responsive</u> to the request." (emphasis added).  Following

this letter, more records were released, including copies of Mr. Bangoura's purportedly

fraudulent checks from the State Department.

Further, Messrs. Wainstein and Robitaille indicated in a letter dated October 18, 2005

accompanying these checks, <u>that *all* responsive agency records had been provided</u> and <u>no other

documents existed</u>.  Yet more responses with documents followed this statement.  In response to

Plaintiff's counsel's letter on February 3, 2006 expressing concern with the lack of information

regarding exemptions, the USACRC found three pages of handwritten notes in its records on

21

February 10, 2006 and released these documents on February 23, 2006. Defendant's letter accompanying these additional documents claimed they were merely to *supplement* the agency's response of August 18, 2005. Defendants' affidavits have not given Mr. Bangoura any substantive explanation for why it took nearly seven months for these documents to be produced. This failure is patently unreasonable

It would have been most reasonable for the Army to search the files of the CID special agents who were specially called in to interview Mr. Bangoura upon notification of Mr. Bangoura's FOIA request. Instead, it took the Army at least eight months and a total of three searches to obtain the agent's documents relevant to Mr. Bangoura's detention, interrogation, and subsequent release. An even later response, on March 20, 2006, provided the Daily Officer Journal and the Provost Marshall Incident Log.

What does this evidence? That only when pressed to do so, repeatedly, and in litigation, will the government provide relevant documents in this case. The history of the government's negligent and unprofessional response to its FOIA obligations in this matter fail to indicate good faith, as the government claims in this statement. "[G]ood faith reasonable searches for documents related to the investigation of plaintiff were conducted." See Defendant's Points & Authorities Memorandum. Rather than employ "methods reasonably expected to produce such information," (Id.) at every turn, the government has stonewalled the Plaintiff and made flagrant misrepresentations.

Where circumstances raise substantial doubt as to the adequacy of an agency's search, discovery is clearly appropriate. At the least, doubt exists in this case. Accordingly, under Rule 56(f) the Court should defer ruling on the Defendants' Motion for Summary Judgment and permit Leave to file for Discovery. See e.g., Founding Church of Scientology of Washington,

22

D.C., Inc. 610 F.2d at 836; Shurberg Broadcasting, 617 F. Supp. at 831; Exxon Corp., 466

F.Supp. at 1094.

Without discovery it will be impossible to fully corroborate existing evidence indicating

Mr. Bangoura's discrimination. But, at present, enough facts exist to permit the Court to draw an

inference of bad faith. Mr. Bangoura was identified as "Middle Eastern-looking," arrested, and

then stonewalled regarding the circumstances of his arrest. The Defendants even misrepresented

that no further documents exist for his case, then miraculously produced further documentation.

Mr. Bangoura cannot accept the Army's claims of sheer ineptitude. There is a point at which

mass incompetence can no longer justify the government's actions – this case has reached that

threshold of bad faith.

### B. Scope of Plaintiff's Discovery Request

Due to the Defendant's bad faith, the Plaintiff respectfully requests limited discovery

pursuant to Campbell v. U.S. Dep't of Justice because the agency did not demonstrate their

burden of a reasonably adequate search. See 193 F.Supp. 2d 29, 36 (D.D.C.2001); see generally

5 U.S.C. § 552. Similar to Campbell, the adequacy of the Army's search for Mr. Bangoura's

information is in question. See id. Army division, USACRC, performed a second search in the

ACI2 database on March 20, 2006 that revealed the "Agent's Activity Summary for October 28

and 29, 2005". The "Agent's Activity Summary for October 28 and 29, 2005" was not located

during a previous search for records in the ACI2 database on August 18, 2005. See McGuire

Affidavit ¶ 6, 15; Ex. J. Since identical searches in the same system revealed different results

over six months apart, the adequacy of the USACRC's search is untenable.

To remedy the clearly inadequate search, Plaintiff seeks discovery that is circumscribed

pursuant to Campbell. See id. Discovery includes interrogatories, depositions, documents,

23

physical and mental examinations, and requests for examination. <u>See generally</u> Fed.R.Civ.P.

Rule 26-37. As in <u>Campbell</u>, Mr. Bangoura desires limited discovery to investigate the scope of

the agency search for responsive documents, the Army's investigation procedures, and

information not previously released by the Army's investigation of its systems. <u>See</u> <u>Campbell</u>,

193 F.Supp. 2d, 36; <u>see also</u>, <u>Pub. Citizen Health Research Group</u>, 997 F.Supp. 56, 72

(D.D.C.1998); <u>Safecard Servs., Inc. v. SEC</u> 926 F.2d 1197, 1200-1202 (D.C.Cir.1991).

Additionally, the Plaintiff requests deposition of a government agent pursuant to the

Federal Rules of Civil Procedure Rule 30(b)(6). <u>See</u> Fed.R.Civ.P. 30(b)(6). As a discovery tool,

a 30(b)(6) deposition allows organizations and government agencies to be deponents in civil

litigation matters. This rule also applies to the government when it is a party in the lawsuit. <u>See</u>

<u>Aloha Care, Inc. v. Haw. Dep't of Human Services</u>, 2005 U.S. Dist. Lexis 41202. In accordance

with the <u>Campbell</u> standard granting discovery in limited circumstances, the Plaintiff requests

deposition discovery, pursuant to Rule 30(b)(6). <u>See</u> <u>Campbell</u>, 193 F.Supp. 2d at 36. <u>See also</u>

Fed.R.Civ.P. 30(b)(6). The Plaintiff will provide the court with copies of deposition questions

prior to the assigned date to prevent the expansion of discovery. Therefore, the Plaintiff's request

for depositions pursuant to Rule 30(b)(6) is reasonable and limited in scope.

## V. CONCLUSION

FOIA was "designed to promote the disclosure of information, not to inhibit it."

<u>Washington Post Co. v. Minority Business Opportunity</u> 560 A.2d 517 (D.C.Cir.1989). On the

historic anniversary of this important statute, all should bear in mind that a citizen's access to

information is only possible through rigorous enforcement of FOIA's protections. If FOIA is not

strictly enforced by the Courts, then agencies, left unchecked, may continue to stonewall

legitimate information requests. More individuals, like Mr. Bangoura, may be detained, lose property or suffer other atrocities without ever knowing the reasons for their fate.

If an agency may "lightly avoid its responsibilities by laxity in identification or retrieval of desired materials, the majestic goals of [FOIA] will soon pass beyond reach. And if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory." <u>Founding Church of Scientology of Washington, D.C., Inc. v. National Sec. Agency</u>, 610 F.2d 824, 837 (D.C.Cir. 1979). The letter and spirit of FOIA demand reasonably calculated search procedures to produce relevant documents and document production, conducted in good faith.

For the foregoing reasons, Mr. Bangoura implores the Court to grant his Cross Motion for Partial Summary Judgment and Motion for Leave to Seek Discovery. As indicated in Mr. Bangoura's Cross Motion for Partial Summary Judgment for Counts One and Two, he has requested oral argument to further clarify his position before the Court.

Respectfully submitted,

Dated: July 17, 2006

_____
Lawrence R. Liebesman
D.C. Bar No. 193086
HOLLAND & KNIGHT LLP
2099 Pennsylvania Ave. NW, Suite 100
Washington, D.C. 20006
Telephone: (202) 955 3000
Fax: (202) 955 5564

25