UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
SAMIR HUSSAIN,                          )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )        Civil Action No. 07-1633 (PLF)
                                        )
UNITED STATES DEPARTMENT OF             )
    HOMELAND SECURITY,                  )
                                        )
        Defendant.                      )
_____)

OPINION

        This Freedom of Information Act ("FOIA") matter is before the Court on the

parties' cross motions for summary judgment.  After careful consideration of the parties' papers

and attached exhibits, the relevant case law and the statute, the Court concluded that the

defendant's search was adequate, but that its Vaughn Index is inadequate.  Accordingly, by Order

of September 30, 2009, the Court granted defendant's motion in part and denied it in part without

prejudice; it also denied plaintiff's motion without prejudice.  This Opinion explains the

reasoning underlying that Order.[1]

_____

        [1]        The following papers are relevant to the pending motions: Defendant's Motion for
Summary Judgment ("Def. Mot."); Plaintiff's Cross-Motion for Summary Judgment ("Pl.
Mot."); Defendant's Reply in Further Support of its Motion for Summary Judgment and
Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def. Rep."); Plaintiff's Reply
in Support of Cross-Motion for Summary Judgment; Defendant's Memorandum in Opposition to
Plaintiff's Rule 56(f) Motion ("Def. Opp. to 56(f)"); Defendant's Notice of Supplemental
Authority; Plaintiff's Response to Defendant's Notice of Supplemental Authority; and
Defendant's Reply to Plaintiff's Response to Notice of Supplemental Authority.

## I.  BACKGROUND

Plaintiff, Samir Hussain, is an Iraqi citizen who has resided in the United States since 1996.  See Pl. Mot., Ex. 2, Declaration of Samir J. Hussain in Support of Plaintiff's Cross Motion for Summary Judgment ("Hussain Decl.") ¶¶ 3-4.  The Department of Homeland Security detained him for almost eight months from 2003 through 2004.  See id. ¶ 21.  He has since been granted asylum in the United States.  See id. ¶ 24.

On September 23, 2005, plaintiff submitted a FOIA request to the United States Citizenship and Immigration Services ("USCIS"), Central Office in the District of Columbia ("Central Office") seeking paperwork regarding his detention, specifically his own "'Apprehension Record'; any Border Patrol Disposition; I-213 Record of Deportable Alien; and any other information possessed by DHS regarding Hussain's detention on July 24, 2003."  Def. Mot., Defendant's Statement of Material Facts as to Which There is no Genuine Dispute ("Def. Facts") ¶ 1.  Based on an initial electronic search, the Central Office determined that the records relevant to plaintiff's request were located at the National Record Center ("NRC"), and it transferred the request to the NRC for a direct response to plaintiff.  See id. ¶ 2.  The NRC scanned responsive records into an electronic file to facilitate final processing pursuant to the FOIA.  See id. ¶ 4.  On March 6, 2007, USCIS issued its final determination.  See id. ¶ 5.  Following plaintiff's administrative appeal, USCIS supplemented its release.  USCIS has now released 503 documents in their entirety and has withheld 61 pages in part and 34 pages in their entirety.  See id. ¶ 7.  Dissatisfied with the production, plaintiff filed suit in this Court.

## II.  STANDARD OF REVIEW

The fundamental purpose of the FOIA is to assist citizens in discovering "*what their government is up to.*"  Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989) (emphasis in original).  The FOIA strongly favors openness, as Congress recognized in enacting it that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242 (1978); see also Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (purpose of the FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny").  As such, "disclosure, not secrecy, is the dominant objective of the Act."  Dep't of the Air Force v. Rose, 425 U.S. at 361.

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits or declarations show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits its own affidavits or declarations or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment.  Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007).  In a

3

FOIA case, the Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations are "relatively detailed and non-conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-27 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974); Hertzberg v. Veneman, 273 F. Supp. 2d 67, 74 (D.D.C. 2003).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements."  Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978); see also Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Hertzberg v. Veneman, 273 F. Supp. 2d at 74.

### III.  DISCUSSION

Plaintiff argues that the defendant failed to conduct an adequate search and that it has not met its burden to justify its non-disclosure of responsive documents.  Plaintiff also seeks an interim award of attorneys' fees.  The Court will address these arguments in turn.

### A.  Adequacy of the Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting

Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information); Wilderness Soc'y v. Dep't of Interior, 344 F. Supp. 2d 1, 20 (D.D.C. 2004).  The agency bears the burden of showing that its search was calculated to uncover all relevant documents.  Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. 2d 54, 63 (D.D.C. 2002).  While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982), they must "describe what records were searched, by whom, and through what processes." Steinberg v. Dep't of Justice, 23 F.3d at 552.

USCIS limited its search to the agency's system of records known as the Alien File/Central Index System ("A-File") because this system "contains the universe of documented transactions between Plaintiff and U.S. immigration authorities in USCIS's custody."  See Def. Opp. to 56(f), Ex. A, Supplemental Declaration of Brian J. Welsh ("Supp. Welsh Decl.") ¶ 10. Plaintiff argues that the search was incomplete, based on his belief that certain records were generated during his arrest and detention — specifically a sworn statement, detainee classification records, records and notes of interviews by government officials, records of correspondence with a deportation officer, medical files, incident reports, reports documenting disciplinary and/or administrative segregation, employment records, commissary records, records of law library usage bunk checklists, and a receipt for possessions — which were neither

5

produced nor identified in the Vaughn Index.  See Pl. Mot., Memorandum of Law in Support at 7 (citing Hussain Decl. ¶¶ 9, 11-12, 15-20, 22).  Plaintiff also provided as exhibits copies of four documents that he believes were responsive to his request, but are not accounted for in the agency's production.  See id. (citing Hussain Decl. ¶ 30(a)-(d)).

Defendant argues that USCIS did not possess many of the documents identified by plaintiff, even though *other components* of DHS might possess them.  According to DHS, the majority of the documents that plaintiff believes should have been produced — the detainee classification records, medical files, incident reports, reports documenting disciplinary and/or administrative segregation, employment records, commissary records, records of law library usage, bunk checklists, and a receipt for possession — if they exist, would exist in plaintiff's *detention file*, not in his A-File.  See Def. Rep. at 6 (citing Def. Rep. Ex. A).  The detention file is separate from an individual's A-File and is maintained by the United States Immigration and Customs Enforcement ("ICE"), not by USCIS, the entity to which plaintiff sent his FOIA request. See Def. Rep., Ex. A ("ICE/DRO Detention Standard re: Detention Files").

DHS's FOIA regulations state that when responding to an FOIA request, "a component ordinarily will include only records *in its possession* as of the date the component begins its search for them."  See 6 C.F.R. § 5.4(a) (emphasis added).  Plaintiff submitted his FOIA request to USCIS, not to ICE; defendant therefore acted appropriately when it limited its search to records in USCIS's possession.  See Trupei v. DEA, Civil Action No. 06-1162, 2007 U.S. Dist. LEXIS 31055 at *6 (D.D.C. Apr. 27, 2007) (an agency component need not forward FOIA requests to another agency component when its regulations do not require it to do so)

(citing <u>National Sec. Archive v. Archivist of the U.S.</u>, 909 F.2d 541, 546 (D.C. Cir. 1990)).[2]

Accordingly, the failure to discover these records (if they exist) — which were not in USCIS's

possession — does not create "positive indications of overlooked materials" and does not support

a conclusion that the agency's search was inadequate.  <u>Valencia-Lucena v. United States Coast</u>

<u>Guard</u>, 180 F.3d at 326.

      The parties agree that the following records, which plaintiff believes exist, would

not have been contained in plaintiff's detention file: a sworn statement, records and notes of

interviews by government officials, and records of correspondence with a deportation officer.

Plaintiff argues that the failure to produce these records renders the search inadequate, but

plaintiff's description of the sworn statement and government officials' records and notes suggest

that they would not have been in USCIS's possession and therefore in his A-File.  The fact that

plaintiff allegedly was interviewed by an FBI agent or Department of Defense officers three or

four times while at the Krome Processing Center, <u>see</u> Hussain Decl. ¶¶ 12, 15, does not

necessarily lead to the conclusion that any associated documents would be contained in

plaintiff's A-File.  That file relates solely to plaintiff's interaction with "immigration authorities."

<u>See</u> Supp. Welsh Decl. ¶ 10.  It is more likely that the documents would be in the possession of

---

[2]     Plaintiff argues that the multiple declarations from Brian Welsh suggest an inconsistency as to which component had possession of his detention file.  The Supplemental Welsh Declaration makes clear to the Court, however, that the A-File contains all documented transactions between plaintiff and the United States's immigration authorities which are *in USCIS's custody*, while the detention file is a separate repository of information.  <u>See</u> Supp. Welsh Decl. ¶ 10.  The original Welsh Declaration did not distinguish between the A-File and the detention file, and the Court interprets the first footnote to that declaration, which suggests that the A-File is the *only* repository of information that any of the DHS components would have for plaintiff, <u>see</u> Def. Mot., Declaration of Brian J. Welsh ("Welsh Decl.") at 2 n.1, as careless drafting, not as indicative of a disingenuous response by the agency.

the interviewers' agencies, the FBI or DOD.  Even according to the plaintiff, the agents were attempting to conduct a law enforcement or military investigation, insofar as the officials questioned plaintiff about Saddam Hussein and weapons of mass destruction; their questions did not directly relate to immigration issues.  See Hussain Decl. ¶¶ 12, 15.

Nor does plaintiff's description of his correspondence with his deportation officer persuade the Court that the failure to produce records arising from this correspondence demonstrates that USCIS's search was inadequate.  While he may have written to his deportation officer from Krome to get an update on his deportation and his deportation officer may have called to tell him the processing of his deportation had been delayed, see Hussain Decl. ¶ 14, the failure to find a letter from plaintiff to his deportation officer in the USCIS file alone does not make an otherwise reasonable search inadequate.  See Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994) ("The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'") (quoting Weisberg v. Dep't of Justice, 745 F.2d at 1485)).

Finally, plaintiff argues that the search was inadequate because certain documents, copies of which he attaches to his declaration, were not discovered during the search — his DHS medical records, a February 9, 1999 letter from Senator Diane Feinstein, a June 9, 2000 "Request for Evidence" sent from INS, and a portion of plaintiff's letter to INS regarding his Application for Employment Authorization.  See Hussain Decl. ¶ 30.  DHS has explained that the medical records would have been contained in plaintiff's detention file, not in his A-File at USCIS.  Both the dates and contents of the other three records show that they are non-responsive to plaintiff's FOIA request because the documents, dated in 1999 and 2000, relate to events significantly

8

before his detention in 2003; and the undated letter to the INS regards his application for employment and travel documents, which are also unrelated to his detention.  Even if plaintiff's A-File contained these documents, USCIS need not have produced them upon review of the A-File.

Taking a different tack, plaintiff also argues that the search was inadequate because defendant failed to identify what search terms were used to search for the responsive records and that the search terms that were used may have been inadequate.  Plaintiff bases his argument on the original declaration of Brian J. Welsh.  DHS also filed a supplemental declaration from Mr. Welsh, in which he explained that the agency determined that all of the requested documents were located in plaintiff's A-File, which "contains the universe of documented transactions between Plaintiff and U.S. immigration authorities in USCIS's custody."  See Supp. Welsh Decl. ¶¶ 9-10.  Thus, upon locating plaintiff's A-File, and examining the responsive documents, the search was complete.  There can be no question that the search terms used to locate plaintiff's A-File were adequate, because USCIS *succeeded in locating the A-File*; no other responsive documents are in the possession of USCIS.  See id. ¶ 14.[3]  The Court concludes that USCIS's search was adequate, which is why it granted summary judgment for the defendant on this issue.

---

[3]     Plaintiff also argues that DHS has not stated what search terms it used to find responsive files within the A-File.  In fact, USCIS "deemed the subject alien file responsive to Plaintiff's request in *its entirety*."  See Welsh Decl. ¶ 12 (emphasis added).

### B. *Adequacy of the Vaughn Index to Justify Withholding*

Under the FOIA, an agency may withhold documents responsive to a FOIA

request only if the responsive documents fall within one of nine enumerated statutory

exemptions.  See 5 U.S.C. § 552(b); see also Dep't of Defense v. Fed. Labor Relations Auth.,

510 U.S. 487, 494 (1994).  The agency bears the burden of justifying any withholding.  See

Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d at 74.  To enable the Court to

determine whether documents properly were withheld, the agency must provide a detailed

description of the information withheld through the submission of a so-called "Vaughn Index,"

sufficiently detailed affidavits or declarations, or both.  See id.; see also Oglesby v. Dep't of the

Army, 79 F.3d 1172, 1178 (D.C. Cir. 1996); Vaughn v. Rosen, 484 F.2d at 827-28.  The Vaughn

Index and/or accompanying affidavits or declarations must "provide[] a relatively detailed

justification, specifically identif[y] the reasons why a particular exemption is relevant and

correlat[e] those claims with the particular part of a withheld document to which they apply."

Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting Mead Data Cent., Inc.

v. Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977)).  While there is no set form for a

Vaughn Index, the agency should "disclose as much information as possible without thwarting

the exemption's purpose."  Hall v. Dep't of Justice, 552 F. Supp. 2d 23, 27 (D.D.C. 2008)

(quoting King v. Dep't of Justice, 830 F.2d 210, 224 (D.C. Cir. 1987)).

DHS's Vaughn Index is fairly lengthy, identifying each document by page number

and providing three categories of information for each: a brief description of the document, the

exemption(s) cited, and the content of the withheld portion and the basis for its withholding.  It

has certain basic deficiencies, however.  It does not identify potentially relevant information such

as the date, author or recipient of the document.  As the court of appeals has explained, details

such as these often are necessary "to enable the court and the opposing party to understand the

withheld information in order to address the merits of the claimed exemptions."  Judicial Watch,

Inc. v. FDA, 449 F.3d at 150.  As explained below, these deficiencies contribute to the Court's

conclusion that the Vaughn Index is inadequate.

### 1.  Exemption 2

Exemption 2 protects materials that are "related solely to the internal personnel

rules and practices of an agency."  5 U.S.C. § 552(b)(2).  It applies to two categories of material:

(1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine

and significant public interest"; and (2) internal agency matters of some public interest "where

disclosure may risk circumvention" of statutes or agency regulations.  Dep't of the Air Force v.

Rose, 425 U.S. 352, 369-70 (1976); see Long v. Dep't of Justice, 450 F. Supp. 2d 42, 54 (D.D.C.

2006) (citing Schwaner v. Dep't of the Air Force, 898 F.2d 793, 794 (D.C. Cir. 1990)).

Generally, courts limit Exemption 2 protection to "trivial administrative matters" ("low 2"

exempt information), and to information that, if disclosed, "would risk circumvention of agency

statutes or regulations" ("high 2" exempt information).  Long v. Dep't of Justice, 450 F. Supp. 2d

at 54 (citing Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1207 (D.C. Cir. 1992)).

DHS states that it has withheld six categories of information pursuant to

exemption 2: (1) officers' UserIDs; (2) computer operation codes; (3) employee telephone and

facsimile numbers; (4) internal agency administrative forms; (5) third-party records; and

(6) internal agency rules and practices.  See Def. Mot. at 13.  To justify its withholdings under

exemption 2, DHS states in the Vaughn Index that:

> The types of documents and/or information that we have withheld
> under [exemption 2] may relate to internal matters of a relatively
> trivial nature, such as internal personnel rules and practices which
> could consist of employee identification codes, computer login
> codes, policies regarding the use of parking facilities and break
> rooms, employee leave policies and dress codes or internal matters
> of a more substantial nature, the disclosure of which would risk
> circumvention of a legal requirement, such as operating rules,
> guidelines and manuals of the procedures for examiners or
> adjudicators.

Welsh Decl., Ex. E., Vaughn Index at Doc. No. 383.   As clarified by defendant's reply brief,

officers' UserIDs, computer operation codes, employee telephone and facsimile numbers and

email addresses and third-party records were redacted from documents under the low 2

exemption, while the remaining documents were withheld in whole or in part under the high 2

exemption.  See Def. Rep. at 10-11.

With regard to the documents withheld under the low 2 exemption, DHS has the

burden of establishing, through affidavits or declarations, "that the materials withheld under the

'low 2' exemption 'relate[] solely to [DHS's] internal personnel rules and practices' and are used

predominantly for internal purposes, 5 U.S.C. § 552(b)(2), and that they relate 'to trivial

administrative matters of no genuine public interest,'" James Madison Project v. CIA, 607 F.

Supp. 2d 109, 124 (D.D.C. 2009) (citing Schwaner v. Dep't of the Air Force, 898 F.2d at 794).

The invocation of certain of defendant's low 2 exemptions — where the Vaughn Index

specifically identifies redacted information as computer operation codes or officers' UserIDs —

is amply supported by the case law.  See, e.g., Ferranti v. BATF, 177 F. Supp. 2d 41, 45 (D.D.C.

2001) (internal computer codes); Bangoura v. United States Dep't of the Army, 607 F. Supp. 2d

134, 145 (D.D.C. 2009) (special agent sequence numbers). Where the type of material so plainly relates to trivial agency matters as to be of no public interest, exemption is virtually automatic. See Ray v. FBI, 441 F. Supp. 2d 27, 33 (D.D.C. 2006).   It is much less clear, however, that the "third-party records," which were withheld, necessarily are so trivial as to be of no public interest — and defendant has made no effort to meet its burden to explain why the plaintiff or the Court should conclude that they are.

Moreover, for all exemptions, even low 2 exemptions, the agency still must identify, with some detail, what material it is redacting from the particular documents, and may not only refer to a generalized justification for redaction.   See, e.g., Defenders of Wildlife v. United States Border Patrol 623 F. Supp. 2d at 89-90.   Cf. James Madison Project v. CIA, 607 F. Supp. 2d 109, 125 (D.D.C. 2009) (finding an agency's withholding under the low 2 exemption adequate, because the agency's declaration detailed the information withheld "document-by-document" and did not rely on "vague references").   In most cases, DHS fails to do so, and the context of the redaction is not clear from the Vaughn Index.   See, e.g., Vaughn Index at Doc. No. 391 ("exemption b(2) being applied to a portion of the form"); Doc. No. 395 (same).   These explanations are simply insufficient for the Court to determine what type of information was redacted, much less whether the information is claimed to be exempt under the low 2 or high 2 exemption.   Accordingly, they are inadequate to meet DHS's burden.   See Robinson v. Attorney General, 534 F. Supp. 2d 72, 80 (D.D.C. 2008) (finding agency declaration which did not indicate clearly whether material was withheld as low 2 or high 2 exempt material inadequate).

DHS's justifications for its withholdings under the high 2 exemption also frequently are deficient.   To be protected by the high 2 exemption, information must be

predominantly internal and disclosure must significantly risk circumvention of agency regulations or statutes.  See Long v. Dep't of Justice, 450 F. Supp. 2d at 54 (citing Schiller v. NLRB, 964 F.2d at 1207).  Plaintiff focuses on several documents withheld by DHS in full which have titles such as "Internal Coversheet" (Doc. No. 392) and "Memorandum of Investigation" (Doc. Nos. 442 and 555).  Defendant provides no explanation for withholding these documents other than by reference to its general justification for all documents withheld under Exemption 2. See Vaughn Index at Doc. No. 383.  This explanation is not specific to the contents of the withheld documents.  Even if the Court were to conclude that the titles of the documents are adequate to show that the documents are primarily internal, the government must still prove that disclosure may risk circumvention of agency regulation.  See Robinson v. Attorney General, 534 F. Supp. 2d at 80 (citing Crooker v. BATF, 670 F.2d 1051, 1053 (D.C. Cir. 1981)).  The government makes no effort to do so in the Vaughn Index or accompanying affidavits.  It therefore has not met its burden to justify withholding.  See id. at 80 (finding agency's "conclusory statements of the risk of harm" inadequate to justify withholding under the high 2 exemption).

## 2.  Exemption 5

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  This provision applies to materials that normally are privileged in the civil discovery context, including those protected by the attorney work product privilege, the attorney-client privilege, and the deliberative process privilege.  See NLRB v. Sears, Roebuck

14

& Co., 421 U.S. 132, 149 (1975); see also FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983) ("The test

under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon

a showing of relevance."); Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir.

1987) (same).  As with all FOIA exemptions, Exemption 5 is construed narrowly, see

Department of the Interior and Bureau of Indian Affairs v. Klamath Water Users Protective

Ass'n, 532 U.S. 1, 8 (2001), and the burden is on the agency invoking Exemption 5 to "establish

its right to withhold evidence from the public . . . .  [C]onclusory assertions of privilege will not

suffice to carry the agency's burden."  Senate of the Commonwealth of Puerto Rico v. United

States Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) (internal quotation omitted).

   DHS has withheld some thirty pages of documents in whole or in part based on

Exemption 5.  Its withholdings under Exemption 5 fall into two general categories: (1) those that

it asserts are protected by either the attorney-client or attorney work product privileges, and

(2) those that it asserts are protected by the deliberative process privilege.  It is not always clear

which privilege it asserts with respect to individual documents.  DHS provides a general

explanation for all documents withheld under Exemption 5 the first time it invokes the

exemption.  See Vaughn Index at Doc. Nos. 231-32.  Following the general explanation of

Exemption 5 withholding, individual documents which DHS has withheld under the exemption

receive summary explanations.  Typically, for documents entitled "ICE Trial Attorney

Worksheets," DHS states only that "[t]hese documents are being withheld in full, pursuant to

FOIA exemption (b)(5), for the reasons cited in Document 231, above."  See Vaughn Index at

Doc Nos. 528-30.

While an agency need not repeat itself when its withholdings "implicate the same exemption for similar reasons," it may not simply explain itself by "generalities." <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d at 147.  DHS does not provide explanations for its withholdings under Exemption 5 that are tailored to the content of the individual documents.  DHS argues that the description of the document is adequate to deduce the applicability of the exemption.  While an entry like "E-mail Correspondence between ICE Attorneys and Employees," <u>see</u> Vaughn Index at Doc. No. 531, certainly *might* contain attorney-client privileged information, without some description of the contents of the email, neither the Court nor the plaintiff can conclude with any certainty that it does.  Other document descriptions are even vaguer, <u>see</u> Vaughn Index at Doc. No. 442 ("Memorandum of Investigation"), and, without more, are inadequate to justify withholding.  <u>See</u> <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d at 152 ("Terms like 'fax' and 'q&a' standing alone give the court no way to determine whether the withheld information is of a deliberative nature.").

DHS's failure to include the dates of the documents or their authors or recipients makes it even more difficult for the Court to determine whether Exemption 5 was appropriately applied to documents that DHS asserts were predecisional.  "The identity of the parties to the memorandum is important; a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." <u>Morley v. CIA</u>, 508 F.3d 1108, 1127 (D.C. Cir. 2007) (quoting <u>Coastal States Gas</u>, 617 F.2d at 868)).  Similarly, a document can only be "predecisional" if "it was generated *before* the adoption of an agency policy," a determination which the Court or the plaintiff can make only by knowing the date of

16

the document.  Judicial Watch, Inc. v. FDA, 449 F.3d at 151 (emphasis added) (quotations

omitted).  While the failure to include dates does not always mean the Exemption 5 withholdings

are inadequately explained, the agency must "illustrate a chronology" in some way in order to

justify predecisional withholdings.  See id. at 151.  The Court concludes that DHS's explanation

of its withholdings under Exemption 5 is inadequate.

### 3.  Exemption 7(E)

Exemption 7(E) protects from disclosure records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records

or information "would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C.

§ 552(b)(7)(E); see Long v. United States Dep't of Justice, 450 F. Supp. 2d at 79.

Pursuant to exemption 7(E), DHS withheld the following categories of

information: (1) intra-agency emails (applied to a systems check result); (2) continuation pages of

Form I-213, Record of Deportable Alien; (3) case status computer printout screens; and (4) Form

G-600A Investigation Preliminary Worksheet.  See Def. Mot., Memorandum of Points and

Authorities in Support at 29.  In conjunction with its description of the first document withheld

pursuant to exemption 7(E), DHS provided a generalized explanation for withholding.  See

Vaughn Index at Doc. 402.  Yet with regard to the individual withholdings, DHS provides almost

no description of the material withheld.  See, e.g. Vaughn Index at Doc. No. 438 ("Continuation

page of Form I-213, Record of Deportable Alien" — "This document is also being withheld in

part with exemption (b)(7)(E) for the reasons cited with respect to Document 402, above"); Doc. No. 563 ("Form G-600A Investigation Preliminary Worksheet" — "withheld in full pursuant to FOIA exemptions . . . (b)(7)(E).  These exemptions are being applied for the reasons cited in Documents . . . 402, above, respectively.").  When a Vaughn Index only recites the language of the statute and does not explain "why the release of the information would compromise law enforcement by, for example, revealing investigatory techniques that are not widely known to the general public" with at least some specificity, it is inadequate to justify withholding under Exemption 7(E).  Boyd v. BATF, Civil Action No. 05-1096, 2006 U.S. Dist. LEXIS 71857 at *30 (D.D.C. Sept. 29, 2006) ("Descriptions such as 'techniques involving consensual monitoring' . . . and 'investigative techniques,' . . . alone are inadequate.").

Unlike the other documents withheld pursuant to Exemption 7(E), DHS provides some explanation for withholding a part of Document No. 402 — the systems check result — for the first time in its reply brief, explaining that the redaction "is the name of the system that USCIS used to determine that Plaintiff did not apply for asylum as he indicated in interviews with immigration officials."  See Def. Rep. at 14.  Even if the Court could consider explanations for withholding contained in the supplemental briefing, rather than in the Vaughn Index and/or in affidavits or declarations, this explanation still does not inform the Court why disclosure of the *name* of the system would "reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Defendant has not met its burden to justify withholding material under Exemption 7(E).[4]

_____

[4]        Plaintiff does not challenge defendant's withholdings under Exemptions 6 or 7(C).

4.  Segregability

If a record contains information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the nonexempt portions are inextricably intertwined with exempt portions.  See Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1027 (D.C. Cir. 1999); Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d at 90 (citing Salas v. Office of the Inspector Gen., 577 F. Supp. 2d 105, 112-113 (D.D.C. 2008); 5 U.S.C. § 552(b). "To withhold the entirety of a document, DHS 'must demonstrate [to the Court] that it cannot segregate the exempt material from the non-exempt and must disclose as much as possible.'" Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d at 90 (quoting Hertzberg v. Veneman, 273 F. Supp. 2d at 90).

Having withheld numerous documents in full or in part, DHS's only explanation as to how it met the segregability requirement is the statement in Mr. Welsh's initial declaration that "USCIS has now released all reasonably segregable portions of documents to Plaintiff. . . ." See Welsh Decl. ¶ 13.  This statement is inadequate to meet DHS's burden with regard to segregability because it does not show with reasonable specificity why the documents cannot be further segregated and additional portions disclosed.  See Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d at 91 (quoting Hertzberg v. Veneman, 273 F. Supp. 2d at 90-91). "[F]or *each* entry the defendant is required to 'specify in detail which portions of the document are disclosable and which are allegedly exempt.'"  Defenders of Wildlife v. United States Border Patrol, 623 F. Supp. 2d at 90 (quoting Wilderness Soc'y v. Dep't of Interior, 344 F. Supp. 2d at 19) (emphasis in original).

Accordingly, the Court concludes that defendant has failed to justify its withholdings under Exemptions 2, 5, and 7(E) and has not met its burden to show that it has disclosed all reasonably segregable information.  Defendant must either release the withheld documents or produce a legally adequate Vaughn Index.

## IV.  ATTORNEYS' FEES

Plaintiff moves for attorneys' fees pursuant to FOIA's recently amended fee-shifting provision, which provides attorneys' fees for complainants who have "substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  A complainant is deemed to have substantially prevailed if he obtained relief through either "a judicial order . . ." or "a voluntary or unilateral change in position by the agency if the complainant's claim is not insubstantial."  5 U.S.C. § 552(a)(4)(E)(ii).  Plaintiff argues that DHS voluntarily and unilaterally changed its position on over half of the documents withheld when it released 58 of the previously withheld documents in their entirety and 38 redacted pages on February 19, 2008 — after commencement of the action and immediately before moving for summary judgment.  In response, defendant argues that plaintiff's motion is premature, that plaintiff has not established his entitlement to attorneys' fees, and that the provisions of the amended fee-shifting provision do not apply retroactively.  In light of the Court's conclusion that, at this stage, final judgment is not appropriate for either party, and because plaintiff has not articulated any need for an interim award of fees, the Court concludes that plaintiff's attorneys' fees motion is premature.

## V.  CONCLUSION

For these reasons, the Court by Order of September 30, 2009 granted defendant's motion for summary judgment in part, denied it in part without prejudice, and denied plaintiff's motion for summary judgment without prejudice.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  December 18, 2009